# Western Mining Action Project

*Roger Flynn, Esq.,*
*Jeffrey C. Parsons, Esq.*

P.O. Box 349
440 Main St. #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org

Via Email to: wo_foia@fs.fed.us

May 7, 2019

Chief, Forest Service
U.S. Dept. of Agriculture
1400 Independence Ave. SW, Mail Stop 1143
Washington, D.C. 20250-1143

## FREEDOM OF INFORMATION ACT APPEAL

Re:     Clean Water Alliance FOIA request dated December 7, 2018;
         FOIA Number 2019-FS-R2-01443-F.

Dear FOIA Appeals Officer and/or Chief, U.S. Forest Service:

This letter constitutes the appeal of Black Hills Clean Water Alliance (CWA), submitted by their undersigned attorneys, of the adverse FOIA decision issued on February 12, 2019 by Brian Ferebee, Regional Forester of the Rocky Mountain Region regarding CWA's FOIA request dated December 7, 2018.  CWA's December 7, 2019 FOIA request and the U.S. Forest Service (USFS) adverse decision are attached hereto.

In its December 7th FOIA request, CWA requested:

> Any and all agency records created or obtained by the Mystic District Office or the Black Hills National Forest Office that related to plans of operations or notices of intent for exploratory gold drilling in the Mystic District of the Black Hills National Forest.  The subject matter scope of this request must be interpreted broadly, and includes but is not limited to, these specific documents:

> All draft or final plans of operations that have been submitted to the Forest Service since January 1, 2018 involving existing or proposed mines in the Mystic Ranger District;

> All draft or final plans of operations and/or notices of intent referenced in the news article that ran in the Rapid City Journal on November 25, 2018 quoting Black Hills Deputy Forest Supervisor Jerry Krueger confirming that "four new plans of operations for exploratory gold drilling have been submitted to the Black Hills National Forest for federal public lands located within the Mystic Ranger District."

1

Regarding the request, the Regional Forester's February 12, 2019 letter determined that:

> We are withholding all of the documents in whole under Exemption 4 of the FOIA.
> Exemption 4 protects commercial or financial information, privileged or confidential, that
> is obtained from a person.  5 U.S.C. 552(b)(4).  This exemption ensures that agencies will
> continually be able to obtain necessary commercial and financial information from
> outside the Government and that they will be able to perform their statutory
> responsibilities efficiently and effectively.  It also protects those who submit such
> information to the Government from the competitive disadvantages that could result from
> disclosure.  Because these documents are proposals which have not yet been approved,
> we believe they must be withheld under Exemption 4.

February 12, 2019 letter at 1-2.

CWA is a non-profit citizens organization providing support for citizens in the Black Hills region
interested in mining and mineral exploration operations in and around the Black Hills and related
public land issues – the subject of the FOIA requests.  CWA's uses of this information will
include informing citizens about the environmental issues surrounding any proposed mineral
exploration or development, dissemination of the materials for possible use in publicly-
circulated newsletters and information packets, and possible use in administrative or judicial
action should there have been a failure to comply with federal laws.  No monetary gain will
accrue to CWA as a result of this request.

By this appeal CWA asserts that the USFS's decisions to withhold the requested records were in
error and that its FOIA request should be immediately granted.

**ARGUMENT**

## I.     THE FOIA IS DESIGNED TO REQUIRE DISCLOSURE OF
##        AGENCY RECORDS.

The purpose of the FOIA "is to ensure an informed citizenry, vital to the functioning of a
democratic society, needed to check against corruption and to hold the governors accountable to
the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).  The FOIA is
designed to "pierce the veil of administrative secrecy and to open agency action to the light of
public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976).  Accordingly, the
FOIA requires that federal government agencies disclose to the public any requested documents.
5 U.S.C. § 552(a).  As the Supreme Court has declared: "FOIA is often explained as a means for
citizens to know what 'their Government is up to.'" NARA v. Favish, 541 U.S. 157, 171 (2004)
(quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773
(1989)).  The Court elaborated that "[t]his phrase should not be dismissed as a convenient
formalism." Id. at 171-72.  Rather, "[i]t defines a structural necessity in a real democracy." Id. at
172.

The agency may avoid disclosure only if it proves that the requested documents fall within one of the nine enumerated exemptions to the general disclosure requirement. 5 U.S.C. § 552(b)(1)-(9).  Thus, the FOIA establishes a statutory right of access by any person to federal agency records.  Consistent with encouraging disclosure, the exemptions under § 552(b) are discretionary, not mandatory.  Chrysler Corp. v. Brown, 441 U.S. 281, 291 (1979) (Exemption 4 does not "require[e] the conclusion that the exemptions impose affirmative duties on an agency to withhold information sought.  In fact, that conclusion is not supported by the language, logic, or history of the Act.").  "Subsection (b), 5 U.S.C. § 552(b), which lists the exemptions, simply states that the specified material is not subject to the disclosure obligations set out in subsection (a). By its terms, subsection (b) demarcates the agency's obligation to disclose; it does not foreclose disclosure." Id. at 292.

"The system of disclosure established by the FOIA is simple in theory.  A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988).  *See also*, Assembly of State of California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992) ("FOIA requires that government agencies disclose to the public any requested documents. The agency may avoid disclosure only if it proves that the documents fall within one of nine enumerated exemptions. FOIA's purpose is to encourage disclosure, and to that end, its exemptions are to be interpreted narrowly."); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980) ("The clear purpose of the FOIA is to assure that the public has access to all government documents, subject only to nine specific limitations, to be narrowly interpreted."); Mead Data Central v. United States Dep't of the Air Force, 566 F.2d 242, 259 (D.C. Cir. 1977) ("Congress and the courts have stacked the scales in favor of disclosure and against exemption.").

To further this purpose, the FOIA is to be broadly construed in favor of disclosure.

> FOIA generally provides that the public has a right of access, enforceable in court, to federal agency records. *See* Anderson v. Department of Health & Human Servs., 907 F.2d 936, 941 (10th Cir.1990). FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed. *Id.* The federal agency resisting disclosure bears the burden of justifying nondisclosure. *Id.*

Audubon Society v. United States Forest Service, 104 F.3d 1201, 1203 (10th Cir. 1997).

> FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed.  If an agency has been sued by an individual because the agency has refused to release documents, the agency bears the burden of justifying nondisclosure.

Casad v. U.S. Dept. of Health & Human Services, 301 F.3d 1247, 1250 (10th Cir. 2002)(citations omitted).  *See also* Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) ("These exemptions are specifically made exclusive . . . and must be narrowly construed."); Frazee v. U.S. Forest  Service, 97 F.3d 367, 370 (9th Cir. 1996); Bristol-Myers Co. v. FTC, 424 F.2d 935, 938 (D.C. Cir. 1970) ("The legislative plan creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed.").

3

The agency bears the burden of proving that a requested document falls within one of the nine exemptions. *See* Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) ("Under FOIA, 'the burden is on the agency to sustain its action.'"); Assembly of State of California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992) ("The government has the burden to prove that a requested document falls within one of FOIA's exemptions."); Hopkins v. United States Dep't of Housing & Urban Dev., 929 F.2d 81, 84 (2nd Cir. 1991) ("An agency's decision to withhold records requested under the FOIA is subject to *de novo* judicial review.  In any such review, the burden is on the agency to sustain its action.").

Given the policy behind the FOIA, the federal courts have consistently refused to allow agencies to meet their burden of proving the requested documents fall within one of the FOIA's exemptions by making conclusory and generalized allegations of confidentiality.  "We repeat, once again, that conclusory assertions of privilege will not suffice to carry the Government's burden of proof in defending FOIA cases." Coastal States, 617 F.2d at 861.  *See also* Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977) ("agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts.").  The agency must "establish [its] right to withhold information from the public and they must supply the courts with sufficient information to allow [them] to make a reasoned determination that [the agency is] correct." Coastal States, 617 F.2d at 861.  *See also* Anderson v. Dep't of Health & Human Sevs., 907 F.2d 936, 941 (10th Cir. 1990) ("The district court must determine whether all of the  requested materials fall within an exemption to the FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts.").

Lastly, it is important to note that it is the agency who must make the final determination concerning disclosure – not any of the mine plan submitters in this case.  As one court has emphasized, consultation with a submitter is "appropriate as one step in the evaluation process, [but it] is not sufficient to satisfy  [an agency's] FOIA obligations." Lee v. FDIC, 923 F.Supp. 451, 455 (S.D.N.Y. 1996).  Therefore, an agency is "required to determine for itself whether the information in question should be disclosed." Id.; accord Exec. Order No. 12,600, § 5 (notification procedure specifically contemplate that agency makes ultimate determination concerning release); *see also*  National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 767 (D.C. Cir. 1974)(in justifying nondisclosure, submitter's treatment of information held not to be "the only relevant inquiry"; rather, the agency must be satisfied that harms underlying the exemption are likely to occur).

## II.    EXEMPTION 4 DOES NOT APPLY TO THE REQUESTED PLANS OF OPERATIONS.

### A.    EXEMPTION 4 IS TO BE NARROWLY CONSTRUED – ESPECIALLY IN LIGHT OF THE FOREST SERVICE REGULATIONS MANDATING PUBLIC DISCLOSURE OF PLANS OF OPERATIONS.

The withheld agency records were submitted as part of applications that the Forest Service was processing at the time the request was filed.  There is no indication that Exemption 4 would apply to "proposals which have not yet been approved." The proposals are agency records that

4

address activities subject to federal scrutiny and approval.  Even if portions may contain materials subject to an Exemption, which has not been supported, the public interest in mining proposals under a variety of federal laws warrants the disclosure of the proposals submitted to the Forest Service.

Exemption 4 provides that:

> Each agency shall make available to the public information as follows: . . .
> (b) This section does not apply to matters that are- . . .
> (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential; . . . .

5 U.S.C. § 552(b)(4).  At the outset, USFS does not mention the word "trade secrets" in its letter denying CWA access to the requested records, and thus it does not appear that the agency is arguing that the requested Plans of Operations ("PoOs") records are a "trade secret."  Rather, USFS appears to base the non-disclosure on an allegation that the PoOs are "commercial or financial information obtained from a person and privileged or confidential."

It is clear that the PoOs are not a "trade secret" under FOIA.  "Trade secret" is defined  in the FOIA context as: "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort.  That definition requires that there be a 'direct relationship' between the trade secret and the productive process." Anderson, 907 F.2d at 944.  Since the USFS has not put forth any evidence that the requested mining plan records are "trade secrets" protected by Exemption 4, nondisclosure cannot be justified on this ground.

Thus, the remaining portions of this appeal will focus on whether the requested records qualify as "commercial or financial information obtained from a person and privileged or confidential."

Courts have repeatedly held that "commercial or financial" must be given their ordinary meanings. Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citing Washington Post Co. v. HHS, 690 F.2d 252, 266 (D.C. Cir. 1982), and Board of Trade v. Commodity Futures Trading Comm'n, 627 F.2d 392, 403 (D.C. Cir. 1980)).  In delimiting the scope of the term "commercial," federal courts have held that "[t]he mere fact that an event occurs in connection with a commercial operation does not automatically transform documents regarding that event into commercial information." Chicago Tribune Co. v. FAA, No. 97 C 2363, 1998 WL  242611, at *3 (N.D. Ill. May 7, 1998).  See also Washington Research Project, Inc. v. HEW, 504  F.2d 238, 244-45 (D.C. Cir. 1974) (scientific research designs submitted in grant applications   held not commercial absent showing that research itself had any commercial character.).

Multiple courts have acknowledged the public interest as a major factor in making Exemption 4 determinations.  In making an Exemption 4 determination the court "must balance the strong public interest in favor of disclosure against the right of private business to protect sensitive information." GC Micro Corp. v. Defense Logistics Agency, 33 F.3d 1109, 1115 (9th Cir. 1994);

5

<u>Public Citizen Health Research Group v. FDA</u>, 964 F. Supp. 413, 415 (D.D.C. 1997) ("an additional factor that may be considered is whether there is a strong public interest in release of the information.").

When this specific concern for the public interest in the Exemption 4 setting is combined with the FOIA's liberal policy in favor of disclosure, it is clear that nondisclosure in this case will not serve the FOIA's ultimate goals.  Public participation in this process is crucial.  That participation cannot be meaningful without adequate information.

In this case, the policy in favor of releasing this information is even stronger because it involves a mining plan of operations.  Under USFS mining regulations, **"all information and data submitted by an operator pursuant to the regulations in this part shall be available for examination by the public."** 36 CFR § 228.6.  This regulation specifically refers to plans of operation and the information contained therein as subject to this requirement.  The only exemption from this broad rule in favor of disclosure is for "**specifically identified information and data**" that the operator identifies as "trade secrets or privileged commercial or financial information." <u>Id</u>. (emphasis added).  The rule lists the types of information that may possibly be claimed under this exemption, such as "known or estimated outline of the mineral deposits and their location, attitude, extent, outcrops, and content, and the known or planed location of exploration pits, drill holes, excavations pertaining to location and entry pursuant to the United States mining laws, and other commercial information which relates to competitive rights of the operator."  <u>Id</u>.[1]

Here, there is no evidence that either the USFS nor any submitters have "specifically identified" any information in the responsive PoOs subject to this narrow exemption – or any basis for considering this information privileged.  The agency simply withheld the **entirety** of these documents under a generalized and unsubstantiated claim of confidentiality.  It is hard to imagine that **every** page of each of the responsive documents qualify under this narrow exemption.  Under that rationale, the mandate for disclosure in § 228.6 becomes meaningless, as every operator could claim that its entire PoO was "confidential."

Further, as shown below, the requested information does not qualify for the limited exemption in § 228.6 for "commercial information which relates to competitive rights of the operator."  Thus, under § 228.6, this information must be released to the public.

> B.  <u>THE WITHHELD INFORMATION DOES NOT MEET THE APPLICABLE EXEMPTION 4 TESTS.</u>

Exemption 4 requires that any information withheld under its provisions must be privileged or confidential.  The rule of <u>National Parks & Conservation Ass'n v. Morton,</u> 498 F.2d 765 (D.C. Cir. 1974), controls this determination.  That case held there is a two part, objective test for confidentiality under Exemption 4:

---

[1] It should be noted that any exemption in § 228.6 cannot be utilized to override the statutory and caselaw presumption in favor of disclosure and that any exemption must be narrowly construed, with the burden on nondisclosure resting on the agency.

6

> To summarize, commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

Id. at 770.  These two principal Exemption 4 tests, which apply disjunctively, have often been referred to as the "impairment prong" and the "competitive harm prong."  National Parks has remained the leading Exemption 4 case on this issue.  See Anderson v. Dept. of Health & Human Services, 907 F.2d 936, 947 (10th Cir. 1990).  Therefore, the USFS must prove that the release of the requested information would:

> (1) impair the Government's ability to obtain necessary information in the future; or (2) cause substantial harm to the competitive position of the person from whom the information was  obtained.

### 1.  The Release of the Plan of Operations Would Not Impair the USFS's  Ability to Obtain Necessary Information In the Future

The first prong of the National Parks test is concerned with protecting the government's interest in obtaining ongoing, reliable information.  In this case, releasing the submitted PoOs would pose no risk of impairing the USFS's ability to obtain this type of information in the future.  The federal courts have found that the "impairment prong" would be only minimally implicated when the information was required to be submitted by the third-party.  When information is required, "there is a presumption that the Government's interest is not threatened by disclosure because it secures information by mandate . . . ." Critical Mass Energy Project v. Nuclear Regulatory Commission, 975 F.2d 871, 878 (D.C. Cir. 1992).  The D.C. Circuit held that when the submitter is obliged to furnish the information to the government, the only pertinent factor is continued reliability of that information. Id.

The information requested by CWA and withheld by the USFS was submitted pursuant to multiple and mandatory regulatory requirements. Mining claimants are required to provide the requested information to the USFS in order to obtain approval to conduct mineral operations on public land. 36 CFR §§ 228.4 to 228.8.

Federal courts have rejected the claim that information provided by mining applicants/operators regarding mineral operations on public land is voluntary.  In an analogous case dealing with a mineral patent application, the court stated that, because the operator was desiring to receive a public benefit from the agency, and such information was necessarily submitted to achieve that end, it was not submitted voluntarily.

> Freeman [the operator] did not provide this information to the government for  altruistic reasons, as a public spirited citizen, or even in the spirit of cooperation. Cf.  Critical Mass, 975 F.2d at 878 ("the purpose served by the exemption in such instances  is that of 'encouraging cooperation with the Government by persons having information  useful to officials'") (citation omitted).  Freeman provided the data in an effort to gain title to over

7

five thousand acres of public land potentially worth millions of dollars.

…

The data Freeman provided is nothing more than what the government requires all patent applicants to submit, namely, information supporting his claim that a valuable mineral deposit exists within each location covered by the patent application.

Given the extraordinary benefits Freeman hopes to gain by virtue of his mineral patent application and taking claim, disclosure of the data Freeman provided is unlikely to deter Freeman, or others similarly situated, from providing such data to the government in the future. *Cf. Frazee,* 97 F.3d at 372 (bidders required to submit Plan of operations). Even assuming this Circuit adopted the *Critical Mass* dichotomy, the traditional standard (and not the lesser standard for ''voluntarily provided'' data) would apply when evaluating whether these documents are subject to withholding under Exemption Four.

Freeman v. BLM, 525 F.Supp.2d 1178, 1187 (D. Or. 2007)(requiring disclosure of all aspects of mineral patent application, including mine construction and operation plans, details of the ore body, etc., except for a specific description of a proprietary black-box processing method under the "trade secrets" exemption). Although that case dealt with a mineral patent application and not a mining PoO, the analysis is the same since the submission and approval of a PoO is required for authorization to use the mining claims, the same as the similar information in the patent application is needed in order to obtain title to the land.

Similar to Freeman, the submitters here would gain "the extraordinary benefit" of being able to use public land for its water and other facilities. Without the submission of the PoOs, the submitters would not have authority to conduct any operations on public land – thus showing that the PoOs were required to be submitted in order to obtain such rights and approvals. Thus, under the 36 CFR part 228 regulations, the PoOs were **required** to be submitted, and the PoOs cannot be considered to be a voluntary submittals under FOIA.

Even if the PoOs are somehow considered to be "voluntarily submitted" they still must be disclosed under FOIA because it is the type of information that would "customarily … be released to the public by the person from whom it was obtained." Herrick v. Garvey, 298 F.3d 1184, 1193 (10th Cir. 2002). Here, because requests for authorization to use public lands (such as a mining PoO) are required by law and subject to public review under NEPA, the part 228 regulations, and related laws, it is the type of information customarily released to the public.

Indeed, under 36 CFR § 228.6, the requested information is required to be released to the public (with limited exceptions). The USFS's apparent assertion that "none of the documents have been approved" and thus somehow not a "record" under FOIA is without merit. First, there is nothing preliminary about the PoOs. Although it may be that the USFS is currently reviewing them to determine if additional information is needed pursuant to 36 CFR § 228.5, that is standard agency procedure and does not change the PoOs into something other than a public record in the possession of the agency. Indeed, there is no regulatory recognition for the submittal of a "preliminary PoO" shielded from public disclosure. Under § 228.5, it is a "proposed PoO" that must be submitted in order to obtain eventual approval to conduct

operations on public land.  Further, § 228.6 requires the release of "all information and data **submitted** by an operator pursuant to the regulations…" (emphasis added).

Therefore, the "impairment prong" of the <u>National Parks</u> test is not violated by disclosure of the PoOs.

### 2. The USFS Has Not Demonstrated that the Disclosure of the PoOs Would Cause Substantial Harm to the Competitive Position of the Submitters.

By invoking Exemption 4, the USFS has asserted that disclosure of the requested information would place the submitters at a significant competitive disadvantage.  However, the agency provides no basis for any such finding, despite having the burden of demonstrating the records have been properly withheld.  In any case, any such claim ignores the realities of the 1872 Mining Law and modern hardrock mining industry practice in locating and developing mining claims as well as obtaining the required approvals necessary to conduct operations on public lands.

In order to qualify as protected "commercial or financial information" under Exemption 4, the agency bears the burden of showing that "disclosure is likely to cause substantial harm to the competitive position of the person who submitted it to the government."  <u>High Country Citizens' Alliance v. Clarke</u>, Case No. 04-cv-00749-MSK-PAC, Slip. Op. at 6 (D. Colo. 2006) (<u>HCCA</u>) (attached).  In <u>HCCA</u>, the  federal court in Colorado held that disclosure of mine plans, map layouts, and other information did not "substantially harm the competitive position" of the mining proponent and thus must be released by the BLM.  Slip Op. at 9.

"For there to be substantial harm to a submitter's competitive position, there must be: "(1) actual competition; and (2) the likelihood of substantial competitive injury." <u>Id</u>. at 6, citing <u>Utah v. U.S. Dept. of Interior</u>, 256 F.3d 967, 970 (10th Cir. 2001).  *See also* <u>Frazee v. U.S. Forest Service</u>, 97 F.3d 367, 371 (9th Cir. 1996)(requiring that the agency "must present specific 'evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury' in order to prove that the information falls under Exemption 4.").  Rather than speculation that a submitter "may face future or potential competition. . . [the FOIA] explicitly requires proof that the submitters face *actual* competition." <u>Niagara Mohawk Power Corp. v DOE</u>, 169 F.3d at 18-19 (emphasis in original, *citing* <u>National Parks Conservation Assoc. v. Kleppe</u>, 547 F.2d 673, 679 (D.C. Cir. 1976) "<u>National Parks II</u>').  The "harm" complained of must be limited to "harm flowing from the affirmative use of proprietary information by competitors." <u>Public Citizen Health Rsch. Group v. FDA</u>, 704 F.2d 1280, 1291 (D.C. Cir 1983).  Additionally, the competition at issue must constitute "meaningful day-to-day competition with businesses offering similar goods and services." <u>National Parks II</u>, 547 F.2d at 681-84.  Mere conjectural or even probable future competition does not satisfy the Exemption 4 test. <u>Id</u>.

"[C]onclusory and generalized allegations of a substantial competitive harm will not carry the day." <u>HCCA</u>, Slip Op. at 6.  "That the person prefers not to have the information released, for other reasons, is insufficient.  The 'substantial harm' analysis requires more than a theoretical possibility of injury or scintilla of harm. The evidence must establish both (1) actual competition

9

and (2) a likelihood of substantial competitive injury.  Conclusory and generalized allegations of competitive harm are not enough."  Freeman, 526 F. Supp. 2d at 1190.

Here, the USFS has failed to affirmatively demonstrate either of these two factors.  The agency cannot show that the submitter of a mine plan of operations would face "actual competition" for the relevant ore deposits or related public lands claimed by those submitters under the 1872 Mining Law.  Under the Mining Law, "[t]he locators of all mining locations . . . situated on  the public domain . . . shall have the exclusive right of possession and enjoyment of all the  surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth . . . ." 30 U.S.C. § 26.

Thus, once a mining claimant has staked mining claims on federal land, no other person or corporation can legally interfere with the initial locators' rights to attempt to develop the underlying mineral deposit.  As such, releasing the requested information relating to the plans of operations could in no way hamper those claimants' interests in developing that deposit, or using its lode and millsite claims associated with any such deposit.

In this case, there is no evidence supporting the claim that any of the submitters will suffer "a likelihood of *substantial* competitive injury" resulting from the release of the PoOs.  The PoOs relate solely to the development of the exclusively claim-staked public lands.

The federal courts have ruled that the type of information withheld by the USFS in this case is not protected under FOIA Exemption 4.  In Freeman, the court specifically held that information submitted by the mine applicant/operator such as "quantity and quality of the ore reserve," "other details regarding the mine construction and operations," and "details regarding the extraction of metals from the ore," could not be withheld under Exemption 4.  The court noted that, for metals traded on the open market, there was little threat of "actual competition" for a specific ore body. 526 F.Supp. 2d at 1190-91. "Exemption Four does not authorize the government to suppress information merely because release of that data might cause the public to question the need for a proposed project. That is not what is meant by 'substantial competitive harm' for purposes of Exemption Four." Id. at 1192.

As for the "details regarding the mine construction and operations," in the analogous situation as here, the court held that:

> [I]t is unclear how knowing Freeman's costs of production would benefit a  hypothetical competitor. The manner in which nickel prices are set and nickel contracts traded, the high demand for nickel, the non-perishable nature of the product, and the inherent constraints upon Freeman's capacity to increase his small output of nickel, all distinguish this situation from a zero-sum game in which multiple suppliers are competing for the same business.

Id. at1192.  Overall, in holding that a mining claimant could not shield information regarding a proposed mine's operations, the court noted that:  "The public has a strong interest in scrutinizing agency decisions that grant or deny applications for title to valuable public mineral lands under the Mining Act of 1872." Id. at 1194.  The same analysis applies whether a claimant

is applying for a patent to public land (the situation in <u>HCCA</u> and <u>Freeman</u>), or for authorization to conduct operations on public land (the situation here).  The federal government cannot legitimately argue that information regarding the ore body, mine plans, etc., were not subject to Exemption 4 in <u>Freeman</u>, yet now argue that essentially the same information is somehow protected from disclosure in this case under the same Exemption.

In <u>Black Hills Alliance v. United States Forest Serv.</u>, 603 F.Supp. 117 (D. S.D. 1984), the federal court held that public land uranium exploration information did not qualify for nondisclosure under Exemption 4.  The court held that the Forest Service had not carried its burden to show the information was "confidential."  The court found that two separate affidavits by Forest Service officials alleging competitive harm to the submitter were inadequate to carry the agency's burden. <u>Id</u>. at 122.  "[The affidavits] do not sufficiently apprise the court of the nature and extent of competition in the mineral exploration industry, especially with respect to exploration on public lands, title to which lies in the United States." <u>Id</u>. at 121. Similarly, in this case, the agency has not put forth any specific affidavits, or any other evidence proving actual competition or competitive harm at all – nor does any exist.

Directly related to USFS's position in this case, the <u>Black Hills</u> court rejected the Forest Service's argument that "actual competition" existed since other mining companies might be able to locate mining claims on the same mineralized zones covering the disputed information. Here, that argument cannot be made because the Mining Law of 1872 provides exclusive rights to the claimant.

The reliance on Exemption 4 ignores the realities of mining industry practice.  The standard industry practice is to locate mining claims, with the associated rights to *exclusive* possession, *prior* to engaging in extensive exploration activities.  In this manner, the rights to the mineral deposit are secured before a mining company even knows whether that deposit will produce a paying mine.  Any "competition" for the rights to develop an ore body is completed before the deposit is even extensively explored.  Indeed, competition for ore bodies is all but nonexistent; there is no bidding or leasing process.  The Mining Law sets up a pure and simple first come, first serve claim location system.  Thus, releasing the information requested by CWA cannot substantially impact any of the submitters' competitiveness in locating or developing any relevant ore body.

It appears that the USFS asserts that every word, and every page, or portion thereof, of the PoOs was "confidential" under Exemption 4, without verifying whether that was indeed the case.  The agency may not do that under FOIA.  Consultation with a submitter is "appropriate as one step in the evaluation process, [but it] is not sufficient to satisfy [an  agency's] FOIA obligations." <u>Lee v. FDIC</u>, 923 F.Supp. 451, 455 (S.D.N.Y. 1996).  Therefore, an agency is "required to determine for itself whether the information in question should be disclosed." <u>Id</u>.; <u>accord</u> Exec. Order No. 12,600, § 5 (notification procedures specifically contemplate that agency makes ultimate determination concerning release); *see also* <u>National Parks & Conservation Ass'n v. Morton</u>, 498 F.2d 765, 767 (D.C. Cir. 1974)(in justifying nondisclosure, submitter's treatment of information held not to be "the only relevant inquiry"; rather, the agency must be satisfied that harms underlying the exemption are likely to occur).

11

This is in line with the undisputed rule that the agency, not the requesting public, bears the burden of proving that the withheld information satisfies the tests in Exemption 4.  *See* Audubon Society v. United States Forest Service, 104 F.3d 1201, 1203 (10th Cir. 1997); Casad v. U.S. Dept. of Health & Human Services, 301 F.3d 1247, 1250 (10th Cir. 2002).  "A government agency bears the burden of justifying nondisclosure." HCCA, Slip Op. at 6.

### III.   THE USFS's CONCLUSORY STATEMENTS DO NOT JUSTIFY WITHHOLDING THE REQUESTED DOCUMENTS

In denying CWA's FOIA Request, the USFS simply withheld the entirety of each of the PoOs and merely quoted Exemption 4.  No other factual evidence was provided.  Such conclusory statements with regard to the application of Exemption 4 do not satisfy USFS's duty to provide the details as to how and why the Exemption applies.

As noted above, the federal courts have held that "conclusory and generalized allegations of a substantial competitive harm will not carry the day." HCCA, Slip Op. at 6.  Such justifications for nondisclosure "are unacceptable and cannot support an agency's decision to withhold requested documents." Public Citizen Health Research Group v. F.D.A., 704 F.2d 1280, 1291 (D.C. Cir. 1983).  In this case, outside of bare assertions of confidentiality, the USFS fails to provide any justification whatsoever for the assertion that the information requested would substantially harm any submitters' competitive position, as well as the other requirements to satisfy Exemption 4.  That violates FOIA.  *See* Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977) ("agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."); Lee v. FDIC, 923 F.Supp. 451, 455 (S.D.N.Y. 1996)(submitter failed to provide "adequate documentation of the specific, credible, and likely reasons why disclosure of the document would actually cause substantial competitive injury.").

### IV.   EVEN IF PORTIONS OF THE PoOs ARE EXEMPTED FROM DISCLOSURE, THE USFS FAILED TO PROVIDE "REASONABLY SEGREGABLE PORTIONS" OF THE DOCUMENT(S).

Even if USFS could prove that the withheld documents are exempt under FOIA, only those specific portions of the document(s) that are legally exempt under Exemption 4 can be withheld. In this case, USFS improperly withheld the **entirety** of the PoOs, instead of releasing "reasonably segregable portions" not fully protected from disclosure by Exemption 4. 5 U.S.C. § 552(b).  "[T]he exemptions to the FOIA do not apply wholesale.  An item of exempt information does not insulate from disclosure the entire file in which it is contained, or even the entire page on which it appears." Arieff v. Department of the Navy, 712 F.2d 1462, 1466 (D.C. Cir. 1983).

"Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." Anderson v. Department of Health & Human Services, 907 F.2d 936, 941 (10th Cir. 1990) *citing* United States Dept. of Justice v. Julian, 486 U.S. 1 (1988).

12

Sloan Decl. Exhibit C

The USFS failed to release such portions, or justify at all why it has not done so.  Thus, the USFS's actions violated FOIA and cannot be sustained.

## **RELIEF SOUGHT**

Based on the above, CWA requests that the USFS immediately release the requested records/documents.  We look forward to your final determination within 20 working days pursuant to FOIA.  It would be useful as we evaluate the need to seek judicial review of this matter if you were to provide us with a projected date-certain by which we could expect a determination of this appeal as is required by FOIA.  Due to the urgent and immediate need of CWA for this information, we reserve the right to seek immediate judicial review if this appeal is not satisfactorily resolved and the requested documents produced in the FOIA-mandated time deadlines.

Respectfully Submitted,

*/s/ Jeffrey C. Parsons*

Jeffrey C. Parsons, Esq.
Roger Flynn, Esq.
Western Mining Action Project

Travis Stills
Energy and Conservation Law

Attorneys for CWA

Exhibit

13

Sloan Decl. Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-00749-MSK-PAC

HIGH COUNTRY CITIZENS ALLIANCE;
TOWN OF CRESTED BUTTE, COLORADO;
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GUNNISON,
COLORADO,

       Plaintiffs,

v.

KATHLEEN CLARKE, in her official capacity as Director of the U.S. Bureau of Land
Management;
RON WENKER, in his official capacity as Colorado BLM Director;
U.S. BUREAU OF LAND MANAGEMENT;
GALE NORTON, in her official capacity as Secretary of the Interior; and
UNITED STATES DEPARTMENT OF THE INTERIOR,

       Defendants.

---

## MEMORANDUM OPINION AND JUDGMENT ON
## THE PLAINTIFFS' FREEDOM OF INFORMATION ACT CLAIM

---

THIS MATTER comes before the Court on the Plaintiffs'[1] claim under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  Pursuant to this Court's September 29, 2005 Order

(**#63**), denying the parties' cross-motions for summary judgment, the Defendants have submitted

the documents which they deem to be confidential and not subject to disclosure under the FOIA

for *in camera* review.  They also have filed a revised *Vaughn* index[2] (**#64**), to which the Plaintiffs

---

[1] To the extent practicable, each party is referred to by name.  Otherwise, they are referred to, collectively, as the Plaintiffs and the Defendants.

[2] A Vaughn index is a compilation which lists each withheld document and explains why it was withheld.  *See Anderson v. Dept. of Health & Human Services*, 907 F.2d 936, 940 n.3 (10th Cir. 1990); *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

Sloan Decl. Exhibit C

have responded (**#65**).  Having considered the submitted materials *in camera*, the revised *Vaughn* index, the Plaintiffs' response, and the materials previously submitted in conjunction with the cross-motions for summary judgment, the Court finds and concludes as follows.

## I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

## II.  Background

The High Country Citizens Alliance (hereinafter, "the Alliance") submitted two nearly identical FOIA requests to the Bureau of Land Management (hereinafter, "BLM") on April 28, 2000 and August 17, 2001, seeking documents relating to the Mt. Emmons Mining Company's Mineral Patent Application No. COC-54557.  The BLM has provided many of the requested documents, but has declined to provide excerpts from documents known as the Western Mine Engineering Report and the Mineral Report.[3]

Prior to responding to the Alliance's FOIA requests, the BLM gave the Mt. Emmons Mining Company and the Phelps Dodge Corporation an opportunity to comment as to whether the documents should be disclosed.  Through attorney H. Barry Holt, they responded that the release of the withheld portions of the Mineral Report would likely "cause substantial harm to

---

[3] The undisclosed portions of the Western Mine Engineering Report are found in Section 8 (pages 3 through 18), Section 10 (pages 1, 2, 4 through 9, 11, 12, 14 through 16, 18, 22, 23, 25, 28), Section 11 (pages 1, 2, 12 and 15), Section 12 (pages 2 through 5, 11, 13, 17 and 25) of the report. The undisclosed portions of the Mineral Report consist of excerpts on pages 2, 42, 54, 55 and 57 through 72.

Western Mine Engineering, Inc., prepared the Western Mine Engineering Report for use in connection with the Mt. Emmons Mining Company's patent application.  The United States Forest Service then created the Mineral Report, which incorporates some analysis from the Western Mine Engineering Report and data obtained from the Mt. Emmons Mining Company.

Sloan Decl. Exhibit C

[their] competitive position" because:

> The molybdenum market can be volatile and sometimes speculative. Release of proprietary mineral and economic information would result in a distinct competitive disadvantage and harm to Phelps Dodge.  Information about the presence, kind, and grade of ore in specific drill holes, and the quantity and grade of reserves, coupled with estimates and analyses of mineral extraction, processing, and mine reclamation costs, all could be used by competitors in developing pricing strategies to underbid Phelps Dodge in the futures markets.  Release of sampling data also could artificially inflate property values in the area by revealing valuable prospects of which competitors otherwise would not be aware.  This type of information customarily is considered proprietary in the mining industry, and its release could result in severe economic damage to the mining company that invested vast sums of capital acquiring the information.  Such information generally should be kept confidential for the life of the developed mine.

The BLM declined to disclose certain portions of the Mineral Report and the Western Mine Engineering Report because the documents were "voluntarily submitted to the government"[4] and contained information that was "not the type of information that is customarily disclosed to the public by the Submitter."  The BLM did not base its decision on the contention that the information was confidential.  The Alliance appealed to the Department of the Interior. Rather than ruling on the merits of the appeal, it authorized the Alliance to commence a legal action.

The Defendants now contend that the withheld documents are exempt from disclosure because they are confidential.  In support of such contention, they offer an affidavit from Roger Haskins, a Senior Specialist with the BLM, to establish that disclosure of the withheld documents

---

[4] The parties agree that the documents were not voluntarily submitted to the government because the BLM required these documents to be submitted in connection with the Mt. Emmons Mining Company's patent application.

Sloan Decl. Exhibit C

will impair the BLM's ability to obtain this type of information in the future.  His affidavit states:

     5.    To comply with 43 C.F.R. § 3862.1-1, the mining claimant generally provides proprietary and confidential information about the type and extent of the mineral deposit, including information about the presence, kind, and grade of ore in specific drill holes, assay results, the quantity and grade of mineral reserves, and estimates and analyses of mineral extraction, processing, and mine reclamation costs, in support of the patent application.

     6.    Obtaining this type of proprietary and confidential information from the patent applicant is essential to the BLM's ability to determine whether the applicant has satisfied the requirements for a patent under the Mining Law.

     7.    Often the information provided by the applicant includes data pertaining to the applicant's entire mining operation, including operations on private lands or other unpatented mining claims, and not just the claims under patent application.

     8.    This type of information is customarily considered proprietary in the mining industry, and its release could result in severe economic damage to the mining company that invested vast sums of capital acquiring the information.  Such information is generally kept confidential for life of the developed mine.

     9.    To the extent that this type of information is readily provided to the BLM by the mining claimant with the patent application, the BLM's analysis of the patent application is more efficient, cost effective, and requires less government resources.

     10.    Requiring the BLM to disclose this type of information obtained in connection with a patent application when it is considered proprietary and confidential in the mining industry is likely to impair the BLM's ability to obtain this necessary information in the future.

### III.  Issue Presented

Sloan Decl. Exhibit C

In this action, the Plaintiffs seek disclosure of the withheld materials.  The Defendants contend that disclosure is not required pursuant to Exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4).  Such section allows an agency to withhold "commercial or financial information obtained from a person and privileged or confidential[.]"  The parties agree that the withheld documents contain commercial or financial information, and the Court has previously ruled that the information was obtained from a person.  Thus, the sole issue presented is whether the information is confidential,[5] and therefore not subject to disclosure.

## IV.  Analysis

The FOIA provides the public with a right of access to federal agency records.  *See Casad v. United States Dept. of Health and Human Services*, 301 F.3d 1247, 1250 (10th Cir. 2002).  Its purpose is to enable the public to scrutinize agency action so that the government can be held accountable for its decisions.  *See Anderson*, 907 F.2d at 941.  To further this purpose, the FOIA is to be broadly construed in favor of disclosure.  *See Audubon Society v. United States Forest Service*, 104 F.3d 1201, 1203 (10th Cir. 1997).

The FOIA sets forth nine exemptions from the FOIA's disclosure requirement that apply

---

[5] " In ruling on the cross-motions for summary judgment, this Court stated:

[T]he Court cannot determine whether the withheld information is proprietary and would be treated as confidential by the Mt. Emmons Mining Company given its disclosure of the Behre Dolbear Report.  In addition, it is not apparent from the revised *Vaughn* index whether the withheld documents and excerpts of documents contain information which, if disclosed, would likely to harm the competitive interests of the Mt. Emmons Mining Company.  Some of the withheld documents are not sufficiently described.  For instance, the revised *Vaughn* index states that the subject matter of page 2 is a "summary and recommendations."  The descriptions of other withheld documents suggest that the undisclosed information may already have been made public through the release of the Behre Dolbear Report.  It is necessary for the Court to conduct an *in camera* review of the pertinent documents, comparing them with the Behre Dolbear Report and other documents that have already been disclosed.

Sloan Decl. Exhibit C

when there are legitimate governmental or private interests which could be harmed by the release of the requested information.   All of the exceptions are narrowly construed.  *See id.*; *Casad*, 301 F.3d at 1250.  A government agency bears the burden of justifying nondisclosure.  *See id.*; 5 U.S.C. § 552(a)(4)(B).

In the case at bar, the Government invokes FOIA exemption 4, found at 5 U.S.C. § 552(b)(4).[6]  Exemption 4 is designed "to protect the confidentiality of information which is obtained by the Government . . . but which would customarily not be released to the public by the person from whom it was obtained."  *See Herrick v. Garvey,* 298 F.3d 1184, 1193 (10th Cir. 2002) (internal quotes omitted).  In circumstances where the government requires the submission of commercial or financial information from a person, such information is deemed confidential if disclosure: (1) is likely to cause substantial harm to the competitive position of the person who submitted it to the government; or (2) will impair the government's ability to obtain necessary information in the future.  *See Anderson*, 907 F.2d at 946; *Utah v. U.S. Dept. of Interior*, 256 F.3d 967, 969 (10th Cir. 2001).  For there to be substantial harm to a submitter's competitive position, there must be: (1) actual competition; and (2) the likelihood of a substantial competitive injury.  *See Utah*, 256 F.3d at 970.  A court is not required to conduct a sophisticated economic analysis as to the likely effects of disclosure.  *See id.*  Proof of potential economic harm, as opposed to actual economic harm, is sufficient; a specific competitor need not be identified.  *See id.* at 970-71.  However, conclusory and generalized allegations of a substantial competitive harm will not carry the day.  *See id.* at 970.

---

[6] This statute provides that "This section does not apply to matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]"

Sloan Decl. Exhibit C

Exemption 4 does not apply if the submitter of information authorizes the Government to release such information to the public. *See Herrick*, 298 F.3d at 1193. Likewise, the exemption does not apply to information that is already in the public domain. *See R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1323 (Fed. Cir. 2003).

Whether a particular item of information is confidential is determined using an objective standard. *See National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C. Cir. 1974). A court considers which specific documents fall within the exemption and which do not; it cannot "simply conclude that an entire file or body of information is protected without consideration of the component parts." *See Anderson*, 907 F.2d at 941, 948. Therefore, a court must determine – document by document, and excerpt by excerpt – what is confidential.

A court's review of a FOIA claim is *de novo* and may use any appropriate process. *See Anderson*, 907 F.2d at 941, 942. For instance, a court may review the disputed documents *in camera* along with affidavits and other exhibits, or it may simply rely upon a sufficiently detailed *Vaughn* index. *See id.*[7]

In this case, the *Vaughn* index is not sufficiently detailed to support a ruling on the FOIA claim. Most of its descriptions are conclusory and do not identify, even in general terms, the subject matter of the withheld information. Therefore, to determine whether the Defendants have met their burden of establishing applicability of Exemption 4, the Court has considered the

---

[7] To facilitate such review in this case, the Defendants delivered unredacted hard copies of the Western Mine Engineering Report, the Mineral Report, and the Behre Dolbear Report to chambers for an *in camera* review. The portions of the documents which they believe are exempt from disclosure are highlighted in yellow ink. They also filed a revised *Vaughn* index. In response, the Plaintiffs filed a written document which correlates each entry in the revised *Vaughn* index to the specific page or pages of the Behre Dolbear Report that they believe show that the withheld documents are not confidential.

Sloan Decl. Exhibit C

withheld materials and has compared them to the Defendants' justifications for non-disclosure as well as to information already disclosed.

The Defendants have identified the following types of information as being confidential: (1) information about the presence, kind and specific grade of ore in specific drill holes; (2) information about the quantity and grade of reserves; (3) estimates and analyses of mineral extraction, processing and mine reclamation costs; and (4) assay results. The first asserted basis for confidentiality is that these types of information could be used by competitors in developing pricing strategies, which might impact the profits to be obtained by the Mt. Emmons Mining Company and the Phelps Dodge Corporation, resulting in harm to their competitive position. The Defendants also argue that if they are forced to disclose this information, it could impair the BLM's ability to obtain this type of information in the future.

Both arguments are belied by the fact that the same information has been released to the public by the Mt. Emmons Mining Company in the Behre Dolbear Report, which is a "pre-feasability study of the . . . Mount Emmons project." The Behre Dolbear Report estimated the tonnage and grade of the molybdenum deposit ($MoS_2$) at varying elevations, total production, the production schedule, capital expenditures, average operating costs, and profitability over the mine's 11-year expected operation. It included detailed spreadsheets of anticipated capital expenses and costs, described the geology of the mine site, and provided drill hole data (including the total feet of drilling and maps of drill hole locations) and assay results.

Not only is the withheld information in the Western Mine Engineering Report and Mineral Report of these types, but much of it is directly and explicitly derived from or refers to the Behre

8

Sloan Decl. Exhibit C

Dolbear Report.[8]  Indeed, at least one of the withheld excerpts in the Western Mine Engineering Report is identical to a portion of the Mineral Report which has been disclosed.[9]  The publication of the information contained in the withheld materials undercuts the necessity for confidentiality to avoid substantial, competitive harm.

As to other information withheld from the Western Mine Engineering Report designated as confidential,[10] an insufficient showing has been made.  No showing has been made that a site layout map, statements concerning the need for a contractor, or a description of the backfill system is confidential.

Construing the FOIA broadly in favor of disclosure, the Court cannot conclude that disclosure of this information would substantially harm the competitive positions of the Mt. Emmons Mining Company or Phelps Dodge Corporation, or that disclosure would discourage mineral patent applicants from submitting these types of information to the BLM in the future.  As a consequence, the Court concludes that the withheld portions of the Western Mine Engineering Report and the Mineral Report are neither confidential nor otherwise exempt from disclosure under FOIA Exemption 4.

---

[8] In some instances, the information is nearly identical or overlapping.  Compare Section 10 (pages 14, 15 & 16) of the Western Mine Engineering Report with pages 65, 66 and 69 of the Behre Dolbear Report.  Also compare page 2 of the Mineral Report with page 1 of the Behre Dolbear Report. Also see Section 8 (pages 3, 4, 7, 9, 11, 12, 13, 14 & 15), Section 10 (pages 4, 5, 7, 8, 11 & 18), Section 11 (pages 1, 2 & 15), and Section 12 (pages 4, 5, 13, 17 and 25) of the Western Mine Engineering Report, and pages 57, 58, 59, 60, 61, 62, 65, 66, 67, 68, 69, 70 and 72 of the Mineral Report.

[9] Compare Section 10, page 28 of the Western Mine Engineering Report to page 50 of the Mineral Report.

[10] See, e.g., Section 10 (pages 1, 2, 9, 15, 16, 18, 22, 23 & 28), Section 11 (page 15), and Section 12 (pages 2, 3, 4, 5 & 25) of the Western Mine Engineering Report.

Sloan Decl. Exhibit C

**IT IS THEREFORE ORDERED** that:

(1)     Judgment is entered in favor of the Plaintiffs (High Country Citizens Alliance, Town of Crested Butte, Colorado, and Board of County Commissioners of the County of Gunnison, Colorado) and against the Defendants (Kathleen Clarke, Ron Wenker, U.S. Bureau of Land Management, Gale Norton, and United States Department of the Interior) on the FOIA claim.

(2)     Within 10 days of this Order, the Defendants shall provide unredacted copies of the Western Mine Engineering Report and the Mineral Report to the Plaintiffs.

(3)     The parties shall bear their own costs.

(4)     The Clerk of Court is directed to close this case.

Dated this 13th day of June, 2006

**BY THE COURT:**

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge

Sloan Decl. Exhibit C