UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BLACK HILLS CLEAN WATER ALLIANCE, <br><br> Plaintiff, <br><br><br> vs. <br><br><br> UNITED STATES FOREST SERVICE, UNITED STATES DEPARTMENT OF AGRICULTURE, <br><br> Defendants. | 5:20-CV-05034-JLV <br><br><br><br> REPORT AND RECOMMENDATION <br><br><br> DOCKET NOS. 25 & 30 |

**INTRODUCTION**

This matter is before the court on plaintiff Black Hills Clean Water Alliance's ("BHCWA") complaint seeking production of documents, injunctive relief, and a declaration that defendants the United States Forest Service and United States Department of Agriculture (collectively "the agency") violated the Freedom of Information Act, 5 U.S.C. § 552, Pub. L. No. 89-487, 80 Stat. 250 (1967), ("FOIA") in its search for and withholding certain documents responsive to a FOIA request. Docket No. 1. BHCWA asserts subject matter jurisdiction exists pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B), which vests this court with the jurisdiction to enjoin the agency from withholding records and order the agency to produce records improperly withheld from the requester. Docket No. 1 at p. 3, ¶ 9. Now pending are the parties' cross-motions for summary judgment.

Docket Nos. 25 & 30. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Jeffrey L. Viken, United States District Judge.

## FACTS

BHCWA, through its president, submitted a FOIA request to the Mystic Ranger District of the Black Hills National Forest on December 7, 2018. See Docket No. 28-1. BHCWA requested documents as follows:

> Please provide any and all agency records created or obtained by the Mystic District Office or the Black Hills National Forest Office that relate to plans of operations or notices of intent for exploratory gold drilling in the Mystic District of the Black Hills National Forest. The subject matter scope of this request must be interpreted broadly, and includes but is not limited to, these specific documents:
>
> > - all draft or final plans of operations that have been submitted to the Forest Service since January 1, 2018 involving existing or proposed mines in the Mystic Ranger District;
> >
> > - all draft or final plans of operations and/or notices of intent referenced in the news article that ran in the Rapid City Journal on November 25, 2018 quoting Black Hills Deputy Forest Supervisor Jerry Krueger confirming that "four new plans of operations for exploratory gold drilling have been submitted to the Black Hills National Forest" for federal public lands located within the Mystic Ranger District.
>
> The present request seeks immediate release of the specifically requested records in electronic format, without waiting for completion of the search and processing all responsive agency records.

Id. at pp. 1-2. BHCWA requested the records in electronic format, specifically in searchable portable document format ("PDF"), on physical storage media such as a USB flash drive. Id. at p. 2.

2

The agency responded by letter on February 12, 2019.  See Docket No. 28-2.  The letter indicated the agency had conducted a thorough search for responsive electronic and paper records.  Id. at p. 1.  The letter addressed the specifically requested documents, indicating they were "proposals for Plans of Operations for Mining Activity on the Black Hills National Forest.  None of the documents have been approved.  We are withholding all of the documents in whole under Exemption 4 of the FOIA."  Id.  The letter explained further:

> Exemption 4 protects commercial or financial information, privileged or confidential, that is obtained from a person.  5 U.S.C. [§] 552(b)(4).  This exemption ensures that agencies will continually be able to obtain necessary commercial and financial information from outside the Government and that they will be able to perform their statutory responsibilities efficiently and effectively.  It also protects those who submit such information to the Government from the competitive disadvantages that could result from disclosure.  Because these documents are proposals that have not yet been approved, we believe they must be withheld under Exemption 4.

Id. at p. 2.  The letter provided instructions for appealing its determination according to the provisions of FOIA.  Id.

BHCWA timely appealed the agency's FOIA determination on May 7, 2019, arguing Exemption 4 did not apply to the documents requested.  See Docket No. 28-3.  In its appeal, the BHCWA did not argue the scope of the agency's search for records was unlawfully narrow.  The agency never responded to BHCWA's appeal.

BHCWA initiated this action on May 15, 2020.  Docket No. 1.  After the complaint was filed, the agency again searched for records responsive to the December 7, 2018, FOIA request.  The agency searched for records with dates between January 1, 2018, and August 1, 2020.  See Docket No. 28 at p. 4,

¶ 13.  The agency also searched for all plans of operation and notices of intent responsive to the request that had not been withdrawn or formally acted upon by the agency before January 1, 2018, regardless of the date created or obtained.  Id.  The parties have explained the start time parameter for this search comes from BHCWA's FOIA request and the end time parameter comes from since-abandoned settlement discussions between the parties.  Id.; Docket No. 34-1 at p. 2, ¶ 10.

The agency identified 21 people as records custodians likely to possess responsive documents.  Docket No. 28 at pp. 4-6, ¶ 15.  These records custodians searched in three waves, with an initial group of custodians performing searches, followed by a second batch, then the records of a final group of custodians—those who had retired or left the agency—were searched through an eDiscovery process.  See Docket No. 28 at p. 6, ¶ 16; Docket No. 34-1 at p. 5, ¶ 21.

Most of the records custodians searched their own documents using search parameters they identified as most likely to identify potentially responsive documents.  The agency has provided a list of locations that 15 of the records custodians—or the people searching on their behalf—searched and the search terms they used.  Docket No. 28 at pp. 6-8, ¶ 18.  These records custodians limited their searches to electronic media, primarily email correspondence and attachments and, to a lesser extent, storage drives.  Id.

In the case of the six records custodians who had retired or left the agency, the agency's Chief Information Office's eDiscovery department

4

identified responsive email correspondence using search terms identified by the FOIA coordinator of the Black Hills National Forest.  Id. at p. 9, ¶ 21.

Responsive records were collected and imported to FOIAXpress, the software used by the agency to process documents in connection with FOIA requests.  Id. at p. 10, ¶ 23.  The documents collected from the records custodians were generally received in their native format, then were converted to PDF as they were processed in FOIAXpress.  Id. at p. 10, ¶ 24.  Geographic Information Systems ("GIS") data was not processed using FOIAXpress.  Id.; Docket No. 34-1 at p. 9, ¶ 41.

Agency personnel reviewed the documents after they had been processed in FOIAXpress and applied redactions to material believed to be exempt from disclosure under FOIA.  Docket No. 28 at p. 10, ¶ 25.  After review was completed, the agency applied Bates stamps to each page of the production and made them available to BHCWA on an electronic file sharing website.  Id. at ¶ 26.  The files were available for download or viewing for a period of 30 days, subject to extension on request by BHCWA.  The agency notified BHCWA via email every time it produced a set of documents and sent BHCWA a cover letter memorializing each production.  See Docket No. 28-4.  From September 2020 to January 2021, the agency provided BHCWA 23,132 pages of documents and 130 megabytes of GIS files.  Docket No. 28-4 at pp. 1-17.  The

agency provided BHCWA with a <u>Vaughn</u>[1] index describing the documents withheld and the bases for those withholdings.  <u>See</u> Docket No. 28-5.

According to BHCWA, the agency provided an additional 149 pages of responsive records and an amended <u>Vaughn</u> index via email on February 18, 2021.  Docket No. 34 at p. 1 n.1.  The parties have not provided the court with this email correspondence or any amended <u>Vaughn</u> index.

Both parties now move for summary judgment.  The agency argues it has satisfied the requirements of FOIA and has not unlawfully withheld documents.  The agency also argues BHCWA's claims related to its 2019 search are moot because the responsive, non-exempt documents have been produced.  Lastly, the agency argues it has adequately complied with FOIA by producing non-searchable PDFs via a filesharing website despite BHCWA's request for searchable PDFs produced on physical storage media.

BHCWA argues the agency's final FOIA determination dated February 12, 2019, unlawfully withheld documents in contravention of FOIA because the exemption asserted by the agency did not apply.  BHCWA also asks the court for a declaration that the agency's 2019 search was unlawfully narrow.  BHCWA asserts the withholdings documented in the <u>Vaugh</u> index are unlawful because the exemptions cited by the agency do not apply.  Lastly, BHCWA argues the manner of the agency's production of records was unlawful and

---

[1] <u>See</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820, 826-28 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1974).

asks the court for an order compelling the agency to produce the documentary records as searchable PDFs on physical storage media.

## DISCUSSION

### A.     Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Generally, the court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66-67 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e) (each party must properly support its own assertions

7

of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

FOIA cases are generally resolved through summary judgment.  See Harrison v. Exec. Office of U.S. Attorneys, 377 F. Supp. 2d 141, 145 (D.D.C. 2005) (citations omitted) ("FOIA cases are typically and appropriately decided on motions for summary judgment.").  "In a FOIA case, summary judgment is available to a defendant agency where 'the agency proves that it has fully

8

discharged its obligations under FOIA, after the underlying facts are the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs, 542 F.3d 1204, 1209 (8th Cir. 2008) (quoting Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985)). "In order to discharge this burden, the agency 'must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" Miller, 779 F.2d at 1382-83 (quoting Nat'l Cable Television Ass'n, Inc. v. Fed. Commc'n Comm'n, 479 F.2d 183, 186 (D.C. Cir. 1973)). The court has jurisdiction to enjoin the agency from withholding agency records and to order the production of improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). It is the agency's burden to show its withholding of records was lawful. Id.

The mere fact that both parties have filed cross-motions for summary judgment does not necessarily mean that no genuine dispute of a material fact exists; nor do cross-motions constitute a stipulation to the court's disposition of the case by motion. Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); Barnes v. Fleet Nat'l. Bank, N.A., 370 F.3d 164, 170 (1st. Cir. 2004). Rather, cross-motions require the court to evaluate each motion independently and determine whether that movant is entitled to judgment as a matter of law. C. Line, Inc. v. City of Davenport, 957 F. Supp. 2d 1012, 1024-25 (S.D. Iowa 2013); St. Luke's Methodist Hosp. v. Thompson, 182 F. Supp. 2d 765, 769 (N.D. Iowa 2001).

9

**B.    Whether BHCWA's Claims Related to the 2019 Search Are Moot**

As a preliminary matter, the court considers the agency's argument that BHCWA's claims related to the 2019 search are moot because the agency has produced responsive documents after performing a subsequent search in 2020- *after* BHCWA filed this lawsuit.  The agency cites Kuntz v. U.S. Dep't of Justice, Case No. 1:17-cv-223, 2018 WL 3381395, at *2 (D.N.D. July 11, 2018), for the proposition that "[i]t is well-established that a claim for relief under FOIA becomes moot and subject to dismissal if the government department or agency produces the requested documents after a complaint has been filed." Id.  See also Heily v. U.S. Dep't of Defense, No. 13-5055, 2013 WL 5975876, at *1 (D.C. Cir. Oct. 16, 2013) (per curiam) (affirming district court's dismissal for mootness of FOIA claim after responsive documents were produced).

BHCWA argues its claims related to the 2019 search are not moot because the allegedly illegal conduct undertaken by the agency in its 2019 search is likely to be repeated.  "The test for mootness is stringent.  Mere voluntary cessation of allegedly illegal conduct does not moot a case; otherwise, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.' " Ctr. for Special Needs Tr. Admin., Inc. v. Olson, 676 F.3d 688, 697 (8th Cir. 2012) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).  "Instead, a case becomes moot if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " Id. (quoting Strutton v. Meade, 668 F.3d 549, 556 (8th Cir. 2012)).  Courts have

10

held that, in the FOIA context, claims are not always mooted by the production

of responsive documents.

> So long as an agency's refusal to supply information evidences a policy or
> practice of delayed disclosure or some other failure to abide by the terms
> of the FOIA, and not merely isolated mistakes by agency officials, a
> party's challenge to the policy or practice cannot be mooted by the
> release of the specific documents that prompted the suit.

Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988).

Accordingly, the court turns to the question of whether the alleged

deficiencies of the agency's 2019 search are likely to recur, i.e., whether there

is evidence of a policy and practice of noncompliance with FOIA; if there is no

such evidence, BHCWA's claims related to the 2019 search are moot.

### 1.    Justiciability of Policy and Practice Claims

Although the Eighth Circuit has not recognized or articulated the

standards applicable to a pattern and practice claim in the FOIA context,

"[o]ther circuits and districts have . . . concluded that a plaintiff may bring an

independent claim alleging a pattern or practice of violating the FOIA." Am.

Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health

Inspection Serv., 19 Civ. 3112 (NRB), 2021 WL 1163627, at *14 (S.D.N.Y. Mar.

25, 2021) (quoting Pietrangelo v. U.S. Army, 334 F. App'x 358, 360 (2d Cir.

2009)).

As the D.C. Circuit has concluded, there is nothing in FOIA that prevents

a federal court from granting equitable relief to address an agency's "policy or

practice" that "will impair the [requester's] lawful access to information in the

future." Payne Enters., Inc., 837 F.2d at 491, 494 ("FOIA imposes no limits on

11

courts' equitable powers in enforcing its terms."). <u>See also</u> <u>Judicial Watch, Inc.</u>
<u>v. U.S. Dep't of Homeland Sec.</u>, 895 F.3d 770, 777 (D.C. Cir. 2018) (noting that
FOIA authorizes courts to "enjoin the agency from withholding agency records"
and that "[t]his injunctive authority does not limit the district court's inherent
injunctive powers") (citations omitted).

Consistent with this view of federal courts' equitable authority under
FOIA, other federal courts have proceeded to adjudicate FOIA policy and
practice claims. <u>See, e.g.</u>, <u>Doyle v. U.S. Dep't of Homeland Sec</u>, 331 F. Supp.
3d 27, 66 (S.D.N.Y. 2018), <u>aff'd</u>, 959 F.3d 72 (2d Cir. 2020); <u>Panjiva, Inc. v.</u>
<u>U.S. Customs & Border Prot.</u>, 342 F. Supp. 3d 481, 496 (S.D.N.Y. 2018), <u>aff'd</u>,
975 F.3d 171 (2d Cir. 2020); <u>Lybarger v. Cardwell</u>, 577 F.2d 764, 767 (1st Cir.
1978); <u>Hajro v. U.S. Citizenship & Immigration Servs.</u>, 811 F.3d 1086, 1103
(9th Cir. 2016); <u>N.Y. Times Co. v. F.B.I.</u>, 822 F. Supp. 2d 426, 431 (S.D.N.Y.
2011). For purposes of this report and recommendation, this magistrate judge
will assume without so holding that policy and practice claims are justiciable
and analyze BHCWA's claims accordingly.

As articulated by the D.C. Circuit, policy and practice claims are viable
when a plaintiff establishes that "an agency's refusal to supply information
evidences a policy or practice of delayed disclosure or some other failure to
abide by the terms of the FOIA" as opposed to "isolated mistakes by agency
officials." <u>Payne</u>, 837 F.2d at 491. These policies need not be formal; a
complaint can survive dismissal by alleging that an agency adopted an informal
policy or practice of violating the FOIA. <u>Judicial Watch</u>, 895 F.3d at 778-79

(citations omitted).  Plaintiffs may, for example, state a claim by alleging that "repeated, unexplained, and prolonged delay[s] in making information available" or "regular[] fail[ures] to issue determinations in response to [plaintiff's] . . . FOIA requests with the time period required by FOIA" have resulted in an agency's "persistent failure to adhere to FOIA's requirements" and "will interfere with [plaintiff's] right under FOIA to promptly obtain non-exempt records from the agency in the future." Id. at 779-80 (citations and internal quotation marks omitted).  A policy and practice claim may also rest on allegations that an agency is routinely withholding non-exempt information from disclosure in bad faith.  Payne, 837 F.2d at 487-91.

Government agencies cannot moot a policy and practice claim by simply producing the information plaintiff requested.  Judicial Watch, 895 F.3d at 777.  Rather, a claim remains justiciable so long as a plaintiff can show that the agency's practice "will impair the party's lawful access to information in the future," id. (citation omitted), and that the plaintiff "will suffer continuing injury due to this practice," Payne, 837 F.2d at 490-91 (citation and internal quotation marks omitted).  See also Am. Soc'y for the Prevention of Cruelty to Animals, 2021 WL 1163627, at *14-15 (applying these standards in the context of cross motions for summary judgment).

### 2.     FOIA Denial Under Exemption 4

BHCWA argues its claims arising from the agency's 2019 denial of its FOIA request under Exemption 4 are not moot because the agency will return to its practice of withholding *proposed* (as opposed to *approved*) mining

proposals absent injunctive relief.  USDA regulations require the withholding of certain confidential commercial information under Exemption 4.  See 36 C.F.R. § 228.6; 7 C.F.R. § 1.8.  In this mootness analysis, the court does not consider the propriety of the 2019 withholdings under Exemption 4; the only question is whether the allegedly unlawful activity—withholding proposed mining plans of operation—evidences a policy and practice of noncompliance with FOIA that will impair BHCWA's lawful access to information in the future, thereby causing BHCWA injury.  The court concludes it does not.

Section 1.8(c) of title 7 of the Code of Federal Regulations requires that a submitter of confidential commercial information designate in their submissions by appropriate markings at the time of submission any material that it considers protected from disclosure under Exemption 4.  It is undisputed that the submitters of the four plans of operation withheld in 2019 were not required to comply with § 1.8(c), and there is some indication this was the root cause of the 2019 withholding—absent the submitters' designation of confidential commercial information, the agency withheld from BHCWA the four proposed plans in their entirety.  The record also suggests at least one plan of operation at issue in BHCWA's FOIA request was the subject of two other FOIA requests, but was withheld under Exemption 4 each time.  Docket No. 32-6 at p. 8.

However, the agency has presented facts suggesting its practice surrounding Exemption 4 has changed, and that change has proven effective in limiting the withholding of proposed plans of operation.  See Docket No. 36 at

14

pp. 4-5, ¶¶ 16-17.  The agency now requires submitters to denote any portions of their submissions they believe are confidential commercial information protected from disclosure under Exemption 4.  According to the agency, BHCWA submitted a new FOIA request on October 20, 2020, and the agency released proposed mining plans of operation and withheld no records as confidential commercial information unless those records had been previously identified by the submitter as such.  Id.

Here, the record demonstrates that the withholding of proposed mining plans of operation is not likely to recur.  Indeed, the agency has shown it has adjusted its policies to prevent such withholding from recurring.  As such, there has been no showing that the agency's practice will impair BHCWA's lawful access to information in the future.  BHCWA's claim as to the lawfulness of the agency's 2019 withholding under Exemption 4 is moot because there has been no showing of a policy or practice of withholding that is likely to impair BHCWA's access to records in the future.

### 3.    Timeliness

Under FOIA, federal agencies must respond to properly received FOIA requests within 20 business days.  5 U.S.C. § 552(a)(6)(A)(i).  In "unusual circumstances," an agency can extend the 20-day time limit for processing a FOIA request if it tells the requester in writing why it needs the extension and when it will decide the request.  5 U.S.C. § 552 (a)(6)(B)(i).

To the extent BHCWA seeks relief based on the agency's withholding records in violation of FOIA's prompt-disclosure requirement, Docket No. 30 at

p. 2, that claim was mooted by the agency's February 12, 2019, response. When a plaintiff challenges the timeliness of the agency's response, the claim becomes moot when the agency provides any response at all.  Meyer v. Comm'r, No. 10-cv-767 (JNE/JJK), 2010 WL 4157173, at *6 (D. Minn. Sept. 27, 2010) (collecting cases), report and recommendation adopted, 2010 WL 4134958 (D. Minn. Oct. 19, 2010); see also In Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 83, 112 (D.D.C. 2008) (finding FOIA claim moot after agency provided all responsive documents); Greene v. U.S. Dep't of Justice, No. 20-cv-1207 (ECT/LIB), 2021 WL 1340066, at *5 (D. Minn. Apr. 9, 2021).

BHCWA also makes the claim, for the first time in its reply brief, that it is entitled to injunctive and declaratory relief stemming from the agency's practice of belatedly responding to FOIA requests.  Docket No. 38 at p. 6.  The BHCWA FOIA request at the center of this dispute was filed on December 7, 2018, and the agency did not respond until February 12, 2019.  See Docket No. 28-2.  It is beyond question this response was untimely; it was served well over 20 working days after it was received.  BHCWA has also submitted the agency's response to a FOIA request dated October 20, 2020.  Docket No. 38-2. According to the response, the agency received the request on November 3, 2020, and responded on December 16, 2020, more than 20 working days after receipt of the request.  Id.  There is no indication in the record that the agency notified BHCWA it needed an extension of time for unusual circumstances. Accordingly, the agency's responses to these two FOIA requests were untimely.

The question then is whether the agency's tardy responses suggest a policy or practice that will impair BHCWA's lawful access to information in the future. There has been no assertion that the agency has a formal policy of responding late to FOIA requests; the court therefore considers whether the evidence suggests an informal policy.

The court concludes the record does not evince a practice or policy of delay. While the court expresses concern that the agency did not provide BHCWA responses to these two FOIA requests within the timeframe established by law, these two occurrences are not enough to show a "persistent failure to adhere to FOIA's requirements." Judicial Watch, 895 F.3d at 777. Put another way, even making all reasonable inferences in favor of BHCWA, it is not clear that the agency will interfere with BHCWA's lawful right of access to non-exempt information in the future based only upon the agency's untimely responses to these two FOIA requests.

The D.C. Circuit's decision in Judicial Watch is an instructive counterbalance to the circumstances of this case. In Judicial Watch, the plaintiff submitted 19 FOIA requests to the Secret Service between July 2014 and August 2015. Judicial Watch, 895 F.3d at 776. The Secret Service acknowledged receipt of and assigned tracking numbers to 17 of the requests, then took no further action in responding to them. Id. In November 2015—between 3 and 18 months after the agency received the requests—Judicial Watch filed suit. Id. Part of Judicial Watch's claim was that the Secret Service had a policy and practice of violating FOIA's procedural requirements,

17

including the timeliness requirement, which hampered their lawful access to non-exempt information.  Id.

In asserting this non-responsive conduct was part of a policy or practice calculated to deny requesters prompt access to non-exempt information, Judicial Watch directed the court to five other lawsuits it had filed against the Secret Service when it had previously engaged in this nonresponsive conduct. Id. at 779.  The D.C. Circuit considered that six nearly identical lawsuits had not deterred the Secret Service from its practice of acknowledging receipt of FOIA requests and then taking no action on them until Judicial Watch sought redress in court.  Id. at 780.  The court found that, with this showing, Judicial Watch met its burden of showing a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future.  Id. at 780-81.

Here, even making all reasonable inferences in BHCWA's favor, the agency conduct here is not so persistent as to amount to a pattern.  First, the agency here was not so evasive as the Secret Service in Judicial Watch. Although the agency's responses were tardy, the agency substantively responded to the requests within approximately two months of each request. And—unlike in Judicial Watch, where there were seven lawsuits, the last of which involved 19 FOIA requests—the record includes reference to only two FOIA requests.  From these two relatively weak data points the court is unable

18

to identify a persistent pattern of activity that would prevent BHCWA from receiving timely disclosures in the future.

The court concludes the record, with its facts interpreted in favor of BHCWA and all reasonable inferences made in BHCWA's favor, does not suggest a pattern or policy of delayed responses that would prevent BHCWA's timely access to non-exempt records in the future.

### 4.    Unlawfully Narrow Search

BHCWA, in its reply brief, appears to be arguing that the 2019 search was unlawfully narrow.  Docket No. 38 at p. 8.  As evidence of this unlawfulness, BHCWA points to the over 23,000 pages of responsive records the agency has since disclosed.  First, the issue of the reasonableness of the 2019 search is moot.  BHCWA has not made a policy and practice claim as to the reasonableness of the scope of the 2019 search.  Generally, a FOIA case becomes moot "when requested documents have already been produced." Urban v. United States, 72 F.3d 94, 95 (8th Cir. 1995) (quotation omitted). Because BHCWA has not made a colorable claim that this generality should not apply, e.g., by making a policy and practice claim, the court must conclude any claim related to the adequacy of the 2019 search was mooted by the subsequent disclosures.

Second, the argument that the inadequacy of the 2019 search is proved by the subsequent disclosures is misplaced.  "[C]ontinuing discovery and release of documents does not prove that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to

19

search for responsive documents." <u>Landmark Legal Found. V. Envtl. Prot.</u>
<u>Agency</u>, 272 F. Supp. 2d 59, 63 (D.D.C. 2003) (citing <u>Meeropol v. Meese</u>, 790
F.2d 942, 952-53 (D.C. Cir. 1986)).  Accordingly, even if this claim were not
moot, the agency's subsequent disclosure is not evidence of the 2019 search's
inadequacy or lack of good faith.

There is no genuine issue of material fact whether the 2019 search was
unlawful or evidences a policy or practice of agency conduct that is likely to
harm BHCWA's access to non-exempt information in the future.  The court
recommends granting summary judgment for the agency and denying
summary judgment for BHCWA on this issue.

**C.    Whether the 2020 Search Was Reasonable**

When considering the reasonableness of the search, summary judgment
turns on whether the "search's adequacy, particularly in view of well defined
requests and positive indications of overlooked materials." <u>Reporters Comm.</u>
<u>for Freedom of the Press v. Fed. Bureau of Investigation</u>, 877 F.3d 399, 402
(D.C. Cir. 2017) (citations and internal quotation omitted).  The court reviews
*de novo* whether the agency has satisfied its burden of demonstrating a FOIA-
compliant search.  <u>In re Dep't of Justice</u>, 999 F.2d 1302, 1305 (8th Cir. 1993)
(citing 5 U.S.C. § 552(a)(4)(B)).

"The adequacy of an agency's search for requested documents is judged
by a standard of reasonableness, i.e., 'the agency must show beyond material
doubt . . . that it has conducted a search reasonably calculated to uncover all
relevant documents.' " <u>Miller v. U.S. Dep't of State</u>, 779 F.2d 1378, 1383 (8th

Cir. 1985) (quoting <u>Weisberg v. U.S. Dep't of Justice</u>, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  But the search need only be reasonable; it does not have to be exhaustive.  <u>Mace v. Equal Emp't Opportunity Comm'n</u>, 197 F.3d 329, 330 (8th Cir. 1999) (per curiam) (citing <u>Miller</u>, 779 F.2d at 1383).  "[O]nce the agency has shown by convincing evidence that its search was reasonable, i.e., that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith."  <u>Miller</u>, 779 F.2d at 1383 (citing <u>Weisberg</u>, 705 F.2d at 1351).

"An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith."  <u>Miller</u>, 779 F.2d at 1383 (citing <u>Goland v. Central Intelligence Agency</u>, 607 F.2d 339, 352 (D.C. Cir. 1978).  "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."  <u>Judicial Watch v. U.S. Dep't of Homeland Sec.</u>, 857 F. Supp. 2d 129, 139 (D.D.C. 2012) (quoting <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982)).  FOIA directs the court to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility."  5 U.S.C. § 552(a)(4)(B).

Here, the agency has submitted the declaration of Jenna Sloan in support of the reasonableness of its 2020 records search.  Ms. Sloan is the

Strategic Planning Director for the U.S. Forest Service, Rocky Mountain Region. Docket No. 28 at p. 1, ¶ 1. The agency asserts that, because Ms. Sloan's declaration is detailed, nonconclusory, and reasonably describes the agency's search and withholdings in response to BHCWA's FOIA request, it is entitled to substantial weight and a presumption of good faith. The court agrees. The declaration sets out in detail the agency's methodologies in identifying records custodians, searching for documents responsive to the FOIA request, review of documents responsive to the FOIA request, and production of non-exempt responsive documents. Accordingly, the court considers whether BHCWA has shown the agency's search was not undertaken in good faith by submitting countervailing evidence or apparent inconsistency of proof.

**1.    Whether the Agency's Identification of Records Custodians Was Reasonable**

First, BHCWA asserts the agency unreasonably limited its search to the 21 records described in Ms. Sloan's declaration. See Docket No. 34 at pp. 6-8. BHCWA's argument starts out on the wrong foot. BHCWA argues the agency's limiting the search to the 21 identified records custodians was unreasonable because it is a "purely speculative assertion that all communications 'would have been routed through or originated by' one of these 21 persons." Docket No. 34 at p. 6 (citing Docket No. 26 at p. 17). The agency's search for documents need not be exhaustive; it need only be reasonable. Mace, 197 F.3d at 330. While it is true Eighth Circuit precedent also requires the agency to conduct "a search reasonably calculated to uncover all relevant documents" in places where such records "might be found," Miller, 779 F.2d at 1383, the

22

standard is reasonableness, not exhaustiveness.  The agency has submitted a detailed declaration to support the reasonableness of its search by 21 records custodians.  BHCWA's assertion that the search was unreasonable simply because it was not exhaustive is unpersuasive.

BHCWA further argues the agency's use of only 21 records custodians was unreasonable because, based upon its review of the over 23,000 pages produced by the agency, it has identified 78 agency personnel[2] who are named in the agency disclosures.  Of these 78, 10 are among the 21 records custodians identified by the agency.  Of the remaining 68 agency personnel, BHCWA does not indicate what record-creating activity it believes 57 of the agency personnel engaged in.  See Docket No. 34-3 at pp. 5-10.  For those 57 people, the record suggests they were merely named in the agency disclosures; there is no showing that they would reasonably be expected to possess non-cumulative documents responsive to BHCWA's FOIA request, and it was reasonable for the agency not to identify these people as records custodians.

Based upon BHCWA's submission, it is clear it expects the agency to solicit documents from every person whose name appears in the records

---

[2] BHCWA makes several misrepresentations about this number.  First, to dispel any misapprehensions, the correct number is 78.  Yes, there are 79 rows in the table at Docket No. 34-3 at pp. 5-10.  But row number one defines the columns.  Second, BHCWA represents this number of people is "approximately 100 persons."  Docket No. 34 at p. 5.  The court is reluctant to round so generously.  Third, BHCWA represents it has identified "an additional 79" agency personnel, implying these people were not among the 21 agency records custodians.  Based on the court's review, ten of these people were among the 21 agency records custodians.  A fair reading of BHCWA's submission suggests it has identified 68 additional agency personnel from the over 23,000 pages produced already.

produced by the agency. But not every name that appears in a record relates to a person who is likely to have information responsive to the FOIA request. See Morley v. Central Intelligence Agency, 508 F.3d 1108, 1121 (D.C. Cir. 2007) ("[M]ere reference to other files does not establish the existence of documents that are relevant to [a] FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail." (quoting Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994)). The court will not impose on the agency a duty to exhaustively search the files of every person named in its disclosures. Again, the standard applicable to an agency's search is reasonableness, not exhaustiveness.

Eight of the remaining 11 people BHCWA references are not reasonably likely to possess responsive documents.

1.    BHCWA has given no indication of what location and position Bethany Doten holds. Docket No. 34-3 at p. 5. BHCWA's submission does not even indicate whether she is employed by the agency. Without this information, the court cannot ascertain whether Ms. Doten is likely possessing responsive records.

2.    The same rationale applies to Jonathan Word. Docket No. 34-3 at p. 10.

3.    BHCWA has alleged Customer Service Representative Teresa Dringman received public comments on Rochford mining on October 26, 2017, before the FOIA request's start date of January 1, 2018. Docket No. 34-3 at p. 5. Accordingly, there is no likelihood Ms. Dringman possesses responsive records.

4.    BHCWA asserts David Hartley, an agency law enforcement officer, is reasonably likely to possess responsive information, Docket No. 34-3 at p. 7, but the agency has shown Captain Hartley's involvement was

24

limited to security at public information meetings regarding mining operations.  Docket No. 39 at p. 5.  This activity is not reasonably likely to generate or result in Cap. Hartly's possession of responsive records.

5.    BHCWA alleges Twila Morris, an executive assistant, is reasonably likely to possess responsive records.  Docket No. 34-3 at p. 8.  But the agency has shown that Ms. Morris did not play a substantive role in exploratory gold mining in the Mystic Ranger District and therefore is not reasonably likely to generate or possess responsive records.  Docket No. 39 at p. 5.

6.    BHCWA asserts Forest Geologist Karl Emmanuel possesses responsive records from communications with the public regarding F3 Gold.  Docket No. 34-3 at p. 6.  But, because BHCWA has not alleged when these communications took place, the court cannot determine whether any records created therefrom would be responsive to BHCWA's FOIA request.

7.    The same is true regarding Chelsea Vollmer.  Docket No. 34-3 at p. 10.

8.    Lastly, BHCWA asserts Adam Weaver was involved in the Triple G project but offers no more concrete description of his suspected record-generating activity.  Docket No. 34-3 at p. 10.

BHCWA has not shown that the agency's exclusion of these people from its pool of records custodians was unreasonable or in bad faith.

However, the remaining three people BHCWA has referenced appear reasonably likely to possess responsive documents.  In its response to the agency's motion for summary judgment, BHCWA points to Brian Hoelscher, an agency administrative contact with the Black Hills National Forest, who participated in meetings about the Mineral Mountain Mining Plan and acted as the agency contact person with the mining company.  Docket No. 34-3 at p. 7; Docket No. 34 at p. 7.  BHCWA alleges Mr. Hoelscher was listed as the administrative contact on a memorandum of understanding between the agency and the company.  Docket No. 34 at p. 7.

25

Based upon this activity, there is a reasonable likelihood that Mr. Hoelscher possesses responsive documents.  And, although BHCWA discussed Mr. Hoelscher in its response to the agency's motion for summary judgment, the agency in its reply did not discuss Mr. Hoelscher or attempt to explain how documents generated or possessed by Mr. Hoelscher would be cumulative of the records possessed by other custodians—i.e., that the 2020 search, even without Mr. Hoelscher, was "reasonably calculated to uncover all relevant documents." Miller, 779 F.2d at 1383 (quotation omitted).  Nor has the agency alleged that Mr. Hoelscher is not reasonably likely to possess responsive documents.  See Docket No. 39 at p. 5 (asserting other personnel listed in the BHCWA table have no reasonable likelihood of possessing responsive documents without mentioning Mr. Hoelscher).  Accordingly, the agency's decision to exclude Mr. Hoelscher from its records custodians appears to have omitted a potential source of relevant documents.

The same is true for Archaeologist Luke Hittner and Range Specialist Scott Albrecht.  BHCWA has alleged Mr. Hittner was involved in the Cutty Sark and Triple G mining proposals.  Docket No. 34-3 at p. 7.  BHCWA has alleged Mr. Albrecht was named in the work plan for the F3 Gold mining proposal.  Id. at p. 5.  The agency does not attempt to explain why these two are not reasonably likely to possess responsive documents.  See Docket No. 39 at p. 5. The agency's decision not to include Mr. Hittner and Mr. Albrecht from its records custodians may have resulted in overlooking responsive documents.

The agency's initial decision to search the records of only the 21 identified records custodians may have been reasonable at the outset of the search. "However, courts 'evaluate[] the reasonableness of an agency's search based on what the agency knew at [the search's] conclusion rather than what the agency speculated at its inception.'" Am. Oversight v. U.S. Gen. Servs. Admin., Civil Action No. 18-2419 (CKK), 2020 WL 1911559, at *6 (D.D.C. Apr. 20, 2020) (quoting Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998)). During the agency's search of custodians' records, it discovered records demonstrating that at least three other individuals could have information responsive to BHCWA's FOIA request. The agency was required to "revise its assessment of what [was] 'reasonable' . . . to account for leads that emerge[d] during its inquiry." Campbell, 164 F.3d at 28. The court concludes that, taking the facts and inferences in the light most favorable to BHCWA as the requester, Mr. Hoelscher, Mr. Hittner, and Mr. Albrecht are reasonably likely to possess records responsive to BHCWA's FOIA request. Accordingly, the court recommends an order compelling the agency to search for responsive records possessed by these individuals.

## 2.    Whether the Search Locations Were Reasonable

As discussed in full herein, the agency had its records custodians—or the people searching on their behalf—search their records in three waves. In the first and second batches, the records custodians searched their own records using their own search parameters based upon the agency's

27

explanation of the subject matter of BHCWA's FOIA request.  Docket No. 28 at pp. 6, 8, ¶¶ 16, 19.

The locations searched by the 15 records custodians who managed the search of their own records were primarily email communications, email attachments, and computer hard drives; some custodians searched shared network drives and other locations, like external storage media.  Id. at p. 9, ¶ 20.  As for the remaining six records custodians—those in the third batch who had retired or left the agency—the agency's eDiscovery program personnel searched email accounts for potentially responsive documents according to search parameters applied by the Black Hills National Forest's FOIA Coordinator.  Id. at p. 9, ¶ 21.

BHCWA argues the locations searched by the records custodians are vague and there are no indication calendars, meeting minutes, or other records created for, or obtained at, meetings with mining proponents or other events were targeted by the search.  See Docket No. 34 at p. 9.  BHCWA also argues the locations searched by the records custodians were overly narrow because there is no evidence any custodian searched paper files, text messages, private messages, or other common methods of communication for potentially responsive documents.  Id.

Therefore, BHCWA argues, the agency's search does not conform with the Electronic FOIA Amendments of 1996, Pub. L. No. 104-231, 110 Stat. 3047, which expanded the definition of "record" in 5 U.S.C. § 552(f) to include "any information that would be an agency record . . . when maintained by an

agency in any format, including an electronic format."  Pub. L. No. 104-231, §

3, 110 Stat. at 3049.  Accordingly, BHCWA argues, the agency has not

searched in all places where records might be found, which requires the finding

that the agency has not met its burden to show the search was reasonable.

"An agency's search 'need not be perfect, only adequate, and adequacy is

measured by the reasonableness of the effort *in light of the specific request.*' "

Judicial Watch, 177 F. Supp. 3d at 457 (quoting Meeropol, 790 F.2d at 956)

(emphasis added).  See also SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201

(D.C. Cir. 19991) (citation omitted) (holding an agency need only show that "the

search was reasonably calculated to discover the requested documents, not

whether it actually uncovered every document extant").

Here, the plaintiff requested:

[A]ny and all agency records created or obtained by the Mystic District
Office or the Black Hills National Forest Office that relate to plans of
operation or notices of intent for exploratory gold drilling in the Mystic
District of the Black Hills National Forest.  The subject matter scope of
this request must be interpreted broadly, and includes but is not limited
to, these specific documents:

- all draft or final plans of operations that have been submitted to
the Forest Service since January 1, 2018 involving existing or
proposed mines in the Mystic Ranger District;

- all draft or final plans of operations and/or notices of intent
referenced in the news article that ran in the Rapid City Journal on
November 25, 2018 quoting Black Hills Deputy Forest Supervisor
Jerry Krueger confirming that "four new plans of operations for
exploratory gold drilling have been submitted to the Black Hills
National Forest" for federal public lands located within the Mystic
Ranger District.

Docket No. 28-1 at p. 1.

The agency argues it has discharged its duty under FOIA to search locations "reasonably calculated to discover the requested documents," SafeCard, 926 F.2d at 1201, because its records custodians—or the people searching on their behalf—searched email accounts and electronic storage drives for responsive documents.  The agency has not, however, carried its burden of showing it was reasonable to exclude from its search all paper records maintained by its records custodians.  The agency has not stated facts suggesting mining applicants exclusively—during the timeframe relevant to BHCWA's FOIA request—submitted proposed plans of operation or other responsive documents electronically as opposed to in hard copy.  Without facts suggesting no responsive documents were received or produced in hard copy, the court simply cannot conclude it was reasonable to forego searching paper files entirely.  Similarly, construing BHCWA's request broadly, responsive documents reasonably include such categories as notes, agendas, and handouts from meetings with the public and mining proponents.  See Am. Oversight, 2020 WL 1911559, at *10 (finding search that excluded paper records unreasonable because "it [was] reasonable to think [the FBI Director] might have notes, handouts, or other [responsive] material that are in paper form and not electronically stored").

Therefore, there exists a genuine issue of material fact whether the agency's search was reasonable because all paper files were, for no clear reason, excluded from the agency's search entirely.  The agency has not carried its burden to establish "that any limitations on the search it undert[ook] in

[this] case comport with its obligation to conduct a reasonably thorough investigation," McGehee v. Cent. Intelligence Agency, 697 F.2d 1095, 1101 (D.C. Cir. 1983), because, absent any indication from the agency to the contrary, it is reasonable to expect at least some responsive documents to exist in hard copy.  The court recommends granting summary judgment for BHCWA and denying summary judgment for the agency on this issue.  The court further recommends an order requiring the agency to direct its records custodians, including the three additional custodians identified in section C.1., to search their paper records for potentially responsive documents.

### 3.    Whether the Search Terms Were Unreasonably Limited

Next, the parties dispute whether the search terms employed by the agency were unreasonably limited.  The agency provided a list of what search terms each of the 15 records custodians in the first and second waves used to search their records.  Docket No. 28 at pp. 6-8, ¶ 18.  The agency supplied each of these custodians with a directive to help frame their search, id. at p. 8, ¶ 19, but left to the custodians the task of deciding what search terms to use because, according to the agency, each custodian was in the best position to determine what search parameters would turn up potentially responsive documents in their records.  Id. at p. 6, ¶ 17.  The records of the six records custodians who had retired or left the agency were searched using search terms applied by the FOIA Coordinator for the Black Hills National Forest.  Id. at p. 9, ¶ 21.

BHCWA argues the search terms were unreasonable because they were randomly selected by each record custodian in waves one and two, no two custodians used the same search terms, no synonyms were used, and the searches did not capture common misspellings. Docket No. 34 at p. 11. Further, according to the agency's list of search locations and terms, some of the custodians used project names, while others did not, and some used company names, while others did not. Id. None of the custodians searched for names of contact persons for the mining companies or the names of contractors the agency hired to review mining proposals. Id. BHCWA notes that none of the custodians used Boolean connectors or otherwise altered the terms to search their records. Id. BHCWA asserts a new search, according to more sophisticated and standardized parameters, is required due to the inadequacy of the agency's 2020 search.

FOIA requires that an agency "make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C). However, "[w]here the search terms are reasonably calculated to lead to responsive documents, a court should neither 'micromanage' nor second guess the agency's search." Bigwood v. U.S Dep't of Def., 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (quoting Agility Pub. Warehousing Co. K.S.C. v. U.S. Nat'l Sec. Agency, 113 F. Supp. 3d 313, 339 (D.D.C. 2015)). FOIA requesters, like BHCWA, generally cannot dictate the search terms for their FOIA request. Physicians for Human Rights v.U.S. Dep't

of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (quoting Nielsen v. U.S.
Bureau of Land Mgmt., 252 F.R.D. 499, 514 (D. Minn. 2009)).  "Rather, a
federal agency has 'discretion in crafting a list of search terms that they
believe[] to be reasonably tailored to uncover documents responsive to the FOIA
request.' "  Bigwood, 132 F. Supp. 3d at 140 (quoting Agility Pub. Warehousing
Co. K.S.C., 113 F. Supp. 3d at 339 (quotation omitted)).

       Thus, the question is whether the agency's search terms are reasonably
calculated to lead to responsive documents.  The court finds they are.  The
search terms employed by the records custodians in the first and second waves
all revolve around locating documents relating to gold mining proposals, letters
of intent, plans of operations, and exploratory drilling in the Mystic District,
sometimes searching for specific projects or companies—exactly the material
requested by BHCWA.  Because the custodians' search terms are reasonably
calculated to uncover potentially responsive documents, the agency's use of
search terms comports with FOIA.  While the court agrees that other, more
inclusive, search terms—things like common misspellings, individuals' names,
and Boolean connectors—might turn up additional responsive documents, the
question is whether the agency's search was reasonable, not whether it was
exhaustive or perfect.  And, "[w]here the agency's search terms are reasonable,
the Court will not second guess the agency regarding whether other search
terms might have been superior."  Liberation Newspaper v. U.S. Dep't of State,
80 F. Supp. 3d 137, 146-47 (D.D.C. 2015).

For these reasons, the court recommends granting the agency's motion for summary judgment and denying BHCWA's motion for summary judgment on the issue of whether the agency's 2020 search locations and terms were reasonable. The court recommends granting BHCWA's motion for summary judgment and denying the agency's motion for summary judgment on the issue of whether the agency's 2020 search was improperly limited to its 21 records custodians. As discussed fully in section C.1., the court recommends an order directing the agency to search for responsive records possessed by Mr. Hoelscher, Mr. Hittner, and Mr. Albrecht.

**D.    Whether the Agency's Withholdings Are Unlawful**

Next, the parties dispute whether the agency's withholdings are unlawful. Here, the agency withheld material from its 2020 search under FOIA Exemptions 3, 5, and 6, and identified those documents in a <u>Vaughn</u> index. <u>See</u> Docket No. 28-5. "To help determine whether a governmental agency has discharged its burden under FOIA, <u>Vaughn</u> indices may be used." <u>Mo. Coal. for Env't Found.</u>, 542 F.3d at 1209 (quoting <u>Crancer v. U.S. Dep't of Justice</u>, 999 F.3d 1302, 1305 (8th Cir. 1993)). "[S]uch an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided." <u>Id.</u> at 1209-10 (quoting <u>Crancer</u>, 999 F.2d at 1306). The purpose of a <u>Vaughn</u> index is to "allow[] both the district court and the requesting party to evaluate the

decision to withhold records and ensure compliance with FOIA." Id. at 1210

(citing Barney v. Internal Revenue Serv., 618 F.2d 1268, 1272 (8th Cir. 1980)).

An agency may withhold information responsive to a FOIA request only if

it "reasonably foresees that disclosure would harm an interest protected by an

exemption described in [5 U.S.C. § 552(b)]; or" "disclosure is prohibited by law."

5 U.S.C. § 552(a)(8)(A)(i). Agencies are under a duty to "consider whether

partial disclosure of information is possible whenever the agency determines

that a full disclosure of a requested record is not possible" and "take

reasonable steps necessary to segregate and release nonexempt information."

5 U.S.C. § 552(a)(8)(A)(ii).

The FOIA exemptions must be "narrowly construed to ensure that

disclosure, rather than secrecy, remains the primary objective of the Act." Mo.

Coal. for Env't Found, 542 F.3d at 1208 (citation omitted). The court may

examine the contents of agency records *in camera* to determine whether such

records, or any part thereof, qualifies under any of the FOIA exemption. 5

U.S.C. § 552(a)(4)(B).

The agency's Vaughn index identifies each withheld document by subject

matter, author, recipient, and date of creation or receipt, the basis for its

withholding, and whether redactions have been applied to withhold the

document in full or in part. See Docket No. 28-5. The index also describes the

bases for the withholdings, namely whether each withholding is under FOIA

Exemptions 3, 5, or 6. Id. There is some indication in the record the agency

has provided BHCWA with an amended Vaughn index. Docket No. 34 at p, 1

35

n.1.  The court has only the <u>Vaughn</u> index submitted by the agency as Docket

No. 28-5.  Therefore, when considering the parties' arguments about the

agency's claimed exemptions, the court considers only the information supplied

in Docket No. 28-5.

    BHCWA argues generally that the agency's <u>Vaughn</u> index is inadequate.

"While agency affidavits [in support of the application of exemptions] receive

'substantial weight,' they must include more than 'barren assertions' that a

document is exempt."  <u>Madel v. U.S. Dep't of Justice</u>, 784 F.3d 448, 452 (8th

Cir. 2015) (quoting <u>Miller</u>, 779 F.2d at 1387).  "Boilerplate or conclusory

affidavits, standing alone, are insufficient to show that no genuine issue of fact

exists as to the applicability of a FOIA exemption."  <u>Mo. Coal. for Env't Found.</u>,

542 F.3d at 1210.  "If the affidavits provide specific information sufficient to

place the documents within the exemption category, if this information is not

contradicted in the record, and if there is no evidence in the record of agency

bad faith, then summary judgment is appropriate without *in camera* review of

the documents."  <u>Quinon v. FBI</u>, 86 F.3d 1222, 1227 (D.C. Cir. 1996) (quoting

<u>Hayden v. Nat'l Sec. Agency/Central Sec. Serv.</u>, 608 F.2d 1381, 1387 (D.C. Cir.

1979).

## 1.    Agency Withholdings Under Exemption 3

    Exemption 3 permits agencies to withhold records that are "specifically

exempted from disclosure by statute" if that statute "requires that the matters

be withheld from the public in such a manner as to leave no discretion on the

issue; or" it "establishes particular criteria for withholding or refers to

36

particular types of matters to be withheld; and" "if enacted after [October 28, 2009], specifically cites to [5 U.S.C. § 552(b)(3)].  5 U.S.C. § 552(b)(3).

The agency asserts Exemption 3 applies to documents depicting maps and GIS data that includes specific locations of significant caves and abandoned mines.  The agency asserts the Federal Cave Resources Protection Act, Pub. L. No. 100-691, 102 Stat. 4546 (1988) ("FCRPA"), requires the withholding of this information.  The FCRPA prohibits disclosure of information concerning the specific location of any "significant cave," unless the agency determines that the disclosure of such information would further the purposes of the FCRPA and would not create a substantial risk of harm to, theft from, or destruction of the cave.  16 U.S.C. § 4304(a).  The FCRPA does not define what a "significant cave" is, but it does require the USDA or Department of the Interior to keep a list of all significant caves on federal lands.  16 U.S.C. § 4303(b)(1).  Presumably, a cave would need to appear on this list for its location to be protected from disclosure by § 4304(a).

According to its Vaughn index, the agency withheld seven pages of documents in full and an unknown quantity of GIS files under Exemption 3 and the FCRPA.  Docket no. 28-5 at p. 5.  The Vaughn index indicates these documents include a "Wildlife Map" that was withheld because it "includes specific locations of significant caves/abandoned mines" and "GIS files of karst and cave data" that "includes specific locations of significant caves/abandoned mines."  Id.

BHCWA disputes this application of Exemption 3 on several grounds. The court analyzes them in turn.

### a.    Substantial Risk of Harm, Threat, or Destruction

First, BHCWA asserts the agency has not shown that the caves at issue here must be withheld subject to 16 U.S.C. § 4304(a) because there has been no showing of a substantial risk of harm, threat, or destruction of the caves. This argument is unpersuasive.  The FCRPA requires withholding of location information regarding significant caves unless the disclosure does not create a substantial risk of harm, theft, or destruction of the cave *and* the agency determines such disclosure would further the purposes of the FCRPA.  16 U.S.C. § 4304(a).  Because BHCWA has not alleged the agency should have found such disclosure would further the purposes of the FCRPA, the agency's alleged failure to consider the substantial risk of harm, theft, or destruction— taken alone—is not enough to cast material doubt upon the agency's application of the FCRPA.  To the extent BHCWA has alleged withholding under Exemption 3 is improper because the agency has not shown that it reasonably foresees harm stemming from the disclosure, FOIA specifies that no such showing is needed if disclosure is prohibited by law.  5 U.S.C. § 552(a)(8)(A)(i). Therefore, no such showing of reasonably foreseen harm is needed when the agency has withheld documents under Exemption 3.

### b.    Abandoned Mines

Next, BHCWA argues the agency's assertion of Exemption 3 over location information regarding abandoned mines is improper because the FCRPA

prohibits the disclosure of location information for significant caves, not mines or other man-made cavities. The court agrees. The FCRPA's confidentiality provision applies only to significant caves. 16 U.S.C. § 4304(a). And the FCRPA expressly excludes mines (and other manmade excavations except manmade entrances to naturally occurring caves) from its definition of "cave." 16 U.S.C. § 4302(1). Therefore, the FCRPA does not provide a basis for withholding location information about abandoned mines, and the agency cites no other law to justify the withholding of records showing the locations of abandoned mines under Exemption 3. The agency has not carried its burden to show location information related to abandoned mines is protected from disclosure by Exemption 3.

### c.    Adequacy of the <u>Vaughn</u> Index as to Exemption 3

Lastly, BHCWA asserts the map data should be released in full or in part because the agency has not segregated the data concerning significant caves from data concerning non-significant caves, which are not covered by the FCRPA. Docket No. 34 at p. 15. Under Eighth Circuit law, a <u>Vaughn</u> index is adequate when the withheld material is fairly described "and the reason for nondisclosure is adequately stated and supported by the law." <u>Mo. Coal. for Env't Found.</u>, 542 F.3d at 1210 (citing <u>Barney</u>, 618 F.2d at 1272). Conclusory assertions that an exemption applies are insufficient. <u>Id.</u>

The <u>Vaughn</u> index fairly describes the material withheld under Exemption 3—a map and GIS data. But the <u>Vaughn</u> index indicates only that the agency believes the FCRPA prohibits the disclosure of the records, and

Ms. Sloan's declarations offer no further explanation of how the agency came to this conclusion.  See Docket No. 28 at p. 12, ¶ 33; Docket No. 36 at p. 5, ¶ 20. Accordingly, the court cannot conclude that the Vaughn index, taken with the information provided in the agency affidavits, demonstrates how the FCRPA operates to prohibit the disclosure of location information for these specific caves.

The agency's submissions leave the court questioning whether the caves whose locations are being withheld are identified on the agency list of significant caves as required by 16 U.S.C. § 4303(b) and, if so, why the agency did not so state in its affidavits.  If not, and the caves are non-significant, the FCRPA does not prohibit the disclosure of location information.  As written, the Vaughn index and agency affidavits offer only conclusions that the FCRPA protects this location information from disclosure without giving BHCWA or the court sufficient information to evaluate this claim.  Compare Mo. Coal. for Env't Found., 542 F.3d at 1210 (finding Vaughn index adequate because accompanying affidavit explained how Exemption 5 operated to protect withheld records).

However, the remedy is not, as BHCWA wishes, full disclosure of the withheld records.  The agency must be afforded an additional opportunity to explain itself and, if necessary, produce the location information or provide a supplemental Vaughn index explaining the basis for its application of the FCRPA.  See Dellums v. Powell, 642 F.2d 1351, 1359 (D.C. Cir. 1980) (finding the "District Court should have afforded Mr. Nixon one more opportunity to

submit a satisfactory index, rather than to ignore his objections and order the immediate release of all of the transcripts to appellee's counsel").  See also Campaign for Responsible Transplantation v. U.S. Food & Drug. Admin., 219 F. Supp. 2d 106, 112-16 (D.D.C. 2002) (ordering the FDA to confer with plaintiff to resolve disputes about its inadequate Vaughn index and then, if necessary, provide a supplemental Vaughn index remedying deficiencies in the original index).  Accordingly, the court recommends denying the agency's motion for summary judgment and granting BHCWA's motion for summary judgment on this issue.  The court urges the parties to confer on the records withheld under Exemption 3.  To the extent they do not agree on whether the FCRPA applies to the caves in question, the court can only evaluate the appropriateness of the redactions based on a supplemental Vaughn index that adequately explains the basis for their exclusion.

### d.    Segregability

"In a FOIA action, the focus is on the information sought, not the documents themselves."  Mo. Coal. for Env't Found., 542 F.3d at 1211-12 (citing Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1209 (D.C. Cir. 1992)).  "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  "The withholding of an entire document by an agency is not justifiable simply because some of the material therein is subject to an exemption."  Mo. Coal. for Env't Found., 542 F.3d at 1212 (citing Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 553 (6th Cir. 2001).

41

Instead, non-exempt portions of documents must be disclosed unless they are "inextricably intertwined" with exempt portions.  Id. (citing <u>Mead Data Cent., Inc. v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 260 (D.C. Cir. 1977)).

In every FOIA case, the district court must make an express finding on the issue of segregability.  <u>Id.</u> (citing <u>Morley</u>, 508 F.3d at 1123).  It is the agency's burden to show that the exempt portions of the documents are not segregable from the non-exempt material.  <u>Id.</u> (citing <u>Davin v. U.S. Dep't of Justice</u>, 60 F.3d 1043, 1052 (3d Cir. 1995).  "The agency's justification must be relatively detailed, correlating specific parts of the requested documents with the basis for the applicable exemption."  <u>Id.</u> (citing <u>Schiller</u>, 964 F.2d at 1209-10).  If the agency's justification is inadequate, the court may require it to submit a more specific affidavit.  <u>Id.</u> (citation omitted).  "The requisite specificity of an affidavit and the reasonableness of segregation are dependent upon the proportion and distribution of non-exempt information on a given document[.]"  <u>Id.</u>

Here, the <u>Vaughn</u> index indicates the wildlife map and the GIS data were withheld in full.  Consistent with the court's previous recommendation, it is not clear whether there are non-exempt portions of the GIS data withheld under Exemption 3—whether they relate to non-significant caves or abandoned mines—that are segregable from any properly-withheld GIS data.  Accordingly, the court recommends that the agency submit a more specific affidavit describing the segregability of properly-withheld GIS data from any non-exempt GIS data that have been improperly withheld.

42

As for the wildlife map, unless there are technical applications unknown to the court, it does not seem feasible to redact exempted map locations and disclose the map with redactions; the locations of the redactions would betray the very locations properly withheld under the FCRPA. Accordingly, the court recommends that if a map contains properly withheld locations, the entire map may be permissibly withheld from disclosure.

### 2.    Agency Withholdings Under Exemption 5

The agency has withheld numerous documents in full and in part according to FOIA Exemption 5. Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify [under Exemption 5], a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

Here, the agency alleges the records were withheld under this exemption because they were inter- or intra-agency documents that were shared among the Forest Service, the Office of the General Counsel, and the Department of Justice, and they were not shared with any non-government personnel other than the contractor hired by the agency to assist with FOIA processing. These documents are, the agency argues, protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

43

a.    **Attorney-Client Privilege**

The attorney-client privilege protects both the giving of legal advice by an attorney, as well as the giving of information by the client for the purpose of receiving legal advice.  Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). Factual material is also protected under the attorney-client privilege if the facts were divulged by the client in confidence to the attorney and relate to the solicitation of legal advice.  Brinton v. U.S. Dep't of State, 636 F.2d 600, 603 (D.C. Cir. 1980).  Confidentiality extends to most employees of clients that are institutions, as opposed to individuals.  Upjohn, 449 U.S. at 392-93.  The attorney-client privilege covers information and communications between employees of an institutional client who possesses facts or hold positions relevant to the ability to give or receive legal advice.  Id. at 394-95.  "[I]t is clear that an agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege . . . ."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980).  It is undisputed that these records originated in and were shared among government agencies.

BHCWA asserts the agency has failed to assert these communications were not circulated to larger groups of individuals, making the documents not confidential.  BHCWA offers no facts to refute Ms. Sloan's averment that documents withheld in full or in part under Exemption 5 were shared only among agency and government personnel and remained confidential.  See Docket No. 28 at p. 13, ¶ 37.  Therefore, BHCWA has not cast material doubt on the agency's assertion of the attorney-client privilege on this basis.

44

BHCWA's primary challenge to the application of the attorney-client privilege is that the agency has not shown a specific harm linked to the purpose of Exemption 5.  See 5 U.S.C. § 552(a)(8)(A).  In 2016, Congress passed the FOIA Improvement Act of 2016 (the "FIA"), Pub. L. No. 114-185, 130 Stat. 538 (2016), which, inter alia, "add[ed] an additional 'foreseeable harm' requirement."  Seife v. Food & Drug Admin., 492 F. Supp. 3d 269, 277 (S.D.N.Y. 2020).  The foreseeable harm standard prohibits agencies from withholding information unless (i) "the agency reasonably foresees that disclosure of the record would harm an interest protected by an exemption," or (ii) "disclosure is prohibited by law."  Ctr. for Investigative Reporting v. U.S. Customs & Border Patrol, 436 F. Supp. 3d 90, 105 (D.D.C. 2019) (quoting 5 U.S.C. § 552(a)(8)(A)(i)).  Therefore, "FOIA now requires that an agency 'release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law.' "  Id. (quoting Judicial Watch, Inc. v. U.S. Dep't of Justice, No. 17 Civ. 832 (CKK), 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019)); see also Ctr. for Investigative Reporting v. U.S. Dep't of Labor, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) ("[E]ven if information falls within the scope of a discretionary exemption, [under the FIA] it cannot be withheld from the public unless the agency also shows that disclosure will harm the interest protected by that exemption.").

The FIA thus "imposes an independent and meaningful requirement on agencies before they may withhold a record under one of FOIA's exemptions."

45

Seife, 492 F. Supp. 3d at 278 (quoting Nat. Res. Def. Council, Inc. v. Envtl. Prot. Agency, No. 17 Civ. 5928 (JMF), 2019 WL 4142725, at *3 (S.D.N.Y. Aug. 30, 2019)); see also Judicial Watch, Inc. v. U.S. Dep't of Commerce, 375 F. Supp. 3d 93, 100 (D.D.C. 2019) (holding that the FIA's foreseeable harm standard imposes a "heightened standard for an agency's withholdings").

Here, the agency has alleged that the redacted information, if disclosed, would reveal confidential, privileged material. See Docket No. 28 at p. 12, ¶ 35. The protection of confidential attorney-client communications is at the heart of the attorney-client privilege as applied through Exemption 5. Therefore, the agency has met its heightened burden under the FIA to show it reasonably foresees harm to its interest in keeping confidential information protected by the attorney-client privilege.

### b.    Attorney Work-Product Doctrine

Records that would be protected from disclosure by the work-product doctrine are properly withheld under Exemption 5. Klamath Water Users Protective Ass'n, 532 U.S. at 8. The attorney work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" by a party's attorney or the attorney's agent. See FED. R. CIV. P. 26(b)(3)(A). Attorney work product also includes an attorney's mental processes. United States v. Nobles, 422 U.S. 225, 237 (1975).

The Agency's Vaughn index provides descriptions of the documents withheld under the work-product doctrine, including the author, recipient, date

created or received, and general subject matter, and it indicates whether each document was withheld in part or fully.  See Docket No. 28-5.  The agency has stated that this information, much of which overlapped with information withheld under the attorney-client privilege, includes information that was prepared by, or at the direction of, attorneys in the context of ongoing or foreseeable litigation and information that contains an attorney's mental impressions in the course of ongoing or anticipated litigation.  See Docket No. 28 at pp. 12-13, ¶ 36.  The agency avers there is a reasonably foreseeable harm that attorney mental impressions and factual work product would be revealed should these documents be disclosed in full.

BHCWA challenges the agency's application of the work-product doctrine on the basis that the agency has not shown that each of these documents was actually prepared in reasonable anticipation of litigation, as opposed to being prepared in the ordinary course of business or with only a remote possibility of litigation.

"The mere relation of documents to litigation does not automatically endow those documents with privileged status."  Maine v. U.S. Dep't of Interior, 298 F.3d 60, 69 (1st Cir. 2002).  The burden is on the agency "to make the correlation between each withheld document and the litigation for which the document was created."  Id. (internal quotation marks omitted) (finding insufficient Vaughn index which described the documents withheld under the work-product doctrine but failed to link those documents to specific litigation for which the documents were created).

47

The agency argues this challenge should fail because the documents over which it has asserted work-product protection were created in reasonable anticipation of *this* litigation.  Docket No. 39 at p. 11.  But this fact is asserted only in the agency's reply brief; it is nowhere to be found in the <u>Vaughn</u> index, the agency's statement of facts, its response to BHCWA's statement of facts, or either of Ms. Sloan's sworn declarations.  Rule 56 requires a party asserting a fact to cite record evidence to support it.  <u>See</u> FED. R. CIV. P. 56(c)(1)(A).  The agency does not support this assertion of fact with citations to the record, and, based upon the court's review of the record, the record does not support this fact.  Therefore, the court cannot say the agency has carried its burden to show the applicability of the work-product doctrine to these documents.  There exists a genuine issue of fact as to whether litigation prompted the creation of these records.  The court recommends denying the agency's motion for summary judgment and granting BHCWA's motion for summary judgment on this issue.

Consistent with the court's recommendation as to Exemption 3 and Rule 56(e)(1), the court recommends requiring the agency to submit a supplemental <u>Vaughn</u> index and/or sworn affidavit providing the court with all facts necessary to evaluate its claim that Exemption 5 protects from disclosure attorney work-product material.

BHCWA also makes the claim that documents relating to the now-abandoned settlement negotiations were improperly withheld because the Eighth Circuit has not recognized a formal settlement privilege.  While this is an accurate description of applicable law, the agency has not asserted a

settlement privilege.  Instead, the agency has asserted independent attorney-client communication and work-product privileges over certain information related to the settlement.  Therefore, BHCWA's argument about the settlement privilege is misplaced, and the court has considered the agency's assertions of attorney-client and work-product privileges regarding settlement documents according to the standards applicable to those privileges.

       **c.**    **Segregability**

As previously stated, the agency has withheld documents in full and in part under Exemption 5 and has noted to what extent each document was withheld in its <u>Vaughn</u> index.  Although the <u>Vaughn</u> index indicates only whether a document was "withheld" or "disclosed in part," the agency has averred that "documents responsive to the FOIA request were reviewed to ensure that all reasonably segregable information not subject to a FOIA exemption was released in the documents produced to Plaintiff."  Docket No. 28 at p. 11, ¶ 31.  There is no indication in the record that this representation is untrue, and BHCWA has not alleged facts to cast material doubt upon the agency's segregation of exempt information from non-exempt information.

Therefore, the court concludes that the agency has carried its burden to show that the exempt portions of the documents were reasonably segregated from the non-exempt portions.

       **3.**    **Agency Withholdings Under Exemption 6**

The agency has also withheld information under FOIA Exemption 6. Exemption 6 permits the withholding of "personnel and medical files and

similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. 552(b)(6).  The agency's <u>Vaughn</u> index indicates it has redacted a number of documents to exclude personal information, such as individuals' addresses, telephone numbers, cell phone numbers, and email addresses.  <u>See</u> Docket No. 28-5.  The agency avers "[t]he disclosure of this information would serve little to no public interest and would constitute an unwarranted invasion of the individuals' privacy."  Docket No. 28 at p. 13, ¶ 38.

### a.    Applicability of Exemption 6

BHCWA first argues the agency has failed to show that Exemption 6 applies to the personal identifying information, specifically as to its assertion that Exemption 6 protects from disclosure information, like private email addresses and phone numbers.  BHCWA also argues it should have unrestricted access to this category of information because "it is well established that contact and other information regarding individuals provide important investigatory tools useful to both government investigation into citizens and citizens' investigations into government officials' activities."  Docket No. 34 at p. 21 (citing <u>In re Clinton</u>, 973 F.3d 106 (D.C. Cir. 2020)).  BHCWA does not indicate to what part of the <u>In re Clinton</u> opinion it refers, and BHCWA provides no further support for its proposition that the right of citizens to government agents' personal contact information is well established.

<u>In re Clinton</u>, for its part, considered an issue not present in this proceeding—a government official's use of a private email account to conduct

government business related to the September 11, 2012, attack on the U.S. consulate in Benghazi, Libya, possibly in an attempt to take those communications outside the purview of FOIA.  973 F.3d at 109-11.  It is an overgeneralization to conclude that, because one government official may have used a private email account to conduct government business, all private email and contact information is fair game for FOIA requesters.  Absent any indication in the record that agency officials used private means of communication to conduct government business regarding the exploratory mining at issue in this FOIA request, the court rejects BHCWA's invitation to abolish FOIA's protection of personal identifying information for the sake of unfettered civilian oversight.

Exemption 6 protects "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."  See Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (alteration and quotation omitted).  These "bits of information" are protected only if they "can be identified as applying to that individual."  See U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (citation omitted); accord Gov't Accountability Project v. U.S. Dep't of State, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) ("Because those email addresses can be identified as applying to particular individuals, they qualify as 'similar files' under Exemption 6 . . . .").  "[U]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act."  Wash. Post Co. v. U.S. Dep't of Health & Human Servs., 690 F.2d 252, 261 (D.C. Cir. 1982).

While "[t]o justify their Exemption 6 withholdings, the [agency] must show that the threat to employees' privacy is real rather than speculative," Elec. Privacy Info. Ctr. v Dep't of Homeland Sec., 384 F. Supp. 2d 100, 116 (D.D.C. 2005) (citation omitted), the agency here has carried that burden. If the withheld information is disclosed, the personal contact information of these individuals would be disclosed; this is a real threat to those individuals' privacy. Contrary to BHCWA's representations, personal email addresses are properly withheld under Exemption 6. See People for the Ethical Treatment of Animals v. U.S. Dep't Housing & Human Servs., 464 F. Supp. 3d 385, 394-95 (D.D.C. 2020) (finding withholding of personal email addresses proper under Exemption 6 where plaintiff made only general assertions that disclosure would serve the public interest).

Having found the personal email addresses are subject to Exemption 6, the court next considers whether disclosure would constitute a clearly unwarranted invasion of privacy. Wash. Post Co., 690 F.2d at 260. To make this determination, a court balances the public interest in disclosure against the individual privacy interests in the information contained in the files. Id. At summary judgment, the FOIA requestor bears the burden of articulating a significant public interest, Schwaner v. Dep't of Army, 696 F. Supp. 2d 77, 82 (D.D.C. 2010), and of showing that disclosure would advance that interest. ACLU v. Dep't of Justice, 698 F. Supp. 2d 163, 165 (D.D.C. 2010). See also Milton v. U.S. Dep't of Justice, 783 F. Supp. 2d 55, 58 (D.D.C. 2011). There is no public interest in disclosure of information about private citizens that

reveals "little or nothing about an agency's own conduct." Reed v. Nat'l Labor Relations Bd., 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989)).

Here, BHCWA fails to proffer the public interest in disclosing the excluded material, save the general assertion that discovering this personal information would benefit the interest of civilian oversight of the government. BHCWA has failed to "adequately support[] its 'public interest' claim with respect to the *specific* information being withheld." Judicial Watch, 876 F.3d at 351 (quotation omitted). BHCWA has not met its burden of showing a public interest in disclosing the material withheld under Exemption 6, and, having engaged in balancing the private and public interests, the court concludes that releasing this information would constitute an unwarranted violation of privacy. Therefore, the court recommends granting summary judgment for the agency and denying summary judgment for BHCWA as to the Exemption 6 withholdings.

### b.    Showing of Harm

BHCWA also asserts the Exemption 6 withholdings are unlawful because the agency has not made the required showing of reasonably foreseeable harm required by the FIA. The foreseeable harm standard prohibits agencies from withholding information unless (i) "the agency reasonably foresees that disclosure of the record would harm an interest protected by an exemption," or (ii) "disclosure is prohibited by law." Ctr. for Investigative Reporting, 436 F. Supp. 3d at 105 (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

But the agency has averred that "[t]he disclosure of this information . . . would constitute an unwarranted invasion of the individuals' privacy."  Docket No. 28 at p. 13, ¶ 38.  Dissemination of private information is a harm which Exemption 6 protects against.  The agency has adequately shown that it reasonably foresees harm in the form of unwarranted invasion of individuals' privacy were the Exemption 6 withholdings disclosed.

### c.    Segregability

According to the Vaughn index, the agency disclosed, in part, all the records that had redactions under Exemption 6.  See Docket No. 28-5.  The agency has averred it redacted the personal identification information and released the remained of the record.  See Docket No. 36 at p. 5, ¶ 19.  There are no facts in the record that suggest the agency has misrepresented the breadth of its redactions under Exemption 6.  Therefore, the court concludes that the agency has adequately segregated the information withheld under Exemption 6 from the non-exempt information and disclosed the non-exempt information.

### 4.    Contractor Redactions

BHCWA also asserts the agency unlawfully withheld information redacted by contractors.  Docket No. 34 at p. 22.  The Vaughn index indicates seven sets of documents were previously redacted *by the contractors that submitted them to the agency*.  Docket No. 28-5 at pp. 1, 5.  BHCWA argues these withholdings are unlawful because FOIA does not provide a basis for contractors to redact information submitted to the agency.  BHCWA's argument

is puzzling.  BHCWA submitted its FOIA request to the agency, and the agency

can provide BHCWA only the information in its possession.  If a contractor

redacted information before submitting it to the agency, clearly the agency does

not possess the withheld information and cannot, in turn, provide it to

BHCWA.  Absent any indication in the record that the agency is withholding

information it possesses from BHCWA in the form of contractor redactions, the

court recommends granting summary judgment for the agency on the issue of

pre-agency redactions made by third parties.

**E.      Form and Format of the Agency's Production**

BHCWA also asserts the agency has violated FOIA by not producing over

23,000 pages in the precise form and format requested.  In its FOIA request,

BHCWA requested that records be produced in electronic format saved on

physical storage media as searchable PDFs.  Docket No. 28-1 at p. 2.  In

producing responsive information to BHCWA, the agency uploaded non-

searchable PDFs to a public-facing filesharing platform and provided BHCWA

with the web addresses where it could download those documents.  See Docket

No. 28-4.  The web addresses provided by the agency remained active for 30

days, subject to renewal by BHCWA.  BHCWA challenges both the agency's

production of the documents as non-searchable PDFs and its use of the

filesharing website to serve its production.

**1.      Whether BHCWA Has Suffered a Cognizable Injury**

As a preliminary matter, the court considers whether BHCWA has

suffered a cognizable injury sufficient to sustain its claim that the agency

unlawfully withheld information in contravention of FOIA's form and format requirements. To have standing to bring a claim in federal court, the claimant must have suffered an injury in fact, meaning that the injury is of a legally cognizable interest which is (a) concrete and particularized and (b) actual or imminent. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992.) "Having documents improperly withheld in response to a FOIA request is a well-established cognizable injury." Frank LLP v. Consumer Fin. Prot. Bureau, 288 F. Supp. 3d 46, 58 (D.D.C. 2017). However, at least in the context of exemptions, "the focus of the FOIA is information, not documents." Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review, 830 F.3d 667, 677 (D.C. Cir. 2016) (quotation omitted). Therefore, the court considers whether the agency has improperly withheld information from BHCWA through its alleged form and format violations; if the summary judgment record demonstrates that the agency has not improperly withheld any information from BHCWA in the form and format of its disclosures, the court recommends a finding that BHCWA lacks standing to raise these claims.

The first step in this inquiry is determining whether the agency has withheld information at all. As for the non-searchable PDFs, the court accepts that the omission of optical character recognition ("OCR") data could support a claim of cognizable injury. OCR data are information which the agency did not produce when it provided BHCWA with over 23,000 pages of unsearchable PDFs. Therefore, the court will consider whether this apparent of information withholding was improper.

But as for the method by which the agency provided BHCWA with records, the court recommends the finding that BHCWA lacks standing to raise this claim because it has suffered no cognizable injury. The agency has averred that BHCWA has accessed and downloaded all the production files made available to it by the agency. Docket No. 36 at p. 8, ¶ 32. BHCWA does not dispute this, and nowhere does it claim it could not access the agency productions. Based upon the summary judgment record, it is undisputed that BHCWA has in its possession all the documents disclosed by the agency, and the court strains to understand how, then, the agency has withheld any information from BHCWA in providing its production files via a filesharing website instead of physical storage media.

The only suggestion of a cognizable injury by BHCWA is that, without physical storage media of the agency disclosure, BHCWA does not have a verifiable record of the FOIA disclosure. Docket No. 34-3 at p. 3, ¶ 12. First, the court does not see how a physical storage media—to which files can be written and overwritten and labels can be applied and removed—is more verifiable than the production files themselves. Nor does BHCWA attempt to explain how a physical storage media would provide a verifiable record of the disclosure, but the production files themselves, along with the emails and letters sent by the agency memorializing the productions, see Docket No. 28-4, do not. Second, BHCWA has not challenged the authenticity of the agency disclosures. Therefore, lack of verifiability is a purely speculative harm; it is not concrete and actual or imminent as required by Lujan.

57

BHCWA also suggests it has incurred harm because, without physical storage media, it has difficulty disseminating the agency disclosures to persons in its community whose internet connections might have difficulty downloading the agency disclosures.  But it is not the agency's job to disseminate information on BHCWA's behalf.  BHCWA, through its president, made a FOIA request to the agency.  The agency discharged its duty under FOIA by providing BHCWA, through its president, more than 23,000 pages of responsive documents.  Moreover, BHCWA has not suggested any reason why it could not save the disclosures to physical media to disseminate them to persons in the community—something which would ameliorate this concern at little expense to BHCWA.  Accordingly, the court recommends a finding that BHCWA lacks standing to challenge the agency's use of cloud sharing to produce its FOIA disclosures because BHCWA has not shown that this form of production caused it cognizable injury.

### 2.    Whether the Agency Improperly Withheld Information by Producing Unsearchable PDFs

Next, the court considers whether the agency improperly withheld information when it provided BHCWA with unsearchable PDFs instead of searchable PDFs.  FOIA mandates that agencies disclose records in "any form or format requested by the person if the record is readily reproducible by the agency in that form or format."  5 U.S.C. § 552(a)(3)(B).  FOIA requires that "[e]ach agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section."  Id.  FOIA does not define the words "form" or "format," so the Court must consider the ordinary

meanings of these words.  See BP Am. Prod. Co. v. Burton, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.").  The United States District Court for the District of Columbia recently analyzed the ordinary meanings of "form or format" as used in 5 U.S.C. § 552(a)(3)(B).  See Sai v. Transp. Sec. Admin., 466 F. Supp. 3d 35, 48 (D.D.C. 2020).  In Sai, the court "constru[ed] 'form' to refer to the media—e.g., paper or thumb drive—and constru[ed] 'format' to refer to the electronic 'structure for the processing, storage, or display' of data . . . e.g. a PDF or JPEG."  Id. (citations omitted).  This court finds no reason to depart from this analysis.  Applying these definitions here, BHCWA's challenge regarding searchable versus unsearchable PDFs is one of format.

BHCWA asserts the agency records are readily reproducible as searchable PDFs, and, therefore, the agency's withholding of the OCR data amounts to an improper withholding of information in contravention of FOIA. This question will turn on whether the agency records are readily reproducible in a searchable PDF format.  BHCWA marshals several arguments to suggest the agency records are readily reproducible in a searchable PDF format.  They are unpersuasive.

First, BHCWA asserts the agency records are—or should be—readily reproducible because the District of South Dakota's electronic filing system rules require litigants to file documents in a searchable PDF format.  Docket No. 30 at p. 8.  But the veracity of this claim has no bearing on the question at hand—i.e., whether the agency records are readily reproducible in that format.

Just because this court imposes certain requirements on parties appearing before it does not mean the agency—which is not even part of the same branch of the federal government—has adopted the same protocols such that this document format is readily reproducible by it in the context of FOIA. BHCWA's reference to the court's electronic filing guidelines does not inform the issue of whether the agency records are reproducible in the requested format.

Second, BHCWA asserts searchable PDFs are reasonably reproducible by the agency because this court has found "that searchable PDF format is a 'reasonably usable' means to produce records." Docket No. 38 at p. 15 (citing Copperhead Agric. Prods., LLC v. KB AG Corp., LLC, No. 4:18-cv-04127-LLP, 2019 WL 6717699, at *10 (D.S.D. Dec. 10, 2019)). But whether searchable PDF is a reasonable usable format is not dispositive of the issue of whether the agency's records in this case were reasonably reproducible in that format.

To inform that question, the court looks to the agency's submissions in support of its motion for summary judgment. Here, the agency has averred that its FOIAXpress software, which it used to process the documents responsive to BHCWA's FOIA request, does not always produce PDFs in a text-searchable format because the software's OCR process takes such a long time and draws so heavily on system resources that running OCR is not reasonably feasible when the production at issue includes large numbers of pages and documents. See Docket No. 36 at p. 7, ¶ 28. The agency further avers processing the disclosures with a separate document management platform to

60

achieve OCR would take multiple days of processing time and require corresponding additional effort and expense. Id. at ¶ 29.

"[A] court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B)." 5 U.S.C. 552(a)(4)(B). The agency has shown beyond material doubt that its records were not readily reproducible through FOIAXpress in a searchable format due to the size and volume of the disclosures in this case.

However, the record, viewed in the light most favorable to BHCWA, suggests the pre-FOIAXpress documents—those that were converted from their native format to PDF in FOIAXpress (Docket No. 28 at p. 10, ¶ 24)—were text-searchable (see Docket No. 34-3 at p. 4, ¶ 18). As other courts have held, "[w]hen an agency already creates or converts documents in a certain format—be it for FOIA requestors, under a contract, or in the ordinary course of business—requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden." TPS, Inc. v. U.S. Dep't of Defense, 330 F.3d 1191, 1195 (9th Cir. 2003); see also Scudder v. Cent. Intelligence Agency, 25 F. Supp. 3d 19, 32 (D.D.C. 2014). So too here, where the only burden alleged by the agency is processing time and related expenses, and BHCWA cites evidence showing the government produces at least some records as searchable PDFs in response to FOIA requests. See Docket No. 38-5 at p. 4 (in

response to another FOIA request, the agency produced text-searchable PDF documents).

Although the Court will not require the agency to reformat records already turned over, see Crooker v. U.S. State Dep't, 628 F.2d 9, 11 (D.C. Cir. 1980) (finding "[w]here the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim"), the court will require the government to provide any future productions in searchable-PDF form.  Accord Eakin v. U.S. Dep't of Def., Civil Case No. 5:16-972, 2019 WL 2368683, at *3-4 (W.D. Tex. June 5, 2019).

The court recommends an order granting summary judgment for the agency and denying summary judgment for BHCWA on the issue of the agency's alleged form and format violations.  However, the court recommends an order that any future disclosures be made in text-searchable PDF format.

## CONCLUSION

In summary, the court recommends an order granting in part and denying in part the agency's motion for summary judgment and granting in part and denying in part BHCWA's motion for summary judgment.  Specifically, the court recommends granting summary judgment for the agency on:

(1) BHCWA's policy and practice claims related to the 2019 search;

(2) BHCWA's claim that the search terms used in the 2020 search were unreasonably limited;

(3) BHCWA's claim that the agency improperly withheld attorney-client communications under Exemption 5;

(4) BHCWA's claim that it improperly withheld information under Exemption 6; and

(5) BHCWA's claim that the agency has violated FOIA in the form and format of its disclosures.

The court recommends granting summary judgment for BHCWA on:

(1) its claim that the 2020 search was unreasonable because the agency excluded records custodians;

(2) its claim that the search locations used in the 2020 search were unreasonable;

(3) its claim that the agency improperly withheld documents under Exemption 3; and

(4) its claim that the agency improperly withheld attorney work-product documents under Exemption 5.

The court further recommends an order requiring the agency to produce documents as searchable PDFs going forward.  Also, the court recommends an order directing the agency to submit a supplemental <u>Vaughn</u> index so the court can properly evaluate its claims of exemption under Exemptions 3 and 5. Lastly, the court recommends an order requiring the agency to direct its records custodians, including the three additional custodians identified in

Section C.1., to search their paper records for potentially responsive documents.

DATED this 30th day of September, 2021.

BY THE COURT:

_____

VERONICA L. DUFFY

United States Magistrate Judge