UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

*******************************************************************

|  |  |  |
|---|---|---|
| | * | |
| BLACK HILLS CLEAN WATER | * | CIV 20-5034 |
| ALLIANCE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | ORDER |
| UNITED STATES FOREST SERVICE, | * | |
| UNITED STATES DEPARTMENT OF | * | |
| AGRICULTURE, | * | |
| | * | |
| Defendants. | * | |
| | * | |

*******************************************************************

## INTRODUCTION

Plaintiff Black Hills Clean Water Alliance ("BHCWA") brings this action under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* ("FOIA") See generally Docket 1. BHCWA alleges the Defendants, the United States Forest Service and United States Department Agriculture (collectively "the agency"), violated the FOIA by improperly withholding records responsive to a FOIA request submitted to the agency by BHCWA. See id. at pp. 13-14. Pending are cross-motions for summary judgment filed by the BHCWA and the agency. See Dockets 25 & 30. The Court referred both motions to Magistrate Judge Veronica L. Duffy pursuant to 28 U.S.C. § 636(b)(1)(B). See Docket 40.

Judge Duffy filed a Report and Recommendation (R&R) recommending the Court grant in part and deny in part both motions for summary judgment. See Docket 41 at pp. 62-64. The parties had fourteen days to file written objections to the R&R. See 28 U.S.C. § 636(b)(1)(C). The agency did not file any objections, however, it submitted a "response" to the R&R in which it indicated the agency is "prepared to comply with [the R&R's] proposed requirements" but thought it pertinent to provide the Court with additional factual information related to three individuals identified in the R&R as possible records custodians. (Docket 42 at p. 1). BHCWA timely filed objections and also filed objections to the "response" to the R&R in that it provided additional factual information. The

objection to the "response" to the extent it provides additional factual information is granted.  <u>See</u> Docket 44 and 45.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the Magistrate Judge's proposed findings and recommendations, the District Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>Id.</u>  The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." <u>Id.</u>

Upon a complete review of the record in this case, including a *de novo* review of those portions of the R&R to which objections were filed, and for the reasons given below, the Court sustains in part and overrules in part BHCWA's objections and adopts the R&R in part, consistent with the Court's analysis and findings below.

## FACTS

Neither party objects to the Magistrate Judge's factual recitation.  The Court finds it is an accurate and helpful summary of the facts in the record.  Therefore, the Court adopts the factual background section in the R&R (Docket 41 at pp. 2-7) in full, supplementing it in the analysis below with additional facts drawn from the record as the Court finds helpful.

## DISCUSSION

### I.      Legal Standard

FOIA cases are often resolved at the summary judgment stage.  <u>See Harrison v. Exec. Off. of U.S. Att'ys</u>, 377 F. Supp. 2d 141, 145 (D.D.C. 2005).  Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The moving party carries the burden to establish no genuine issue of material fact exists on any given issue and that it is therefore entitled to judgment as a matter of law on that issue.  <u>See</u> Fed. R. Civ. P. 56(a).

In evaluating a motion for summary judgment, the Court views the facts and inferences drawn from the facts "in the light most favorable to the nonmoving party." <u>Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs</u>, 542 F.3d 1204, 1209 (8th Cir. 2008); <u>Anderson</u>, 477 U.S. at

255. Summary judgment for a defendant agency is only appropriate " 'where the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.' " Mo. Coal, 542 F.3d at 1209 (quoting Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985)).  The agency meets this burden by showing "that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Miller, 779 F.2d at 1382-83 (internal quotation omitted).  This Court must also be mindful of the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 533 (2016) which added a foreseeable harm standard which prohibits agencies from withholding information unless (i) "the agency reasonably foresees that disclosure of the record would harm an interest protected by an exemption," or (ii) "disclosure is prohibited by law."

**II.   Plaintiff Black Hills Clean Water Alliance's Objections**

BHCWA filed legal objections to the Magistrate Judge's R&R, which the Court summarizes as follows:

1.   BHCWA objects to the Magistrate Judge's finding that BHCWA's claims related to the 2019 search conducted by the agency are moot.  See Docket 44 at pp. 4-7.

2.   BHCWA objects to the Magistrate Judge's findings as to the adequacy of the agency's 2020 post-complaint search in several respects.  See id. at pp. 8-12. Specifically, BHCWA objects to:

   a.   The Magistrate Judge's finding that the agency unreasonably limited its search to 21 records custodians by excluding three additional potential custodians identified in the filings, the search of whose files would remediate the search's inadequacy in this regard.  See id. at pp. 9-10.

   b.   The Magistrate Judge's finding did not go far enough in finding what additional locations had to be searched by the agency.  See id. at pp. 10-11.

   c.   The Magistrate Judge's finding that the search terms employed by the agency were reasonable.  See id. at pp.11-12.

3.   BHCWA objects to the Magistrate Judge's finding that the agency properly

3

withheld responsive material identified in its 2020 search under certain exemptions to the FOIA disclosure requirements. See id. at pp. 12-20. Specifically, BHCWA objects to:

    a.    The Magistrate Judge's finding that the Court can only evaluate the appropriateness of withholdings of material under Exemption 3 to protect the disclosure of the locations of significant caves, as required by federal statute, based on a supplemental Vaughn[1] index providing additional detail. See id. at pp. 14-15.

    b.    The Magistrate Judge's finding that the agency properly withheld responsive material under Exemption 5 pursuant to the attorney-client privilege. See id. at pp. 15-17. BHCWA further objects to the Magistrate Judge's recommendation that the Court require the agency to submit a supplemental Vaughn index so the Court may evaluate the appropriateness of the agency's withholdings pursuant to the attorney work-product doctrine. See id. at pp.17-18.

    c.    The Magistrate Judge's finding that the agency properly withheld personal identifying information under Exemption 6. See id. at pp. 18-20.

4.    BHCWA objects to the Magistrate Judge's findings on its form and format claims pertaining to the agency's 2020 search–particularly:

    a.    That BHCWA lacks standing to challenge the form in which the agency produced the information responsive to BHCWA's request–specifically, via a filesharing website, instead of on physical storage media–because BHCWA failed to show it suffered a cognizable injury, See id. at pp.20-21.

    b.    The Magistrate Judge's recommendation that the Court enter an order requiring the agency to produce any future documents responsive to BHCWA's 2018 FOIA request in the format requested by BHCWA–as searchable rather than unsearchable PDFs. See id. at pp.21-22. BHCWA claims such an order is merely a "partial remedy" and urges the Court instead to order the agency to reproduce all of the records disclosed so far as searchable PDFs. Id. at p, 21.

---

[1] Vaughan v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

4

The Court addresses each objection in turn below.

## III.   Analysis

### A.   Mootness of Claims Pertaining to the Agency's 2019 Search

The agency argues BHCWA's claims related to the agency's initial search conducted in 2019 are moot. (Docket 35 at pp. 1-5.) The Magistrate Judge agreed. See Docket 41 at pp. 10-20. BHCWA objects, arguing its claims related to the agency's 2019 search are not moot. (Docket 44 at pp. 4-7.)

Generally, a "claim for relief under FOIA becomes moot . . . if the . . . agency produces the requested documents after a complaint has been filed." Kuntz v. U.S. Dep't of Just., Case No. 1:17-cv-223, 2018 WL 3381395, at *2 (D.N.D. July 11, 2018); see also Heide v. LaHood, 406 Fed. App'x 83 (8th Cir. 2010) (unpublished per curium opinion). However, post-complaint production of responsive documents by an agency "will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988). Successful policy and practice claims entail a showing that the "agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of" FOIA, not "merely isolated mistakes by agency officials" in the instance underlying the case. Id. Upon a finding of such a policy or practice, whether formal or informal, a district court may enforce FOIA through its equitable powers by ordering production of the records specifically sought and enjoining the agency from continuing to withhold or delay disclosure of records under the improper policy or practice. See Judicial Watch, Inc. v. Dep't of Homeland Sec., 895 F.2d 770, 777 (D.C. Cir. 2018).

As a threshold matter, after BHCWA filed its Complaint in this case on May 15, 2020, the agency conducted a second search for records responsive to BHCWA's 2018 FOIA request. See Docket 41 at pp. 3-5. The agency's 2020 search resulted in over 23,000 pages of documents and 130 megabytes of GIS files which it produced to BHCWA in several installments from September 2020 to January 2021. See id. at p. 5. The agency's 2020 search and corresponding disclosures render BHCWA's claims for relief under FOIA due to alleged deficiencies of the agency's 2019 search

moot,[2] unless those deficiencies indicate a policy or practice of noncompliance with FOIA by the agency that will continue to impair BHCWA's access to information in the future. See Payne, 837 F.2d at 491.

As possible grounds for determining its claims pertaining to the agency's 2019 search are not moot, BHCWA asserts: (1) that the agency will impermissibly continue to withhold proposed mining proposals in the future, as it did in its 2019 search, absent an injunction preventing it from doing so; and (2) the agency will continue to violate FOIA's prompt-disclosure requirement pursuant to its practice, as evidenced by the agency's conduct on two occasions when it failed to meet deadlines to respond to FOIA requests by BHCWA, of persistently delaying disclosure of responsive documents.

As to the first point, federal regulations permit the agency to "promptly provide written notice to [a] submitter of confidential commercial information whenever records containing such information are requested under the FOIA if the [agency] determines that it may be required to disclose the records" and it "has a reason to believe that the requested information may be protected from disclosure . . . but has not yet determined [so]." 7 C.F.R. § 1.8(d). The agency represents it initially withheld the proposed plans identified in its 2019 search while it sought confirmation from the submitters of those plans whether they in fact contained, as the agency suspected, confidential commercial information that would be exempt from FOIA's disclosure requirements. See Docket 36 at pp. 3-4. All the proposed plans identified in the 2019 search were subsequently released. Id. at p. 4. This is not in any way to condone the initial disclosure of absolutely nothing. Ultimately recognizing its obligations under the federal regulations and under FOIA's prompt-disclosure requirements, the agency represents to the Court it has subsequently "adjusted [its] practices" based on its recognition that the federal regulations place a responsibility upon submitters to identify confidential commercial information at the time of submission. (Docket 36 at p. 4; see also 7 C.F.R. § 1.8(c)). The agency further represents that its new practice has thus far proven effective in limiting

---

[2]To the extent, as BHCWA points out in its objections, there is still "a dispute over the search and documents that are still being withheld," those claims are properly addressed in the context of the agency's 2020 search, which was much more comprehensive. (Docket 44 at p.5.) The court takes up the reasonable of the agency's 2020 search next, infra section III.B.

the initial withholding of proposed plans, and it provides as an example its release of records of the same type as are at issue here in response to another more recent FOIA request by Plaintiff similar to the one giving rise to this case. (Docket 36 at p. 5.) These facts do not evince an ongoing policy or practice by the agency that will impermissibly impair BHCWA's access to information in the future.

As to the second point, the facts incontrovertibly show the agency failed to meet FOIA-imposed deadlines on two occasions. First, the agency failed to timely respond to the FOIA request underlying this litigation, which BHCWA submitted to the agency on December 7, 2018. Second, the agency failed to timely respond to another FOIA request submitted by BHCWA to the agency on October 20, 2020. As the Magistrate Judge correctly pointed out, there is no evidence that the agency has a formal policy of responding late to FOIA requests. See Docket 41 at p. 17. One would hardly expect any such policy would be a formal policy. Therefore, the question is whether these two instances in which the agency failed to timely respond to FOIA requests by BHCWA are sufficient evidence to show an informal agency policy of responding late to FOIA requests. While the Court does not condone the agency's failure to meet FOIA-imposed deadlines on these two occasions identified by BHCWA, it cannot reach the conclusion based on these examples alone that the agency operates under an informal policy or practice of responding late to FOIA requests and, thus, BHCWA's access to information in the future will be impaired. The two examples here occurred nearly two years apart and in both instances the agency ultimately responded within a couple of months. Once again, while not condoning that conduct, they do not show a "persistent" pattern of "prolonged delay." Judicial Watch, 895 F.3d at p. 780.

The evidence does not indicate a policy or practice of noncompliance with FOIA by the agency that will continue to impair BHCWA's access to information in the future. See Payne, 837 F.2 at 491. The Court agrees with the Magistrate Judge's legal analysis of this issue and finds her recommendation is an appropriate resolution of BHCWA's claims pertaining to the agency's 2019 search. Accordingly, the Court overrules BHCWA's first objection and finds BHCWA's claims for relief under FOIA due to alleged deficiencies of the agency's 2019 search are moot. The Court adopts the relevant portion of the R&R and grants summary judgment for the agency and denies summary judgment for BHCWA on this issue.

7

### B.    Adequacy of the Agency's 2020 Search

"The adequacy of an agency's search for requested documents is judged by a standard of reasonableness, i.e., 'the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant material.' " Miller, 779 F.2d at 1383 (quoting Weisberg v. U.S. Dep't of Just., 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The search "need only be reasonable; it does not have to be exhaustive." Miller, 779 F.2d at 1383. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." Id. Under FOIA, the Court "accord[s] substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility [of a search] . . . and reproducibility" of requested documents. 5 U.S.C. § 552(a)(4)(B).

"[O]nce the agency has shown by convincing evidence that its search was reasonable, . . . then the burden is on the requester to rebut that evidence." Miller, 779 F.2d at 1383. "This can be done either by contradicting the [agency's] account of the search procedure or by raising evidence of the [agency's] bad faith." Id. at 1384.

The Magistrate Judge made several findings regarding the reasonableness of the agency's 2020 search. See Docket 41 at pp. 20-34. First, she found the agency's determination of 21 records custodians and limitation of its search to the records of those 21 custodians was unreasonable insofar as it excluded three additional individuals who "appear reasonably likely to possess responsive documents" and, therefore, whose files should have been searched. See id. at pp. 22-27. Defendant's Response to Report and Recommendation provided information regarding those three individuals, but that was not a proper addition to the record and was not considered. Second, the Magistrate Judge found the records locations searched by the agency, which primarily included e-mail accounts and electronic storage drives, were unreasonably limited insofar as paper records were entirely excluded. See id. at pp. 27-31. Finally, she found the search terms employed by the agency were reasonable. See id. at pp. 31-34. BHCWA objects to each of these findings, arguing the search should have included the records of a total 78 records custodians instead of the 24 identified in the R&R, that it should have included additional electronic search locations, and that the search terms employed by the agency were not reasonable. See Docket 44 at pp. 9-12.

8

BHCWA also suggests the deficiencies it alleges warrant a Court order requiring a wholesale new search, rather than additional searches specifically aimed at addressing each deficiency identified by the Court. See id. at pp. 8-9. The Court disagrees with this last point. Ordering an entirely new search would be an unnecessarily resource-intensive approach when any inadequacies are curable through specifically tailored additional searches. The Court addresses each of BHCWA's specific objections to the Magistrate Judge's findings regarding the adequacy of the 2020 search in turn.

### i. Records Custodians Identified by the Agency

As stated above, an agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." Miller, 779 F.2d at 1383 (internal quotation omitted). The agency's search need only be reasonable, not exhaustive. See id. BHCWA objects to the Magistrate Judge's conclusion that the agency unreasonably limited its search to the records of 21 identified records custodians, and that this inadequacy can be cured by a search of the records of three additional potential records custodians whose names appear in the records already produced by the agency to BHCWA and who "appear reasonably likely to possess responsive documents"—Brian or Robert Hoelscher, he is referred to by both names, Luke Hittner and Scott Albrecht. (Docket 41 at p. 25; see also Docket 44 at pp. 9-10). BHCWA asserts "a reasonable FOIA search must query those persons likely to have 'created or obtained' an agency record responsive to the FOIA request." Id. at p. 9 (quoting U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 144 (1989)). It grounds its argument in the Tax Analysts case, which identifies two requirements for materials to be subject to FOIA disclosure requirements as agency records: (1) the agency must have "create[d] or obtain[ed] the requested material, and (2) the "agency must be in control of the requested material at the time the FOIA request is made." Tax Analysts, 492 U.S. at 144-45. BHCWA asserts "indications in email addresses and other information in the released agency records identify 78 persons who created or obtained responsive agency records via participation in emails regarding the underlying subject matter." (Docket 44 at p. 9.) BHCWA contends the search will only be reasonable if all 78 individuals' records are searched. See id. at pp. 9-10.

BHCWA misapprehends Tax Analysts, which holds that a requested record must have been *created or obtained by the agency* for it to qualify as an agency record subject to FOIA disclosure

requirements.  See <u>Tax Analysts</u>, 492 U.S. at 144-46.  The case does not espouse the standard BHCWA suggests it does—that, based on the two-pronged definition of agency records which are subject to FOIA disclosure requirements, the records of every person within the agency who created or obtained any material responsive to a FOIA request must be searched in order for a search to be reasonable.  It is plausible that records of agency personnel who create or possess responsive material may be reasonably excluded from the agency's search if the search is nevertheless designed to capture that information in some other way.  That is the case here.  Records of many of the 78 individuals identified by BHCWA were reasonably excluded from the search because the agency determined any responsive records in those individuals' possession would otherwise be identified in its search of the records of its named records custodians and, therefore, searching the records of these additional individuals would be needlessly cumulative and time consuming.  This general approach does not undermine that the agency's search—albeit not an exhaustive one—was reasonably calculated to uncover all relevant material.

Upon a review of the record and the relevant portion of the R&R, the Court agrees with the Magistrate Judge's factual and legal analysis and finds her recommendation is an appropriate resolution of this issue.  The Court finds the agency's 2020 search was unreasonable only insofar as it excluded the records of the three additional custodians identified in the R&R who appeared reasonably likely to possess non-cumulative responsive documents—Brian or Robert Hoelscher, Luke Hittner and Scott Albrecht.  The Court overrules the Defendant's objection that the search is unreasonable short of including the records of all 78 individuals identified by BHCWA.  The Court grants in part and denies in part summary judgment for BHCWA on this issue and directs the agency to conduct searches of the records of Brian and Robert Hoelscher, Luke Hittner, and Scott Albrecht for material responsive to BHCWA's 2018 FOIA request.

### ii.  Records Locations Searched by the Agency

As the Magistrate Judge observed, most of the agency's records custodians conducted searches of their own records using their own search parameters based on the agency's explanation of BHCWA's FOIA request.  <u>See</u> Docket 41 at pp. 27-28.  The agency's eDiscovery program personnel searched the records of the remaining custodians, who were no longer with the agency at the time the search was conducted.  <u>See</u> <u>id.</u> at p. 28.  The only records searched were electronic

10

records—primarily e-mail communications and attachments, computer hard drives, shared network drives and some external storage media.  See id.  The agency provides no explanation in its Vaughn index or in its briefing as to why no paper records were searched.  See id. at p. 30.  It supplies no facts suggesting it was reasonable to exclude hard copy records.  See id.  The Magistrate Judge found—and the Court agrees based on its de novo review of the record and the relevant portion of the R&R—that, absent facts showing otherwise, a reasonable search should have included electronic and non-electronic records locations.

BHCWA, however, argues this finding does not go far enough.  BHCWA seeks an order requiring the agency to search additional electronic records locations, including "potentially responsive text messages, notes" or other potentially responsive material on other internet-based programs or platforms used by the agency.[3] (Docket 44 at p. 10.)  Additionally, BHCWA argues the searches of custodians' e-mail accounts were not reasonable because the facts do not show archived e-mails were searched.  See id. at p. 11.  As support for its position, BHCWA cites Ctr. For Biological Diversity v. U.S. Env't Prot. Agency, 279 F. Supp. 3d 121 (D.D.C. 2017) and Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F. 3d 504 (D.C. Cir. 2011).

The Court in Ctr. For Biological Diversity concluded the U.S. Environmental Protection Agency's ("EPA") search at issue was unreasonable insofar as the EPA failed to either include in its search potentially responsive "text messages, instant messages, or other similar agency communications" or explain in its Vaughn index why or how it is "not feasible to search these [communications] for responsive material."  Ctr. For Biological Diversity, 279 F. Supp. 3d at 143-44.  The court in Ancient Coin Collectors held that the U.S. State Department "failed to show the adequacy of its seach[] because it didn't address its [custodians'] archived emails."  Ancient Coin Collectors, 641 F.3d at p. 514.  The State Department did not "explain whether it possesses email

---

[3] To the extent BHCWA continues to suggest in its objection that the agency's search is unreasonable so long as it excludes the records custodians' private internet-based accounts and communications, such as Gmail or other accounts not associated with the agency, the court denies this portion of BHCWA's objection.  Private search locations are generally beyond the purview of FOIA.  See Tax Analysts, 492 U.S. at 144-45 (holding that, for material to be deemed agency records within the meaning of FOIA: (1) the *agency* must have "create[d] or obtain[ed]" the requested material, and (2) the "*agency* must be in control of the requested material at the time the FOIA request is made") (emphasis added).

11

archives for [current] employees" in addition to former ones, and, if so, whether those archives were included in the e-mail searches conducted by its records custodians and, if not, why not—for example, because such a search would be "impossible, impractical, or futile." Id.

Similarly, in this case, the agency identified broadly that locations such as "email" or "Outlook" or "[O]utlook mail" were searched by its records custodians who were presently with the agency when the search was conducted. See Docket 28 at pp. 6-8. The Court cannot glean from these statements whether or not these searches included archived e-mail and attachments, and, if not, why not. Additionally, the agency provides no indication as to whether other electronic locations, such as chat programs, are used by the agency and were searched or, if programs in addition to Microsoft Outlook are used by the agency and were not searched, why not. The Court agrees with BHCWA that the agency's records custodians may reasonably be expected to have responsive materials in both archived and non-archived e-mail locations, as well as in other communications programs used by the agency in addition to Microsoft Outlook, unless otherwise shown.

The Court sustains BHCWA's objection as to the issue of the reasonableness of the search locations. The Court adopts in part the relevant portion of the R&R and grants summary judgment for BHCWA and denies summary judgment for the agency on this issue. The Court directs the agency to conduct searches of its records custodians' hard copy records, as well as archived e-mail records and agency communications in any programs used by the agency in addition to Microsoft Outlook, or to establish if searches of these additional locations are not feasible—and, if so, why the agency's search is nevertheless reasonably calculated to uncover all relevant material if such locations are excluded. As for paper records, the Court adopts the discussion and recommendation of the Magistrate Judge and orders that the agency direct its records custodians to search their paper records for potentially responsive documents.

### iii. Search Terms Used by the Agency

The Magistrate Judge determined the search terms employed by the agency were reasonable. See Docket 41 at 31-34. BHCWA objects, arguing that the "narrow and unsophisticated search terms" identified by the agency in its explanation of its search procedure do not show the search was reasonably calculated to uncover all relevant material requested by BHCWA. (Docket 44 at p. 11.) The Magistrate Judge correctly identified the applicable law, which holds that FOIA requesters

12

"generally cannot dictate the search terms for their FOIA request." (Docket 41 at p. 32 (citing Physicians for Hum. Rts. v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009)). Furthermore, "[w]here the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search.' " (Docket 41 at p. 32 (quoting Bigwood v. U.S. Dep't of Def., 132 F. Supp. 3d 124, 140 (D.D.C. 2015))). While the Magistrate Judge agreed with BHCWA that "other, more inclusive search terms . . . might turn up additional responsive documents," she noted the agency's search was not required to be "exhaustive or perfect" and ultimately concluded the search terms employed by the agency were reasonably calculated to uncover all relevant documents. (Docket 41 at p. 33.)

However, "[a]n agency also has a duty to construe a FOIA request liberally," which "includes searching for synonyms and logical variations of the words used in the request." Judicial Watch, Inc. v. U.S. Dep't of Just., 373 F. Supp. 3d 120, 125 (D.D.C. 2019) (internal quotations omitted) Here, where the agency generally deferred to each individual records custodian to choose their own search terms, the resulting search failed to consistently employ synonyms and logical variations, such as abbreviations, of even the most basic and obvious search terms and phrases found in or suggested by the text of BHCWA's FOIA request. For example, some custodians searched the term "plan of operations," some searched "plans of operation," some searched the abbreviation "PoO," some searched a combination of those terms and still others searched none of those terms. See Docket 28 at pp. 6-8. Some searched "notice of intent" but none searched the obvious abbreviation "NOI." See id. Some searched the names of the four projects specifically identified in the FOIA request and others did not. See id. Some searched "gold," some searched "mining," some searched both "gold" and "mining," some searched one or the other and others searched neither. See id.

The result is that any given records custodian may not have captured responsive documents in their possession that were perhaps created by other individuals who used common synonyms or variations of terms the custodian searched—potentially even those synonyms and variations commonly used and searched by their fellow records custodians. The individual searches were often narrow and at the same time, uncoordinated between searchers. The searches in general were not as well calculated to uncover all relevant documents as they could have been. Despite that, the Court directing a further search with additional terms does seem to be micro-managing, which is to be

avoided, if possible.  BHCWA's objection to this portion of the R&R is denied.

**C.    Lawfulness of Agency Withholdings Under FOIA Exemptions**

FOIA exempts nine categories of information from its disclosure requirements.  <u>See</u> 5 U.S.C. § 552(b)(1)-(9).  However, these nine exemptions are "narrowly construed to ensure that disclosure, rather than secrecy, remains the primary objective of [FOIA.]"  <u>Mo. Coal</u>, 542 F.3d at 1208. Therefore, an agency may only withhold information under FOIA if it is of a type described by one of the nine exemptions and "the agency reasonably foresees that disclosure would harm an interest protected by an exemption," or disclosure is prohibited by law.  <u>See</u> 5 U.S.C. § 552(a)(8)(A)(i). Even if an agency determines requested information is subject to one of the nine FOIA exemptions or is otherwise prohibited from disclosure under the law, it must "consider whether partial disclosure of information is possible" and "take reasonable steps necessary to segregate and release nonexempt information."  <u>Id.</u> § 552(a)(8)(A)(ii).  Agencies commonly use <u>Vaughn</u> indices as tools for determining whether to withhold any of the requested information.  <u>See</u> <u>Mo. Coal</u>, 542 F.3d at 1209. A <u>Vaughn</u> index "includes a general description of each document's contents, including information about the document's creation, such as date, time, and place.  For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided."  <u>Id.</u> at 1209-10 (internal quotation omitted).  The purpose of a <u>Vaughn</u> index is ultimately to permit the FOIA requester and potentially the court "to evaluate [an agency's] decision to withhold records and ensure compliance with FOIA."  <u>Id.</u> at 1210.

In this case, the agency provided a <u>Vaughn</u> index indicating it withheld information under three FOIA exemptions—exemptions 3, 5 and 6.  <u>See</u> Docket 28-5.  The Magistrate Judge evaluated the agency's withholdings under each of these three exemptions.  <u>See</u> Docket 41 at pp. 36-55.  She ultimately recommended that: (a) the court deny summary judgment for the agency and grant summary judgment for BHCWA on the issue of the agency's exemption 3 withholdings, and that the court require the agency to submit a supplemental <u>Vaughn</u> index to adequately explain and permit the court to evaluate its withholdings related to the locations of allegedly significant caves, as well as a supplemental declaration to explain and permit the court to evaluate whether there are any segregable, non-exempt portions of the GIS data withheld by the agency; (b) the court grant summary judgment for the agency and deny summary judgment for BHCWA on the issue of the agency's

14

withholdings on the basis of the attorney-client privilege under exemption 5; (c) the court deny summary judgment for the agency and grant summary judgment for BHCWA on the issue of the agency's withholdings on the basis of the attorney work-product doctrine under exemption 5 and require the agency to submit a supplemental Vaughn index or declaration providing the court with adequate information to evaluate the agency's withholdings in this regard; and (d) the court grant summary judgment for the agency and deny summary judgment for BHCWA on the issue of the agency's exemption 6 withholdings. See Docket 41 at pp. 41-43, 46, 48 and 53. BHCWA objects, arguing the agency's withholdings under exemptions 3, 5 and 6 are not justified. See Docket 44 at pp. 12-20. The Court takes up BHCWA's objections regarding each exemption in turn.

**i.      Exemption 3 Withholdings**

Exemption 3 permits an agency to withhold information responsive to a FOIA request if that information is "specifically exempted from disclosure by statute, if that statute . . . (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). Here, the agency indicates it has withheld information pursuant to the Federal Cave Resources Protection Act, 16 U.S.C. §4301 *et seq.* ("FCRPA"). See Docket 28-5 at p. 5. The FCRPA dictates that "[i]nformation concerning the specific location of any significant cave may not be made available to the public under [FOIA] unless the [agency] determines that disclosure of such information would further the purposes of [the FCRPA] and would not create a substantial risk of harm, theft, or destruction of such cave." 16 U.S.C. § 4304. The agency notes twice in its Vaughn index that it withheld information pursuant to the FCRPA. See Docket 28-5 at p. 5. The first withholding is a [w]ildlife map which includes specific locations of significant caves/abandoned mines." Id. The second withholding is "GIS data which includes specific locations of significant caves/abandoned mines." Id.

As the Magistrate Judge noted, significant caves are protected from disclosure under the FCRPA, however, the Vaughn index does not contain sufficient information for the Court to evaluate whether the agency's withholdings were proper here. See Docket 41 at pp. 40-41. The Vaughn index contains only cursory statements that, in two instances, information which "includes specific locations of significant caves/abandoned mines" was withheld. (Docket 41 at p. 37.) The FCRPA

15

requires the U.S. Department of the Interior to maintain a list of significant caves, see 16 U.S.C. § 4303(b)(1), but the agency's Vaughn index does not indicate how the agency determined the caves at issue here are significant—i.e., the agency does not state in the Vaughn index or its declarations the criteria for the caves on this list.  Furthermore, "abandoned mines" are not explicitly protected under the FCRPA.  See Docket 41 at pp. 38-39.  The FCRPA protects the confidentiality of information concerning the nature and location of significant caves.  It defines "cave" as "any *naturally occurring* void, cavity, recess, or system of interconnected passages which occurs beneath the surface of the earth . . ." 16 U.S.C. § 4302(1) (emphasis added).  Although not beyond the realm of possibility, the Court is skeptical that the abandoned mines noted by the agency are naturally occurring and thus subject to the FCRPA.  Neither the Vaughn index nor the agency's declarations show any mines to also be significant caves.  The Court holds that on the basis of the record, any abandoned mines on maps in question are not significant caves under the FCRPA.

BHCWA asserts the Magistrate Judge improperly "dispense[d] with the [FOIA] harm provision" in her R&R. (Docket 44 at p. 14.) The FOIA harm provision does not apply here because the disclosure is prohibited by law—namely, the FCRPA.  See 5 U.S.C. § 552(a)(8)(A)(i).  BHCWA further asserts the FCRPA imposes an independent requirement on the agency to make a "showing[] of harm" to justify its withholdings under exemption 3.  (Docket 44 at p. 14.)  Instead, the default under the FCRPA is the prohibition of disclosure unless an agency determines that disclosure would, in fact, further the purposes of the FCRPA—i.e., the protection of significant caves—and would not create a substantial risk of harm to any significant cave.  See 16 U.S.C.  § 4304(a).  There is no information anywhere in the record to indicate the agency determined the disclosure of the information it withheld under exemption 3 would actually further the purposes of the FCRPA—i.e., protect any of the allegedly significant caves in question in this litigation—and would not create a substantial risk of harm, theft, or destruction to those caves.

The Magistrate Judge "urge[d] the parties to confer on the records withheld under Exemption 3" and, in the event "they do not agree whether the FCRPA applies to the caves in question," she recommends the Court require the agency to submit "a supplemental Vaughn index that adequately explains the basis for their exclusion." (Docket 41 at p. 41.)  She also recommended the Court require the agency to submit a supplemental declaration providing further detail as to the

segregability of properly withheld GIS data versus improperly withheld GIS data so that the Court may properly assess whether there are non-exempt portions of the GIS data thus far withheld by the agency under exception 3. See id. at p. 42. The Court agrees with both recommendations for a supplemental Vaughn index that adequately explains the basis for exclusion and a supplemental affidavit regarding segregability. To this extent, summary judgment is granted to BHCWA and denied as to Defendants. Finally, as to the wildlife map, the Magistrate Judge concluded that it is likely infeasible to "redact exempted map locations and disclose the map with redactions" because "the locations of the redactions would betray the very locations properly withheld under the FCRPA." Id. at p. 43. Accordingly, she recommended that, if the map contains properly withheld locations, the entire map may be withheld. See id. The Court adopts that recommendation as far as it goes. The Court has yet to determine whether the cave/mine locations were properly withheld. Once that is determined, the map disclosure will finally be ruled upon.

### ii.    Exemption 5 Withholdings

Exemption 5 permits an agency to withhold "inter-agency and intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify [under exemption 5] a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). Here, the agency withheld records pursuant to exemption 5 based on the attorney-client privilege and the attorney work-product doctrine. See Docket 28-5.

As accurately stated in the R&R, the "attorney-client privilege protects both the giving of legal advice by an attorney, as well as the giving of information by the client for the purpose of receiving legal advice." (Docket 41 at p. 44 (citing Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)). "Factual material is also protected under the attorney-client privilege if the facts were divulged by the client in confidence to the attorney and relate to the solicitation of legal advice." (Docket 41 at p. 44 (citing Brinton v. U.S. Dep't of State, 636 F.2d 600, 603 (D.C. Cir. 1980))). The privilege "covers information and communications between employees of an institutional client who possess facts or hold positions relevant to the ability to give or receive legal advice," which may

include a government agency and agency lawyers.  (Docket 41 at p. 44 (citing <u>Coastal States Gas</u> <u>Corp. v. U.S. Dep't of Energy</u>, 617 F.2d 854, 863 (D.C. Cir. 1980))).  However, in the context of FOIA, before an agency may withhold records pursuant to the attorney-client privilege under exemption 5, the agency must not only show that the record is subject to the attorney-client privilege but also that the agency "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

As also accurately stated in the R&R, the attorney work-product doctrine "protects [from disclosure] 'documents and tangible things that are prepared in anticipation of litigation or for trial' by a party's attorney or the attorney's agent." (Docket 41 at p. 46 (quoting Fed. R. Civ. P. 26(b)(3)(A))). "Attorney work product also includes an attorney's mental processes." (Docket 41 at p. 46 (citing <u>United States v. Nobles</u>, 422 U.S. 225, 237 (1975))).  However, the " ' mere relation of documents to litigation does not automatically endow those documents with privileged status.' " (Docket 41 at p. 47 (quoting <u>Maine v. U.S. Dep't of Interior</u>, 298 F.3d 60, 62 (2002))).  An agency invoking the attorney work-product doctrine to withhold records under exemption 5 must specifically " 'make the correlation between each withheld document and the litigation for which the document was created.' " (Docket 41 at p. 47 (quoting <u>Maine,</u> 298 F.3d at 69)).  And, again the agency must show that it "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

The agency, through the declaration of Jenna Sloan, represents that the records it identifies in its <u>Vaughn</u> index as being withheld under exemption 5 were only shared among individuals with the Forest Service, the Office of the General Counsel and the Department of Justice, and they were not shared with any non-governmental persons other than the contractor hired by the Forest Service to assist with processing the FOIA disclosures in this case.  (Docket 28 at p. 13.)  The <u>Vaughn</u> index indicates whether a record was withheld in full or in part under exemption 5, as well as whether each such record was withheld based on the attorney-client privilege or the attorney work-product doctrine.  <u>See</u> Docket 28-5.  Ms. Sloan's declaration provides additional description of the contents of the records withheld by the agency under exemption 5.  <u>See</u> Docket 28 at pp. 12-13.  She indicates:

> The information redacted . . . pursuant to [the attorney-client privilege] consists of:
> (i) communications among Forest Service personnel, attorneys at USDA's Office of

> the General Counsel . . . , and/or attorneys at the Department of Justice . . . in the
> course of seeking or providing the attorneys' legal advice, or seeking or providing
> information necessary to provide legal advice; and (ii) documents reflecting [those]
> attorneys' legal advice in the form of comments or drafts. If disclosed, the redacted
> information would reveal confidential, attorney-client privileged material.

(Docket 28 at p. 12.) As for records the agency withheld pursuant to the attorney work-product

doctrine, Ms. Sloan indicates:

> The redactions often, though not always, overlapped with redactions for attorney-
> client privilege. Some draft documents, and communications relating to draft
> documents, were redacted for attorney work-product privilege as they were prepared
> by, or at the direction or supervision of, attorneys in the context of ongoing or
> foreseeable litigation. The information redacted from the documents pursuant to
> attorney work-product privilege protection includes information that contains an
> attorney's mental impressions in the course of ongoing and/or anticipated litigation,
> or materials prepared at the direction or under the supervision of attorneys in the
> context of ongoing and/or anticipated litigation. If disclosed, the redacted material
> would reveal attorney mental impressions and factual work product.

Id. at pp. 12-13.

The Magistrate Judge found, based on facts gleaned from the agency's <u>Vaughn</u> index and

declarations from Ms. Sloan and unrefuted by other facts in the record, the agency adequately

identified and described records subject to the attorney-client privilege in its <u>Vaughn</u> index and

showed it reasonably foresees harm to its interest in keeping confidential information protected by

the attorney-client privilege if those records are disclosed. <u>See</u> Docket 41 at p. 46. However, she

found the record does not contain facts to support the agency's assertion that the records it withheld

pursuant to the attorney work-product doctrine under exemption 5 were created in reasonable

anticipation of any particular litigation. <u>See id.</u> at p. 48. Rather, Ms. Sloan's declaration broadly and

cursorily connects the information redacted from the records based on the doctrine was "prepared

. . . in the context of ongoing or foreseeable litigation." (Docket 28 at p. 13; <u>see</u> also Madel v. U.S.

<u>Dep't of Just.</u>, 784 F.3d 448, 452 (8th Cir. 2015) ("While agency affidavits receive substantial

weight, they must include more than barren assertions that a document is exempt." (internal

quotation omitted)). The Magistrate Judge therefore recommended granting summary judgment for

BHCWA and denying summary judgment for the agency on the issue of the agency's withholdings

pursuant to the attorney work-product doctrine under exemption 5. <u>See</u> Docket 41 at p. 48. She

recommended requiring the agency to submit a supplemental <u>Vaughn</u> index and declaration

19

providing the Court with all facts necessary to evaluate whether the information is, in fact, properly withheld under exemption 5. See id.

BHCWA objects to the finding that the agency has met its burden to show that its withholdings pursuant to the attorney-client privilege under exemption 5 are proper. See Docket 44 at p. 16-17. Specifically, BHCWA argues the agency did not adequately show it reasonably foresees harm to its interest in keeping confidential information protected by the attorney-client privilege if the records it has withheld pursuant to the privilege are disclosed. See id. BHCWA asserts all such records should therefore be disclosed. See id. Furthermore, while BHCWA agrees with the Magistrate Judge's finding that the agency has not met its burden to show it has properly withheld records pursuant to the attorney work-product privilege by connecting the records to specific litigation based on the facts contained in the record, BHCWA takes issue with her recommendation that the Court require the agency to submit a supplemental Vaughn index and declaration with additional factual information to permit the Court to fully evaluate whether the agency's withholdings pursuant to the attorney work-product privilege are proper. See id. at pp. 17-18. BHCWA asserts the proper remedy is for the Court to order the agency to disclose the records identified in its Vaughn index as previously having been withheld pursuant to the privilege. See id.

As for the records withheld by the agency pursuant to the attorney-client privilege, the Court agrees with BHCWA that the agency has not met its burden to show it reasonably foresees harm to its interest in keeping confidential information protected if the records are disclosed. The Magistrate Judge based her conclusion to the contrary on the fact "the agency has alleged that the redacted information, if disclosed, would reveal confidential, privileged material." (Docket 41 at 46 (citing docket 28 at p. 12)). She reasoned the "protection of confidential attorney-client communications is at the heart of the attorney-client privilege as applied through Exemption 5," and, therefore, "the agency has met its heightened burden." (Docket 41 at p. 46.) The Court disagrees. The agency's allegation that the redacted information, if disclosed, would reveal confidential, privileged material does nothing more than bring that information within the gambit of the attorney-client privilege. It does not, on its own, specifically identify any harm the agency foresees would result to its interest in keeping confidential information protected. If it did, all information subject to the attorney-client privilege would be protected from disclosure under FOIA, effectively nullifying FOIA's additional requirement that the agency must show it reasonably foresees harm to a FOIA protected interest if

20

the records are disclosed.  The agency did not identify, and the Court cannot find facts in the record identifying, a harm the agency reasonably foresees would result from the disclosure of the record at issue here.

The proper recourse in response to this deficiency, however, is not—as BHCWA asserts—an order immediately requiring the agency to disclose the records it previously withheld pursuant to the attorney-client privilege.  Rather, the agency must submit a supplemental <u>Vaughn</u> index and declaration providing the Court with additional factual information for it to evaluate whether the records identified by the agency are properly withheld pursuant privilege and produce the documents for in camera inspection by the Court.  See e.g., <u>Dellums v. Powell</u>, 642 F.2d 1351, 1359 (D.C. Cir. 1980) (finding, upon agreeing with the district court's determination that the <u>Vaughn</u> index submitted was inadequate to support the withholding of certain records, that the district court "should have afforded . . . one more opportunity to submit a satisfactory index, rather than . . . order the immediate release of all" the records at issue).  The agency's failure to meet its burden to show it has properly withheld records pursuant to the attorney work-product privilege warrants the same approach.

Therefore, the Court sustains in part and overrules in part BHCWA's objection to the portion of the R&R concerning the agency's withholdings pursuant to the attorney-client privilege, consistent with the above analysis.  The Court adopts in part and rejects in part the relevant portions of the R&R.  Accordingly, the Court grants summary judgment for BHCWA on the issue of the agency's withholdings pursuant to the privilege and denies summary judgment for the agency on the same.  The Court does not, however, find—as BHCWA urges—the proper recourse is for the Court to immediately order the agency to disclose the records it withheld pursuant to the privilege.  Rather, the agency shall prepare a supplemental <u>Vaughn</u> index and declaration with additional factual information to permit the Court to evaluate whether each of the agency's withholdings pursuant to the attorney-client privilege are proper, coupled with providing the documents for in camera inspection.

Furthermore, the Court overrules BHCWA's objection to the portion of the R&R concerning the agency's withholdings pursuant to the attorney work-product doctrine.  The Court grants summary judgment for BHCWA and denies summary judgment for the agency on the issue and adopts the relevant portion of the R&R.  Again, the agency shall prepare a supplemental <u>Vaughn</u>

index and declaration with additional factual information to permit the Court's evaluation of whether each of the agency's withholdings pursuant to the attorney work–product doctrine are proper together with providing the claimed documents for in camera inspection.

### iii.    Exemption 6 Withholdings

Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). " 'Similar files' include detailed Government records on an individual which can be identified as applying to that individual." Prison Legal News v. Samuels, 787 F.3d 1142, 1146-47 (D.C. Cir. 2015) (internal quotation omitted).  However, the exemption covers "not just files, but also bits of personal information, such as names and addresses, the release of which would create[] a palpable threat to privacy."  Id. at 1147 (internal quotation omitted); see also Gov't Accountability Project v. U.S. Dep't of State, 669 F. Supp. 2d 97, 106 (D.D.C. 2010) (finding e-mail addresses among the types of personal information that may properly be withheld as similar files under exemption 6). "The scope of the privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." Prison Legal News, 787 F.3d at 1147 (internal quotation omitted).

"To apply exemption 6, a court must first determine whether disclosure would compromise a substantial . . . privacy interest." Id. (Internal quotation omitted). "If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure" to determine whether disclosure in that particular instance would constitute a clearly unwarranted invasion of privacy. Id. (internal quotation omitted). "The focus of the public interest analysis is the citizens' right to know what their government is up to." Id. (internal quotation omitted). The government, through reasonably specific Vaughn indices, affidavits or declarations, "bears the burden of showing that a substantial invasion of privacy will occur if the documents are released." Id. Finally, if disclosure would constitute a clearly unwarranted invasion of privacy, then the court must determine whether the agency has met its burden of showing—as it must in any situation where it withholds information under a FOIA exemption, the disclosure of which is not prohibited by law—that the agency "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

Here, the agency redacted private e-mail addresses, phone numbers and addresses from some

22

of the records it disclosed to BHCWA. See Docket 28-5; see also Docket 28 at p. 13. The agency asserts in a declaration by Ms. Sloan that the disclosure of the information it has redacted and withheld under exemption 6 "would serve little to no public interest and would constitute an unwarranted invasion of the individuals' privacy." Id.

The Magistrate Judge found that disclosure of the information, which is personal contact information of agency employees, would pose "a real threat to those individuals' privacy," thus compromising a substantial privacy interest. (Docket 41 at p. 52). She then considered whether, based on the facts in the record, disclosure of the personal contact information would constitute a clearly unwarranted invasion of privacy and concluded it would. See id. at pp. 52-53. In so doing, she found BHCWA failed "to proffer the public interest in disclosing the excluded material, save the general assertion that discovering this personal information would benefit the interest of civilian oversight of the government," which was not an adequately specific showing to carry its burden. See id. Finally, in assessing whether the agency met the FOIA foreseeable harm requirement to properly withhold the information, the Magistrate Judge concluded that by "averr[ing] that '[t]he disclosure of this information . . . would constitute an unwarranted invasion of the individuals' privacy' . . . [t]he agency has adequately shown that it reasonably foresees harm in the form of unwarranted invasion of individuals' privacy were [the information to be] disclosed." (Docket 41 at p. 54 (quoting Docket 28 at p. 13)).

BHCWA objects on two fronts. See Docket 44 at pp. 18-20. First, it objects to the Magistrate Judge's determination that personal e-mail addresses, phone numbers and addresses qualify as "similar files" which may be protected from disclosure under exemption 6. See, id. at pp. 18-19. The Court disagrees and overrules BHCWA's objection in this regard. See, e.g., Prison Legal News, 787 F.3d at 1147 (finding names and addresses to be among the bits of personal information that may qualify a similar files subject to exemption 6); Gov't Accountability Project, 699 F. Supp. 2d at 106 (finding the same with regard to personal e-mail addresses).

Second, BHCWA objects to the Magistrate Judge's finding that the agency met its burden of showing it reasonably foresees that disclosure would harm an interest protected by a FOIA exemption. See Docket 44 at pp. 19-20. BHCWA argues the agency "made a generalized, *en masse* assertion of harm that does not identify a FOIA-protected privacy interest. . . . No foreseeable harm was connected to any withheld record." Id. at p. 20. Ms. Sloan's declaration states that the agency

withheld, by redacting, "personal information . . . [t]he disclosure [of which] would serve little to no public interest and would constitute an unwarranted invasion of the individuals' privacy." (Docket 28 at p. 13). The agency's <u>Vaughn</u> index includes only limited justifications for each entry apparently withheld under exemption 6—for example, stating in numerous instances simply "PII [personal identifying information] redacted - private email" or "PII redacted - address and phone numbers." (Docket 28-5 at pp. 1-5).

Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." <u>Dep't of the Air Force v. Rose</u>, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (internal quotation marks and citation omitted); <u>see United States Dep't of Justice v. Reporters Comm. for Freedom of the Press</u>, 489 U.S. 749, 756, 109 S.Ct, 1468, 103 L.Ed.2d 774 (1989). The privacy interest at stake belongs to the individual, not the agency. <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 763-65, 109 S.Ct 1468; <u>Nat'l Ass'n of Retired Fed. Employees v. Horner</u>, 879 F.2d 873, 875 (D.C.Cir. 1989) (acknowledging an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), <u>cert. denied</u>, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. <u>See Nat'l Archives and Records Admin. v. Favish</u>, 541 U.S. 157, 172, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004).

The privacy interest here is more than *de minimus*. By comparison, the general claim by BHCWA that such disclosure would benefit the interests of civilian oversight of government does not warrant a balancing of interests in favor of disclosing the personal information in question. That is not to say that personal information can never be disclosed. Such a disclosure overriding the privacy interest of an individual would have to be more than applicant has claimed here. The challenges to the Exemption 6 withholdings are denied.

### D.   Lawfulness of Form and Format of the Agency's Productions

FOIA requires that "an agency shall provide [] records[s] in any form or format requested . . . if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). BHCWA requested the information from the agency be provided to BHCWA in the form of "electronic records" and that the records be "provided on CD-ROM, DVD, flash drive, or

other electronic media" in whatever way was "most expeditious." (Docket 32-1 at p. 2). BHCWA requested the electronic records be formatted as searchable PDFs. See id. However, the agency ultimately provided electronic records via a filesharing website as non-searchable PDFs. See Docket 41 at pp. 5-6. BHCWA asserts the agency thus violated FOIA's form and format provisions and that it suffered cognizable harm as a result. See Docket 44 at p. 20. BHCWA seeks an order requiring the agency to reproduce as searchable PDFs on physical electronic media all the documents the agency already provided. See Docket 30 at p. 8.

The Court differs on the analysis by the Magistrate Judge but not on the result. The result still is that the Defendants need not reproduce the 23,000 documents formatted as searchable PDFs.

BHCWA does have standing to challenge the form or format of the Agency's Production. This is so given the straightforward language of 5 U.S.C. § 552(a)(3)(B). There was a specific request that the electronic records be formatted as searchable PDFs. They were not. BHCWA had standing to object. The question then becomes whether "the record is readily reproducible by the agency in that form or format." The agency adequately showed that under the exigencies applicable at the time of production, the 23,000 pages were not readily reproducible in that form or format. Accordingly, that objection by BHCWA is denied. However, those same exigencies have not been shown to still exist, so all future information productions by the agency will be formatted as searchable PDFs unless otherwise requested.

## ORDER

Based on the discussion above,

IT IS ORDERED:

1. That Plaintiff Black Hills Clean Water Alliance's objections to the Report and Recommendation (Docket 44) are sustained in part and overruled in part.

2. That Plaintiff Black Hills Clean Water Alliance's Motion for Summary Judgment (Docket 30) is granted in part and denied in part.

3. That Defendants the United States Forest Service's and United States Department of Agriculture's Motion for Summary Judgment (Docket 25) is granted in part and denied in part.

4. That the Report and Recommendation (Docket 41) is adopted in part, consistent

with the Court's analysis and findings above.

5.  That within thirty (30) days of entry of this Order, Defendants shall complete the additional searches required by this Order and shall provide to Plaintiff all additional records responsive to Plaintiff's 2018 FOIA request.  Defendants shall also provide to Plaintiff:

    (A)  a supplemental <u>Vaughn</u> index identifying additional withholdings, if any, and containing additional detail required by this Order to permit the Court to evaluate whether each of the agency's withholdings is proper, including the documents in question, which will be for in camera review, and

    (B)  a supplemental declaration providing additional detail required by this Order to permit the Court to evaluate whether each of the agency's withholdings is proper.

6.  That within sixty (60) days of entry of this Order, the parties shall meet to discuss whether, at that point, Defendants have fully discharged their duty under FOIA related to this litigation.  The parties shall prepare and file with the Court a joint status report identifying any outstanding issues over which they still do not agree, if any, and a brief statement of each party's position with respect to any such issue or issues.

Dated this **29** day of June, 2022.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK