UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BLACK HILLS CLEAN WATER ALLIANCE, | 5:20-CV-5034-LLP |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER ON ATTORNEY FEE AWARD |
| UNITED STATES FOREST SERVICE, UNITED STATES DEPARTMENT OF AGRICULTURE, | |
| Defendants. | |

On February 14, 2024, this Court granted Plaintiff, Black Hills Clean Water Alliance's (BHCWA) motion for attorney fees after finding that it was both eligible for and entitled to attorney fees. (Doc. 70.) Further briefing was ordered to assist the Court in determining the amount of attorney fees to award.[1] The briefing has been completed. This Opinion solely concerns what constitutes a reasonable attorney fee award in this case, BHCWA1.

## DISCUSSION

The Freedom of Information Act (FOIA) provides for the award of "reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The D.C. Circuit Court has explained the purpose of this fee-shifting provision:

> This court, drawing on the Senate and House Committee reports for FOIA and its amendments, explained long ago that the provision for attorney's fees "was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold," but instead "had a more limited purpose—to remove the incentive for administrative resistance to disclosure requests based not on the merits of

---

[1] The Court determined that Plaintiff was not eligible for attorney fees or costs in BHCWA2. However, Plaintiff had combined the legal work on the motions for attorney fees in BHCWA1 and BHCWA2 instead of separating the time spent pursuing attorney fees in each case. Thus, the Court directed Plaintiff to submit a supplement explaining its reasonable costs and attorney fees solely related to preparing the motion for attorney fees in BHCWA1. (Doc. 70.)

exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C.Cir.1977) (citing S.Rep. No. 93–854, at 17).

*Davy v. C.I.A.*, 550 F.3d 1155, 1158 (D.C. Cir. 2008). Defendants do not contest Plaintiff's eligibility for and entitlement to attorney fees in the present case.

The starting point in determining reasonable attorney fees is the lodestar calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). There is a strong presumption that the lodestar calculation represents a reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). After calculating the lodestar, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[2] However, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9. In other words, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986). An important factor to consider when evaluating attorney fees is the degree of success the claimant obtained. *Hensley*, 461 U.S. at 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988.").

The party seeking attorney fees has the burden to prove that its request for attorney fees is reasonable. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citing *Hensley*, 461 U.S. at 437). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

---

[2] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717–19).

The court has "broad discretion" in considering the amount of the fees. *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012). A district court should use its own knowledge, experience, and expertise in determining the fee to be awarded. *See Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir. 1989). The Eighth Circuit has explained: "The trial court knows the case best. It knows what the lawyers have done, and how well they have done it. It knows what these efforts are worth. It knows how to balance portions of the case together to reach a just and reasonable award." *Young v. City of Little Rock*, 249 F.3d 730, 737 (8th Cir. 2001).

BHCWA requests attorney fees in the amount of $287,755.90 for litigating both the merits of the BHCWA1 case and the petition for attorney fees. (Doc. 77, p. 1.) The fees requested, itemized by attorney and hours billed, are as follows:

| Attorney | Hours Worked | Hourly Rate | Total |
|---|---|---|---|
| Travis Stills | 295.5 | $658-782 | $213,860.00 |
| Jeff Parsons | 66 | $645-771 | $ 45,957.80 |
| Bruce Ellison | 38.2 | $400 | $ 15,880.00[3] |
| William Eubanks | 17.3 | $697 | $ 12,058.10 |
| | | **TOTAL** | $287,755.90 |

BHCWA's lodestar calculation of $287,755.90 includes $57,767.80 for work completed by attorneys Stills, Parsons and Eubanks during the initial "fees-on-fees" phase.[4] (Doc. 73, p. 10.) Mr. Stills spent an additional 32.2 hours at $25,180.40 preparing the supplemental reply brief in

---

[3] This total for Mr. Ellison includes $600 in costs for court filing and pro hac vice fees. (Doc. 73-3, ⁋ 8.)

[4] The request for $57,767.08 includes 75.9 hours - - 48.1 hours for Mr. Stills at $37,614.20, 10.5 hours for Mr. Parsons at $8,095.50, and 17.3 hours for Mr. Eubanks at $12,058.10. (Doc. 73, pp. 10-11.)

support of the updated petition for attorney fees. The remaining $204,807.70 is for litigating the merits of the case.

Though Defendants do not dispute that Plaintiff may recover reasonable attorney fees in this case, Defendants contend that the requested fees are unreasonable because: 1) BHCWA should not be awarded fees for work at the administrative level; 2) the services of a second attorney with FOIA experience, Jeff Parsons, were unnecessary; 3) the issues were neither novel nor difficult, and the skills required are not specialized or unique; 4) the results obtained were mixed because BHCWA did not prevail on every claim; 5) BHCWA's request for "fees on fees" is exorbitant and unreasonable; and 6) fees for the expert hired to give his opinion on the reasonableness of the attorney fees (William Eubanks) should be denied completely because it was misplaced to obtain a third-party opinion, and it over-complicates a straightforward matter.

Defendants also argue that the hourly rates should comport with reasonable hourly rates for lawyers in the District of South Dakota.

The Court first will address the hourly rates requested, and then it will examine the hours expended by the lawyers on this litigation.

A.     **Reasonable Hourly Rates**

"[C]ourts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). BHCWA acknowledges that a reasonable hourly rate usually is based on the prevailing market rates in the relevant community. However, BHCWA argues that it should not be limited to the lower local rates. *See, e.g., Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001) ("In a case where the plaintiff does not use local counsel, the district court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case.").

BHCWA is represented by three lawyers in this case: Travis Stills, Jeff Parsons, and local counsel Bruce Ellison. The reasons BHCWA requests higher hourly rates for Travis Stills and Jeff Parsons are discussed below.

### 1. Attorneys Stills and Parsons

BHCWA requests a rate ranging from $658-$782 per hour for Mr. Stills (with 27 years of experience), and hourly rates ranging from $645-$771 for Mr. Parsons (with 25 years of experience). The rates are based on the "Fitzpatrick Matrix."[5]

The Fitzpatrick Matrix offers a "measure of the prevailing market rate for complex federal litigation in the [D.C.] District." *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 32 (D.D.C. 2023). In determining appropriate hourly rates, courts in D.C. have often used a schedule of hourly fees based on years of attorney experience, the first of which was developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1, 16 (D.D.C. 2015). In *J.T.*, Chief Judge Howell of the D.C. District Court explained that the Fitzpatrick Matrix is a spin-off of the Laffey Matrix. After detailing the methodology and development of the Fitzpatrick Matrix, Judge Howell rejected the Laffey Matrix in favor of the Fitzpatrick Matrix. *See J.T.*, 652 F. Supp. 3d at 33. ("The exact data points from which [the creator of the Laffey Matrix] derived his rates seem lost to history, if they were ever made available at all.").

As fee "matrices are somewhat crude, the matrix's proponent usually" should point to additional evidence of the prevailing market rate, which can include "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases [or] evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *DL v. District of Columbia*, 924 F.3d 585, 589 (D.C. Cir. 2019) (internal quotation marks omitted). Here, BHCWA relies on the declarations of attorneys Stills, Parsons, and Ellison, declarations from two other environmental lawyers, Matt Kenna and William Eubanks, and similar cases in which courts awarded fees based on the Fitzpatrick Matrix or the equivalent or higher rates to lawyers with experience comparable to Mr. Stills and Mr. Parsons in Colorado and elsewhere.

---

[5] BHCWA has filed a copy of the Fitzpatrick Matrix. (Doc. 69-3, pp. 5-8.)

5

a. Declaration of Travis Stills

Mr. Stills, lead counsel for BHCWA in this case, has extensive experience and training with the National Forest Service's FOIA duties and the mining-related subject matter of the FOIA requests in this case. (Doc. 60-1, ⁋ 2.) He graduated from Vermont Law School with training in administrative and environmental law while earning his Masters Study in Environmental Law (cum laude), and was admitted to the Colorado bar in 1996. (*Id.* at ⁋ 4.) He has represented various organizations, governmental entities, and Indian Tribes throughout the country since 1996 as a sole practitioner, as staff attorney for environmental protection organizations, and now as Executive Director of Energy & Conservation Law. (*Id.* at ⁋ 3.) Mr. Stills has appeared in state administrative and judicial forums, numerous federal district courts, the Ninth, Tenth and D.C. Circuit Courts, the U.S. Nuclear Regulatory Commission's Atomic Safety and Licensing Board, the Environmental Protection Agency's Environmental Appeals Board, and he has been involved in numerous agency FOIA appeals. (*Id.* at ⁋ 3.) He educates members of the public and non-profit public interest organizations on how to effectively engage in environmental and public land management issues. (*Id.* at ⁋ 4.)

Mr. Stills has a long-established relationship representing BHCWA. (Doc. 60-1, ⁋ 5.) Due to BHCWA's public interest work on mining issues involving the Black Hills National Forest, Mr. Stills does not charge a fee but instead relies on the potential to recover statutory attorney fees. (*Id.*) His declaration and billing statements reflect in detail the legal work he completed in this litigation.

Mr. Stills asserts that the rates approved by the Fitzpatrick Matrix, which he requests here, are in line with what other attorneys with his experience charge for their time in Washinton D.C. and Colorado District Courts. (*Id.* at ⁋ 7.) Though his recent federal statutory fee recoveries have been settled and not adjudicated, the rates have been comparable in litigation in Colorado federal district court. (*Id.* at ⁋ 7.)

Mr. Stills points out that he could have brought this lawsuit in Washington D.C., but the requested hourly rates under the Fitzpatrick Matrix allowed him to file it in the forum of BHCWA's choice – the District of South Dakota. (*Id.* at ⁋ 8.)

b.    Declaration of Jeffery Parsons

Co-counsel, Jeffrey Parsons, practices mining, public lands and environmental law in the public interest as a Senior Attorney with the Western Mining Action Project, where he has worked since 1999. (Doc. 60-2, ⁋ 3.) The Western Mining Action Project consists of a group of lawyers specializing in hardrock mining in the United States. (*Id.*) Mr. Parsons graduated from the University of Colorado Law School and was admitted to the Colorado Bar Association in 1998. (*Id.* at ⁋ 2.) He has represented conservation organizations and Native American Tribes in numerous state and federal court lawsuits, as well as in administrative hearings and proceedings, dealing with hardrock mining and water quality in the West. Mr. Parsons's accomplishments include testifying numerous times before the Colorado General Assembly as an expert on state and federal mining and environmental law, being lead or co-counsel in a wide variety of cases dealing with several federal and state environmental laws and regulations and the Freedom of Information Act, and authoring three environmental law articles that were published in law journals (*Id.* at ⁋ 3, 4, 6.) He has been admitted to practice before the U.S. Supreme Court, the Eighth, Ninth, Tenth, and District of Columbia Circuit Courts, the U.S. Court of Federal Claims, and the U.S. District Court for the District of Colorado.

Given Mr. Parsons's specialized knowledge and experience with the Freedom of Information Act, Mr. Stills and Mr. Ellison requested his assistance in reviewing and editing substantive and procedural filings, preparing filings, and developing case strategy in this case. (*Id.* at ⁋ 7.)

Mr. Parsons researched the hourly rates for attorneys with his experience that practice in federal court, and he attests that:

> [T]he prevailing market rate in the District of Colorado for attorneys of my level of expertise and knowledge during 2018-23 would be at least what I have requested. Regarding the reasonable rate in the District of Colorado market, federal courts in Colorado have recognized that a reasonable market rate for my work would be at least $500/hr. starting in 2017. *See* Biax Corp. v. Nvidia Corp., 2013 WL 4051908, at **6-7 (D. Colo. 2013)(reasonable hourly rates for complex federal cases in Denver are up to $810 per hour (in 2010) for law firm partners or comparably senior attorneys; up to $530 per hour (in 2010) for associates with 8-10 years of experience; and up to $370 per hour (in 2010) for associates with 4-6 years of legal experience); Merrill v. Contract Freighters, Inc., 2021 WL 3742242, at **4-5 (D. Colo. 2021)(in 2019 experienced equity partners in Denver often bill at least $775 per hour, associates with 8-10 years of experience often bill at least

$500 per hour, and associates with 4-5 years of experience often bill at least $330 per hour); First Mercury Insurance Co. v. Wonderland Homes, 2021 WL 3089155, at *5 (D. Colo. 2021)(citing the same rates from 2019, and noting that "[t]hese hourly rates are generally consistent with rates awarded in this District in complex litigation matters").

(Doc. 73-2, ¶ 14.)  The cases cited by Mr. Parsons provide insight into the prevailing market rate in the Denver area and the Colorado federal district court where it appears Mr. Parsons and Mr. Stills would be compensated at a rate of around $775-$810 per hour if they were in private practice.

     c.    Declaration of Matt Kenna

Matt Kenna from Durango, Colorado, has 30 years of experience as a public interest environmental attorney.[6] (Doc. 60-6 at ¶ 4.)  Like Mr. Stills and Mr. Parsons, Mr. Kenna relies on recovery of statutory fees rather than payment from his clients, so he is familiar with fees charged in this type of litigation.  (Id. at ¶ 5.)  He said this about the hourly fees requested by BHCWA based on the Fitzpatrick Matrix:

> Based on my experience and understanding, the hourly rates used to calculate a loadstar amount is reasonable, comparable to, and perhaps slightly less than the billing rates charged by FOIA-specialized attorneys filing in Denver and Washington D.C. with similar years of civil litigation experience and specialized training. It is reasonable to rely on the Fitzpatrick Matrix to establish the rate for out-of-state representation. available at https://www.justice.gov/usao-dc/civil-division (accessed June 26, 2023).

> As the Explanatory Notes to the Fitzpatrick Matrix state at note 2, a "'reasonable fee' is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). "The [Fitzpatrick Matrix] is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. E.g., [...] 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act)." The rates established by the Fitzpatrick Matrix can be somewhat low, but the Department of Justice's promise to not challenge hourly rates set out in the Fitzpatrick Matrix helps attract FOIA attorneys with similar experience, expertise and skills and public interest environmental law practices as Mr. Parsons, Mr. Stills, and myself.

> As discussed by Chief Judge Howell of the D.C. District Court, many lawyers choose to assert the Fitzpatrick Matrix rates to avoid the risk and expense of litigating the rates. J.T. v. District of Columbia, 2023 U.S. Dist. LEXIS 12271, at *32 (D.D.C. Jan. 23, 2023). Based on my review, the use of the Fitzpatrick Matrix rates are a reasonable and justifiable rate to ensure BHCWA has access to capable counsel, such as Mr. Stills, and

---

[6] Mr. Kenna said that a resume was attached to his declaration, but the Court was unable to locate it in the record.  (Doc. 60-6, ¶ 4.)

Mr. Parsons, when the federal agency fails to provide prompt access to agency records responsive to BHCWA's FOIA requests.

(*Id.* at ¶¶ 7-9.)

Regarding fees Mr. Kenna has charged in comparable cases, he stated:

> Although my recent federal fee recoveries have been settled and not adjudicated, the hourly rates used for this litigation are comparable to rates established in federal civil litigation in Colorado. The last rate I claimed and settled based on my understanding of Colorado rates for someone of my experience was for hours worked in 2021, and was $721. My USDOJ "Fitzpatrick Matrix" rate for work in the District of Columbia for 2023 is $795.

(*Id.* at ¶ 10.)

      d.     Declaration of William S. Eubanks II

Expert testimony in support of BHCWA's request for attorney fees was submitted through the declaration of William S. Eubanks, a lawyer who specializes in environmental, administrative, and open government litigation in federal and state trial courts throughout the United States. (Doc. 60-5, ¶ 1.) The purpose of Mr. Eubanks's work for BHCWA was "to assist the Court in determining the reasonableness of the fee recovery sought." (*Id.* at ¶ 7.) Mr. Eubanks has recovered fees in cases that he litigated, and he has served as a fee consultant and expert witness on the reasonableness of legal fees in numerous cases on behalf of other lawyers seeking to recover attorney fees for their clients. (Doc. 60-5, ¶¶ 5-6.) Mr. Eubanks avers that the fees requested under the Fitzpatrick Matrix are significantly lower than those requested under the "Laffey Matrix," and are in line with the prevailing hourly rates for comparable litigation in Colorado where Mr. Stills and Mr. Parsons are located. (Doc. 60-5, ¶¶ 15-16.)

Mr. Eubanks states that Mr. Stills and Mr. Parsons "are attorneys of the highest caliber within the specialized, technical field of FOIA litigation," and are "entitled to the maximum, upper-range hourly rate for their respective experience levels (i.e., their number of years practicing law)." (Doc 60-5, ¶ 12.) Mr. Eubanks explained why, in his opinion, recovery should not be limited to hourly rates in South Dakota and why the rates should be based on the "Fitzpatrick Matrix." (*Id.* at ¶¶ 17-20.)

Mr. Eubanks's reasons for recommending hourly rates based on the Fitzpatrick Matrix rather than on South Dakota market rates are: 1) his review of FOIA precedent in the Eighth

Circuit and the District of South Dakota "demonstrates the relative sparseness of FOIA litigation in this region and the lack of local attorneys experienced, capable, and qualified to successfully navigate these complex matters that require an intimate understanding of FOIA and decades of cases interpreting and applying the statute;" 2) utilizing non-local FOIA specialists significantly reduced the amount of time that would have otherwise been expended by attorneys with less experience; 3) in addition to their specialty in FOIA litigation, Mr. Stills and Mr. Parsons's experience and qualifications in environmental law further reduced "the amount of time necessary to review, comprehend, and determine appropriate next steps when Defendants disclosed records or conducted supplemental searches in response to Plaintiff's lawsuit;" and 4) awarding South Dakota rates to these lawyers "could threaten to chill public interest litigation that seeks to vindicate Congress's intent in ensuring the public can use FOIA effectively to shed light on governmental activities," especially when the case could have been filed in Washington, D.C. where the Fitzpatrick Matrix hourly rates would apply.

Based on the Court's own experience in presiding over this case for two years, the Court agrees with Mr. Eubanks's assessments of lead counsel and finds his reasoning instructive as to why the lawyers' hourly rates in this particular case should exceed the market rate in South Dakota. There is no requirement in the Eighth Circuit for expert testimony in support of a request for attorney fees. However, Mr. Eubanks's opinions assisted the Court in determining reasonable hourly rates for Mr. Stills and Mr. Parsons.

     e.     Declaration of Dr. Lilias Jarding

Dr. Lilias Jarding is the representative for BHCWA. Dr. Jarding became a member of BHCWA in 2009, and she has been involved "in public participation opportunities that influence management of the Black Hills National Forest as a member and President" of BHCWA. (Doc. 60-4, ⁋ 2.) She has 16 years of experience in public work involving public lands and mining impacts on the Black Hills. (*Id* at ⁋ 7.) In her affidavit, Dr. Jarding states that she is not aware of any qualified South Dakota lawyers who would represent BHCWA in this case. (*Id.*) Attorney Bruce Ellison informed Dr. Jarding that he was unaware of "any local attorney with the required expertise litigating cases involving Freedom of Information Act, public land laws, and mining laws." (*Id.*) According to Dr. Jarding:

>   Without the legal services provided by Mr. Ellison, Mr. Parsons, and Mr. Stills in
>   the administrative appeals and during this litigation, I would still not have access to Plans
>   of Operations and related documents the Forest Service withheld in full by asserting
>   inapplicable FOIA Exemptions and conducting unreasonably limited searches. The legal
>   services have also prompted the Forest Service to honor, to a greater extent, my form and
>   format requests.

(*Id.* at ¶ 8.)  Dr. Jarding contends that the agency records obtained in this case have "played a

critical role in BHCWA's participation in a proposal to withdraw some of the Black Hills National

Forest from mineral claims. This proposal, if adopted by the Department of the Interior, would

help protect natural resources and cultural resources from mining-related activities." (*Id.* at ¶ 10.)

## 2.  Attorney Ellison

Local counsel, Bruce Ellison, located in Rapid City, South Dakota, has a long-standing

relationship representing BHCWA in public interest work on a variety of environmental and social

justice issues involving the Black Hills National Forest. (Doc. 73-3, ¶ 4.) Mr. Ellison has 47 years

of experience as a trial and appellate attorney in cases before numerous state courts, federal district

courts, the Eighth, Ninth and Tenth Circuits, and the Oglala, Cheyenne River, Crow Creek, and

Lower Brule Tribal Courts. (*Id.* at ¶ 3.)  He is admitted to the U.S. Supreme Court.

In his declaration, Mr. Ellison said that he had little experience with FOIA litigation, and

he explains why he requested assistance from Mr. Stills and Mr. Parsons in this case:

>   I am familiar with the legal work of Jeff Parsons and Travis Stills through working
>   closely with them in this and other litigation, including the Dewey Burdock in situ uranium
>   leach proposal in various federal administrative forums and the Washington D.C. Circuit
>   Court of appeals. Based on my experience and knowledge, I concur with the conclusion
>   that attorneys such as with comparable experience, training, skills and understanding of
>   Forest Service operations and FOIA duties as they apply to mining activities are not readily
>   available in Rapid City, South Dakota. It was apparent to me that the results obtained in
>   this litigation relied heavily on my co-counsels' extensive experience and knowledge of
>   the interplay between FOIA and federal land management statutes. Without FOIA's
>   attorney's fee provisions that Mr. Stills and Mr. Parsons rely upon to provide services to
>   groups such as BHCWA, I am not aware of any attorney that would have been able to bring
>   this case and obtain similar results. The attorney fee provision also enabled me to offer my
>   services, without charge to BHCWA.

(Doc. 73-3, ¶ 4.) Mr. Ellison believes that BHCWA was able to vindicate their FOIA rights locally

in federal district court in South Dakota because of Mr. Stills and Mr. Parsons' specialized

knowledge of the FOIA, mining proposals involving federal public lands, and the National Forest System. (*Id.* at ¶ 7.) BHCWA seeks an hourly rate of $400 for attorney Ellison's services.

All of the declarations submitted by BHCWA indicate that this FOIA litigation involving environmental issues on federal public lands, and the National Forest System in particular, benefitted from having lawyers with the knowledge and experience like that of Mr. Stills and Mr. Parsons.

Defendants submitted the affidavits of two South Dakota lawyers, Lisa Marso and Sarah Frankenstein, arguing that the average hourly rate for experienced attorneys handling public record requests in South Dakota is between $175 and $315. Attorney Marso states that she has been licensed in South Dakota since 1995, is admitted to practice before the U.S. District Court for the District of South Dakota, has provided legal services to numerous clients related to requests under the Freedom of Information Act and South Dakota's similar regulations, and she charges between $175 and $275 for that work. (Doc. 64.) Ms. Frankenstein has been licensed in South Dakota since 2002. (Doc. 65.) She has handled constitutional law cases (including First Amendment and Voting Rights Act cases), political and election law cases, complex construction litigation, employment litigation, insurance and bad faith cases, personal injury, and other areas of federal and state court litigation. (*Id.*) Attorney Frankenstein also does "work related to open record requests and responses." (*Id.*) Her current hourly rate for general litigation is $315. The Court notes that these rates do not involve the fact of no fees if the complainant did not substantially prevail under the FOIA. These fees should not be directly compared to fees where one knows that they are going to be paid, win or lose.

Neither attorney Marso nor attorney Frankenstein say they would have been willing or able to represent BHCWA in this case. The Court knows they are experienced and capable attorneys, but they do not appear to have expertise or experience with the FOIA comparable to that of Mr. Stills and Mr. Parsons. They do not mention any environmental law-related cases in their affidavits. Even assuming that there were no novel or difficult issues of FOIA law in this case, Mr. Stills and Mr. Parsons had the added background, knowledge, and experience with federal land management issues. Their organizations also had the financial wherewithal to allow Mr. Stills and Mr. Parsons to pursue disclosure of documents without billing BHCWA and to instead rely on the chance of recovering statutory fees. Simply put, there is no showing that there are any

12

comparable lawyers practicing in South Dakota who would have been willing and fully able to pursue a case such as this, and in addition representing for no fee except for the possibility of recovery under the FOIA if the complainant substantially prevails. Even if willing, there is really no good substitute for experience and expertise in FOIA cases and mining law.

Furthermore, the Court believes this type of FOIA action is not one typically filed in South Dakota but rather is brought in D.C. The declarations submitted by BHCWA show that South Dakota was BHCWA's desired forum for this litigation. Had the lawsuit been filed in D.C., the Fitzpatrick Matrix rates most likely would have applied. There is much public attention in South Dakota on these mining in public lands issues. Good and prompt public access to all properly available information is essential. It is in the public interest that litigation, when made necessary by a denial of public access, be brought and progress in South Dakota rather than Washington, D.C. Choice of forum should not be driven to Washington D.C. away from the place of local impact and interest.

For all of these reasons, BHCWA has justified hourly rates for Mr. Stills and Mr. Parsons that exceed South Dakota market rates. The Court will utilize the Fitzpatrick Matrix of 2019, when representation was undertaken, as a guide, but it will reduce the hourly rates and not include the increases after 2019 to the Matrix. The reductions are not so great as to discourage filing in local forums. Also, as has been observed, the local rates cited are not the same sort of rates as those requested. The Court is reducing the 2019 Fitzpatrick Matrix by 10%. BHCWA had initially volunteered a 10% reduction before the Court ruled that no attorney fees would be awarded in the second and related case, *Black Hills Clean Water Alliance v. United States Forest Service, et al.*, 21:CV-5072 ("BHCWA2"). BHCWA's expert witness also opined on the basis of a 10% reduction. The use of the 2019 Fitzpatrick Matrix as altered is not a precedent setter for attorney fees for other cases before this Court.

Based on the declarations submitted in this case, the quality and quantity of the experience out-of-state counsel has in similar cases with similar clients, together with the Court's own knowledge and experience, the Court concludes that a reasonable hourly rate for attorney Stills is $658 and for attorney Parsons is $645. By the same token, the reasonable hourly rate for attorney Eubanks is $697 as his services were actually rendered in Washington, D.C.

BHCWA requests an hourly rate of $400 for attorney Ellison, and the Court finds that rate appropriate for a lawyer with Mr. Ellison's background and experience.

**B.      Reasonable Hours Expended**

A party requesting fees must exercise its "billing judgment" and exclude from its request hours that "are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Courts should "exclude from [the] fee calculation hours that were not 'reasonably expended.' " *Id.* (quoting S. Rep. No. 94-1011, at 6 (1976)). However, trial-court judges need not "become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Defendants challenge the time expended by Mr. Stills at the administrative level, including time spent on the administrative appeal (3.2 hours) and on the review of agency productions (8.1 hours), which Defendants argue constitute tasks associated with the submission of a FOIA request. Defendants also dispute the following specific hours billed by Mr. Stills as unreasonable: 1) 5.5 hours preparing customary initial pleadings when two other attorneys expended a combined 16.5 hours doing the same; 2) 47.8 hours preparing standard summary judgment materials when two other attorneys expended an additional 15 hours doing the same; 3) 32.5 hours preparing objections to Magistrate Judge Duffy's Report and Recommendation when two other attorneys expended a combined 9.8 hours doing the same.

This case is not as straightforward as Defendants claim. Defendants certainly could have made it more straightforward. Given the history of this case and Defendants' initial blanket resistance to BHCWA's requests, BHCWA's lawyers cannot be faulted for being carefully prepared throughout the course of this litigation.

The Court has reviewed all of the billing entries and finds that most of the time for which recovery is sought is reasonable. The time entries are clear, specific, and represent an appropriate use of each lawyer's time on the merits of this case. The conferences between the lawyers relating to the case are not excessive in their frequency or length, and there is no indication of inefficiency or duplication of services. The Court recognizes the value in the lawyers collaborating on this

14

case, especially when they had no assistance from law clerks or paralegals, and they faced the full force of the government's resources on the opposing side.

Defendants challenge payment for time spent reviewing the agency's responsive documents. In some cases, courts have granted fees for time spent reviewing responsive documents in FOIA cases, such as in the present case where document review was necessary to evaluate the sufficiency of production or to challenge withholdings. *See, e.g., Elec. Privacy Info. Ctr v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 240 (D.D.C. 2011) ("[I]t would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency."); *Elec. Privacy Info. Ctr. v. FBI*, 72 F. Supp. 3d 338, 351 (D.D.C. 2014) (finding it "reasonable that EPIC's counsel reviewed the 2,462 pages of documents the FBI produced during this case to ensure the agency's compliance with FOIA" and court order). The time devoted by the lawyers to this task will not be deducted.

Defendants also dispute the charges in the amount of $12,058.10 for 17.5 hours that Mr. Eubanks spent on his expert opinion regarding the reasonableness of the attorney fees. Mr. Eubanks's time includes hours spent on BHCWA2, which are not compensable. Thus, Defendants will be required to pay for only half of Mr. Eubanks's time, or 8.75 hours. At an hourly rate of $697.00, the total award for Mr. Eubanks's work is $ 6,098.75. Mr. Eubanks was well-qualified to give his expert opinions, which were well-supported and helpful to the Court. The services were actually rendered in D.C., and the hourly rate is consistent with the hourly rates pursuant to the Fitzpatrick Matrix for someone with his experience (16 years). Mr. Eubanks states that the prevailing market rate for his services in Washington, D.C. is $829 per hour. (Doc. 60-5, ¶ 22.)

Finally, Defendants argue that the amount requested by BHCWA for its lawyers' work on seeking attorney fees is exorbitant. After eliminating the time spent to recover fees in BHCWA2, the request for the "fees on fees" portion was reduced to 75.9 hours at $57,767.80 for work on BHCWA's initial fee petition in BHCWA1. Another $25,180.40 was added for Mr. Stills's 32.2 hours of work on the final, supplemental reply brief in BHCWA1, for a total of 108.1 hours at $82,948.20. The amount requested by BHCWA for the "fees on fees" phase gives the Court pause. The Court does not question that the time was spent. The question is whether the time was reasonably spent.

Time reasonably spent bringing a fee application generally is compensable where attorney fees are authorized by statute, as long as it is not excessive. *See Jorstad v. IDA Realty Trust*, 643 F.2d 1305, 1314 (8th Cir. 1981). In 2010, the Eighth Circuit found excessive $10,722.60 for 77.7 hours spent preparing a reply brief in support of the original motion for attorney fees and the motion for supplemental attorney fees. *See El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010). The Court concludes that 75.9 hours spent on the initial fee petition by attorneys Stills, Parsons and Eubanks, and 32.2 hours spent on the supplemental reply brief by Mr. Stills, are excessive. *See, e.g., Rosen v. Wentworth*, 13 F.Supp.3d 944, 953 (D.Minn. 2014) (over 60 hours preparing fee application was excessive); *Ladd v. Pickering*, 783 F.Supp.2d 1079, 1094 (E.D. Mo. 2011) (46 hours of work preparing fee petition excessive).

The Court already has cut Mr. Eubanks's time in half to 8.75 hours due to part of the work being done for BHCWA2. Mr. Stills and Mr. Parsons's time on the fee petition also will be reduced by half. That results in 24.05 hours for Mr. Stills and 5.25 hours for Mr. Parsons on the initial fee petition. Mr. Stills's work on the supplemental reply brief will be reduced from 32.2 hours to 16.1 hours.

Accordingly, the lodestar in this case is:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Travis Stills | 255.35 | $658 | $168,020.30 |
| | | 10% adjustment | −$16,802.03 |
| | | | $151,218.27 |
| Jeff Parsons | 60.75 | $645 | $39,183.75 |
| | | 10% adjustment | − $3,918.38 |
| | | | $35,265.37 |
| Bruce Ellison | 38.2 | $400 | $ 15,880.00[7] |
| William Eubanks | 8.75 | $697 | $ 6,098.75 |
| | | **TOTAL FEES FOR ALL LAWYERS:** | **$208,462.39** |

---

[7] Mr. Ellison's total includes $600 in costs for court filing and pro hac vice fees.

16

For all of these reasons,

**IT IS ORDERED** that Black Hills Clean Water Alliance is awarded $208,462.39 in attorney fees.

Dated this 8th day of May, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

17